**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ndeckant@bursor.com
          sbogdanovich@bursor.com
          idiaz@bursor.com

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZEQUIEL PALOMINO and DINORATH VILLALOBOS, individually and on behalf of all others similarly situated, | Case No. 5:24-cv-01517-BLF |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| D2C, LLC, d.b.a. UNIVISION, | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

Plaintiffs Ezequiel Palomino and Dinorath Villalobos (collectively "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against D2C, LLC ("Defendant" or "Univision").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendant D2C, LLC for violating the Video Privacy Protection Act ("VPPA") and California Civil Code § 1799.3 (Cal. Civ. Code § 1799.3) by collecting and sharing highly specific and sensitive information about consumers' video consumption habits without their consent.

2.      Defendant owns and operates a video streaming service platform called Univision NOW which is accessed through the website univisionnow.com ("Website") or through the mobile application ("App") called Univision NOW.  Univision NOW specializes in providing various prerecorded shows and movies in America's second-most spoken language, Spanish. Unfortunately for consumers, Defendant secretly discloses the Spanish titles and URLs of the videos they consume on this platform (via the Website and App), along with consumers' email addresses, to Endeavor Streaming, LLC ("Endeavor Streaming"), an unrelated third party, in yet another commonly used language, Hacker Pig Latin (also known as Base64).

3.      As Congress recognized in enacting the VPPA, "films are the intellectual vitamins that fuel the growth of individual thought." S. Rep. No. 100-599, at 7 (Oct. 21, 1988) (citing Senate Judiciary Subcommittee on Technology and the Law, Hearing Tr. at 10 (Aug. 3, 1988)). Indeed, the videos people watch can often reveal their private politics, religious views, or sexuality—in other words, their most personal and intimate details.  *Id.*  In enacting the VPPA, Congress decided that this intimate information "should be protected from the disruptive intrusion of a roving eye." *Id.*  The VPPA was meant to give consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers."  S. Rep. No. 100-599, at 8 (Oct. 5, 1988).  "The Act reflects the central

---

principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent."  *Id.*

4.     Defendant violated the VPPA and Cal. Civ. Code § 1799.3 by knowingly disclosing Plaintiffs and Class Members' personally identifiable information ("PII")—including the specific videos they requested and obtained, and their email addresses—to unrelated third parties without their consent.  Defendant installed Endeavor Streaming's computer code on its Website and App, called the "Neulion Tracking Code," which tracks and transmits Plaintiffs' and the Class Members' private video consumption and their emails to neulion.com when they access videos on both the Website and App.  Behind the scenes of the webpages and app pages that display the movies and series—and unbeknownst to video viewers—this code collects Plaintiffs and Class Members' video-watching history and discloses it to Endeavor Streaming, the owner of neulion.com.  All of Plaintiffs and Class Members' video viewing history is, in turn, unknowingly collected and stored by Endeavor Streaming, a third-party tracker.

## PARTIES

5.     Plaintiff Dinorath Villalobos is, and has been, at all relevant times, a citizen of California who resides in San Jose, California.  Plaintiff has been a subscriber of the Univision NOW streaming service since March of 2020 and uses the service in California via the application.

6.     Plaintiff Ezequiel Palomino is, and has been, at all relevant times, a citizen of California who resides in San Bernardino, California.  Plaintiff has been a subscriber of the Univision NOW streaming service for approximately 3 years and uses the service in California via the application.

7.     Defendant D2C, LLC, is a Delaware limited liability company with its principal place of business in Florida.  Defendant owns and operates the univisionnow.com Website and Univision NOW App, which are used throughout California and the United States.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under a law of the United States (*i.e.,* the VPPA).  This Court also has supplemental jurisdiction over the California state claim because it arises from the same

1    transactions and occurrences which give rise to the action under federal law.  This Court also has

2    jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because the

3    amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, there are more than

4    100 members of the Class and California Subclass, and there is minimal diversity.

5         9.    This Court has personal jurisdiction over Defendant because it conducts substantial

6    business and purposefully avails itself of the benefits of conducting business within California, and

7    Plaintiffs' claims arise out of Defendant's contacts with California.

8         10.   Specifically, Defendant has expressly aimed its contacts to California by operating

9    its Univision NOW platform (via the Website and App) while (1) exhibiting an intent to cultivate

10   an audience in California and (2) providing video content that has a California-specific focus.

11   Defendant exhibits an intent to cultivate an audience for its Univision NOW platform in California

12   because it has engaged in the directed act of advertising the Univision NOW platform in California.

13   This includes airing ads on the Univision Network news, which is primarily aired in California,

14   more so than in any other state in the country.  That is because the Univision Network hosts and

15   airs *more* local news stations in California than in any other state, including Florida, where it is

16   headquartered.[1]  Indeed, Defendant does not have any local news stations in many states.

17        11.   Defendant also provides videos with a California-specific focus because its videos

18   target the Spanish-speaking community, and California is the U.S. state with the largest Spanish-

19   speaking population.[2]  Further, California is also the U.S. state with the largest Mexican population

20   (34%).[3]  And videos on the Univision NOW platform are primarily Mexican-made soap operas and

21   television shows that are in Spanish, which particularly appeal to the California audience.  In fact,

22

23   [1] Univision has *five* local stations in California including Bakersfield, CA; Fresno, CA; Los
     Angeles, CA; Sacramento, CA; and San Francisco, CA.  In contrast, it has *three* local news stations
24   in Florida including Tampa, FL; Orlando, FL; and Miami, FL.  *Your City*, UNIVISION,
     https://www.univision.com/local (last accessed 6/3/2024).

25   [2] WORLD POPULATION REVIEW, https://worldpopulationreview.com/state-rankings/spanish-
     speaking-states.

26   [3] Mohamad Moslimani, Luis Noe-Bustamante, and Sono Shah, *Facts on Hispanics of Mexican
     origin in the United States, 2021*, PEW RESEARCH CENTER (Aug. 16, 2023),
27   https://www.pewresearch.org/race-and-ethnicity/fact-sheet/us-hispanics-facts-on-mexican-origin-
     latinos/#:~:text=for%20foreign%20born.-
28   ,Top%20states%20of%20residence,%25)%20and%20Colorado%20(2%25).

these videos appeal to the California audience more so than even an audience from Defendant's headquartered state of Florida.  Although Florida also has a large Spanish-speaking population, the vast majority do not come from Mexico, but rather from other nations like Cuba, the U.S. territory of Puerto Rico, and many other South American nations with their own unique Spanish dialects.[4] As such, Univision Now's Mexican soap operas are more likely to appeal to the Californian audience than the Floridian one.

12.     Next, because of Defendant's activities directing its Univision NOW streaming service to California, Defendant has been able to further obtain subscribers from California and further violate California users' rights under the VPPA and California State analog.

13.     Plaintiffs' claims arise out of Defendant's contacts with California since, but for its express aiming of the Univision NOW platform to California, California viewers like Plaintiffs would not have tuned in to the Univision Now's California-focused programming, and Plaintiffs' harms would not have occurred in California.

14.     As such, this Court's exercise of jurisdiction over Defendant is proper.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this District.  In particular, Plaintiffs reside in this District and watched videos from the Univision NOW streaming platform in this District.

## FACTUAL ALLEGATIONS

### A.     The VPPA.

16.     The origins of the VPPA begin with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court.  During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper, which was then published.  With an eye toward the digital future, Congress responded by passing the VPPA.  As Senator Patrick Leahy, who introduced the Act, explained:

---

[4] Taemin Ahn, Hector De Leon, Misael Galdàmez, Rocio Perez, Denise Ramos-Vega, Lupe Renteria Salome, Jie Zong, *15 Facts About Latino Well-Being In Florida*, UCLA Latino Policy & Politics Institute, available at https://latino.ucla.edu/research/15-facts-latinos-florida/ (last accessed 6/5/2024).

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home.  In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, or who some of the people they telephone.  I think that is wrong.  I think that really is Big Brother and I think it is something that we have to guard against.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

17.    Accordingly, the VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710(b)(1).  The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider."  18 U.S.C. § 2710(a)(3).  A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

**B.    Univision NOW, the Neulion Tracking Code, and Base64 Computer Language**

18.    Through its online streaming platform, Univision NOW, Defendant provides prerecorded Spanish-language series and movies.  Individuals can access Univision NOW content through a paid monthly subscription that costs $11.99.[5]

19.    VPPA applies to "video tape service providers," defined as "any person engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

20.    Because Defendant owns and operates an online streaming service where subscribers can watch online video content, Defendant is essentially delivering or renting access to its library of "audio visual materials"[6] to its subscribers.  Defendant is therefore engaged in the

---

[5] UNIVISION NOW, *Frequently Asked Questions*, https://www.univisionnow.com/faq.

[6] Courts have held that "audio visual materials" is a broad category that encompasses online videos.  *See In re Hulu Privacy Litigation*, No. C 11-03764 LB, 2012 WL 3282960, at *5 (N.D. Cal. Aug. 10, 2012) (holding that whether something is considered "audio visual materials"

business of rental or delivery of audio visual materials via its online streaming platform, Univision NOW, and qualifies as a video tape service providers under 18 U.S.C. § 2710(a)(4).

21.    Defendant has embedded the Endeavor Streaming code into its Website and App. Therefore, when Univision NOW subscribers utilize the service via either the Website or App, Defendant discloses users' PII to Endeavor Streaming without users' consent.

22.    Endeavor Streaming provides a content delivery network platform[7] and "market-differentiating direct-to-consumer business services"[8] to clients in the streaming industry. Endeavor Streaming's business services include "audience development" services which involve "digital marketers and analysts [to] uncover critical user behavior patterns, harness proprietary predictive insights, and optimize multi-channel OTT marketing tactics to help [clients] make informed data-driven decisions."[9]

23.    As one of Endeavor Streaming's clients, Ultimate Fight Championship ("UFC"), stated, "Endeavor Streaming's platform is what we rely on to reach our fans throughout the world. They provide us with end-to-end tooling that not only enables us to monetize our content, but also identifies new fans, reduces churn, and helps us understand our fans globally."[10]

24.    In other words, Endeavor Streaming is a marketing and advertising retargeting tool that its clients, such as Defendant, utilize to further their pecuniary interests.

25.    Endeavor Streaming's Neulion Tracking Code is identified by its API signature.  An API is a "mechanism[] that enable[s] two software components to communicate with each other using a set of definitions and protocols.  For example, the weather bureau's software system contains daily weather data.  The weather app on your phone 'talks' to this system via APIs and

---

depends on it being video content and not about how it is delivered, whether in person in a physical iteration, or online)). !

[7] ENDEAVOR STREAMING, *Platform*, https://www.endeavorstreaming.com/platform/.

[8] ENDEAVOR STREAMING, Services, https://www.endeavorstreaming.com/services/.

[9] *Id.*

[10] *Id.*

shows you daily weather updates on your phone."[11]  Put differently, an API "acts an intermediary layer that processes data transfer between systems, letting companies open their application data and functionality to external third-party developers [and] business partners[.]"[12]

26.     On each page on the Website and App where Univision NOW provides video content for subscribers to watch, Defendant has imbedded the Neulion Tracking Code.  This code tracks a user's personally identifiable information including the Spanish name of the video they are watching and users' email address in Base64.

27.     For example, Figure 1 shows that Defendant shared the title of a series being watched on the Website, *Apuesta Por Un Amor*, and the episode number "captulo-115" (meaning episode 115) with Endeavor Streaming when a user watches a video on the Website.



**Figure 1**

eventCatKey: video:69841:
eventCatMetadata: {"type":"video","id":69841,"contentName":"apuesta-por-un-amor-capitulo-115","contentLength":2417,"vs":3,"cameraAngle":-1}
eventName: EVENT_CAT_METADATA

---

[11] Amazon Web Service, *What is an API (Application Programming Interface)?*, available https://aws.amazon.com/what-is/api/ (last accessed Dec. 19, 2023).

[12] IBM, *What is an API?*, available https://www.ibm.com/topics/api (last accessed Dec. 19, 2023).

28.     Further, Figure 2 and 3 on the following page, show that Defendant generates an identification Token for its users and shares those with Endeavor Streaming.  The Token is delivered in Base64 language.  Base64 is a computer language known as "Hacker Pig Latin."[13] This computer language is designed to carry and easily transfer data between sources by compressing the data into a simple, long string of plain text.

**Figure 2**



**Figure 3**

29.     Defendant discloses the same information to Endeavor Streaming when a consumer uses Univision NOW on the App.  As seen in Figure 4 below, when a user utilizes the Univision NOW app, Defendant discloses users' information via the Neulion Tracking Code.  When one clicks on the GET and POST requests from the Neulion Tracking Code, one can see the screenshots pictured in Figures 5-6 below.

---

[13] DARK READING, Daniel Smallwood, *Hacker Pig Latin: A Base64 Primer for Security Analysts* (Jan. 21, 2021), available https://www.darkreading.com/cybersecurity-analytics/hacker-pig-latin-a-base64-primer-for-security-analysts (last accessed Dec. 19, 2023).

1

2

**Figure 4**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



30.     For example, Figure 5 below shows that Defendant shared the Spanish title of a series being watched on the App, *Amor Prohibido*, and the episode number "captulo-68" (meaning episode 68) with Endeavor Streaming when a user watches a video on the App.

**Figure 5**



31.     Further, Figure 6 on the following page, shows that Defendant also generates an identification Token for its users via the App and shares those with Endeavor Streaming.  The Token on the App also delivers a user's email address in Base64.

**Figure 6**



32.     Unfortunately for the privacy rights of Univision NOW consumers, by publishing the identification Token in Base64 instead of encrypting this information, Defendant makes consumer's email addresses readily translatable into English.  The Base64 language is as easily translatable as Spanish, Serbian, or Swahili.  And just as any ordinary person can cut-and-paste Russian text into Google Translate to figure out what it means in English, any ordinary person can cut and paste Base64 text into any one of a myriad of Base64 decoding websites and figure out what the Base64 text means.  Therefore, even though Defendant shares Plaintiffs and Class Members' email addresses with Endeavor Streaming in Base64, the email addresses are personally *identifiable* information because the email addresses are easily translated into English and can be used to identify a subscriber.

33.     For example, Figure 7 shows the identification Token published in Base64 from Figures 2 and 3 above, inserted in a publicly available Base64 decoding website, https://www.base64decode.org/, revealing user's personally identifiable information, collected and existing in the string:

1

**Figure 7**

2

**Decode from Base64 format**

3

Simply enter your data then push the decode button.

4

eyJhbGciOiJIUzI1NiIsInR5cCI6IkpXVCJ9.eyJpYXQiOjE3MDM4NzU2NzYsImV4cCI6MTcwMzg4Mjg3Niwic3ViIjoiaWRpYXpAYnVyc29yLmNvbSIsImxpZCI6IjM1OTUzMDMiLCJhdWQiOiJ1bml2aXNpb25ub3ciLCJqdGkiOiI5ZDM1NTQwNDY2YzIzZGU5ZjY5NmM5YW5MM5YWI3ZjAwMDAwMSIsImlzcyI6InVuaXZpc2lvbm5vdyJ9.zOMlEhwtdtgxTkMdJ2jMI92xY3lnDAQA4gAvroI6TtU&ts=1703875713198

5

6

7

8

ⓘ For encoded binaries (like images, documents, etc.) use the file upload form a little further down on this page.

9

| UTF-8 ⌄ | Source character set. |

10

☐ Decode each line separately (useful for when you have multiple entries).

⟺ Live mode OFF   Decodes in real-time as you type or paste (supports only the UTF-8 character set).

11

< **DECODE** >   Decodes your data into the area below.

12

{"alg":"HS256","typ":"JWT"}{"iat":1703875676,"exp":1703882876,"sub":"idiaz@bursor.com","lid":"3595303","aud":"univisionnow","jti":"9d35540466c23de9f696c9ab7f000001","iss":"univisionnow"}  -v1NC'h'cyg ��/:-^}

13

14

  34.  Further, Figure 8 shows the identification Token published in Base64 from Figure 6

15

above, inserted in the same publicly available Base64 decoding website,

16

https://www.base64decode.org/, revealing user's personally identifiable information, collected and

17

existing in the string:

18

19

20

21

22

23

24

25

26

27

28

1

**Figure 8**



35.     In seconds, a regular person can translate Base64 text and sift out the user's

personally identifiable information, clearly indicating their email address.

36.     In fact, because Base64 encoding is limited to 64 available characters to use in its

generated data strings,[14] "decoding it is trivial.  Simple, free Base64 encode/decode tools are easy

to find online."[15]

**C.     The Base64 Computer Language Is Distinctive and Easily Recognizable.**

37.     Like many other languages' distinctive sounds and symbols, Base64 has a

distinctive alphabet and structure.  Whereas other computer languages frequently use special

---

[14] Akshay Khot, *Base64 Encoding, Explained* (Oct. 23, 2023), available
https://www.writesoftwarewell.com/base64-encoding-explained/ (last accessed Dec. 19, 2023).

[15] Daniel Smallwood, *Hacker Pig Latin: A Base64 Primer for Security Analysts* (Jan. 21, 2021),
available https://www.darkreading.com/cybersecurity-analytics/hacker-pig-latin-a-base64-primer-
for-security-analysts (last accessed Dec. 19, 2023).

1 characters, the Base64 alphabet is limited from A-Z, a-z, 0-9, +, and /.[16]  This is a by-product of its

2 alphabet being used to encode 6-bit strings of binary data (like "011011") into one letter in its 64-

3 character alphabet.[17][18]  Moreover, any text in Base64 is always encoded in groups of four

4 characters, and Base64 will use the "=" symbol for the first and only time at the very end of a

5 string to ensure the string ends in a multiple of four.[19]

6      38.    Moreover, any ordinary person can input Base64 text into one of several generative

7 AI chatbots like ChatGPT, and the AI will instantly recognize that the text is Base64.  ChatGPT

8 can then translate the text for the person.  *See* Figures 9-11.

**Figure 9**



---

[16] B64ENCODE, *Base 64 Characters: A Comprehensive Guide with Tables, Regular Expressions, and More*, https://b64encode.com/blog/base64-characters/ (last accessed December 26, 2023).

[17] MEDIUM, Chris Morrow, *An Introduction to Base64 Encoding*, https://levelup.gitconnected.com/an-introduction-to-base64-encoding-716cdccc58ce (last accessed Dec. 26, 2023).

[18] In other words, because 2 to the power of 6 is 64, a 64-character alphabet like Base64 can encode 6-bit binary data.

[19] B64ENCODE, *Base 64 Characters: A Comprehensive Guide with Tables, Regular Expressions, and More*, https://b64encode.com/blog/base64-characters/ (last accessed December 26, 2023).

**Figure 10**



The text you provided appears to be a JSON Web Token (JWT). JWTs are used for securely transmitting information between parties in a compact and self-contained manner. They typically consist of three parts separated by dots:

1. Header: eyJhbGciOiJIUzI1NiIsInR5cCI6IkpXVCJ9
2. Payload:
   eyJpYXQiOjE3MDM4NzU2NzYsImV4cCI6MTcwMzg4Mjg3Niwic3ViIjoiaWRpoiaWRpYXpAYn
   Vyc29yLmNvbSIsImxpZjI6IjM1OTUzMDMiLCJhdWQiOiJ1bml2aXNpdWJ1cnNidciLCJqdG
   kiOiI5ZDM1NTQwNDY2YzIzZGU5ZjY5NmM5YWI3ZjAwMDAwMSIsImIzcyI6InVuaXZXZp
   c2lvbm5vdydJ9
3. Signature: zOMIEhwtdtgxTkMdJ2jMl92xY3lnDAQA4gAvroI67tU

JWTs are often used for authentication and authorization purposes. The header typically specifies the algorithm used to sign the token, and the payload contains claims or information about the user. The signature is used to verify the authenticity of the token.

As for the encoding scheme, JWTs are typically encoded using Base64Url encoding, which is a variant of Base64 encoding with some modifications to make it URL-safe. The parts of the JWT (header, payload, and signature) are base64url-encoded. You can decode these parts if needed to access the information within the token.

If you have specific questions or need to perform any actions with this JWT, please let me know, and I'll be happy to assist further.

You

Message ChatGPT...

ChatGPT can make mistakes. Consider checking important information.

1

**Figure 11**

2



20   39.    As applied here, the fact that Plaintiffs' email addresses were disclosed in the

21   commonly used Base64 language as opposed to the English language is immaterial under the

22   VPPA.  Unlike many other countries, the United States is a melting pot with no official language.

23   It makes no difference whether personally identifiable information is disclosed in one language as

24   opposed to another.

25         **D.    Plaintiff Ezequiel Palomino's Experience**

26   40.    Around 3 years ago, Plaintiff Ezequiel Palomino created a Univision NOW account

27   using his Yahoo email account which bore his real-life name and began paying for a subscription.

28

41.     Since creating the account, Plaintiff Palomino frequently visited Univision NOW to watch various movies and series for entertainment.

42.     When Plaintiff Palomino watched Defendant's videos through his Univision NOW account, Defendant disclosed his event data, which recorded and disclosed the video's URL, video title in Spanish, as well as Plaintiff's email address in Base 64 to Endeavor Streaming.

43.     By disclosing his event data and identifiers, Defendant disclosed Plaintiff's personally identifiable information to a third party, Endeavor Streaming.

44.     Plaintiff discovered that Defendant surreptitiously collected and transmitted his personally identifiable information in March 2024.

**E.     Plaintiff Dinorath Villalobos' Experience**

45.     In March of 2020, Plaintiff Dinorath Villalobos created a Univision NOW account using her Yahoo email account which bore her real-life name and began paying for a subscription.

46.     Since creating the account, Plaintiff Villalobos frequently visited Univision NOW to watch various movies and series for entertainment.

47.     When Plaintiff Villalobos watched Defendant's videos through her Univision NOW account, Defendant disclosed her event data, which recorded and disclosed the video's URL, the video title in Spanish, as well as Plaintiff's email address in Base64 to Endeavor Streaming.

48.     By disclosing her event data and identifiers, Defendant disclosed Plaintiff's personally identifiable information to a third party, Endeavor Streaming.

49.     Plaintiff discovered that Defendant surreptitiously collected and transmitted his personally identifiable information in March 2024.

## CLASS ALLEGATIONS

50.     **Class Definition:**  Plaintiffs seek to represent a nationwide class defined as (the "Class):

> All similarly situated individuals in the United States who have a Univision NOW account and viewed Univision NOW videos via the Website, univisionnow.com, and/or the mobile App, Univision NOW.

51.     **California Subclass:** Plaintiffs also seek to represent a California Subclass defined as (the "Subclass"):

All similarly situated individuals in California who have a Univision NOW account and viewed Univision NOW videos via the Website, univisionnow.com, and/ or the mobile App, Univision NOW.

52.     Subject to additional information obtained through further investigation and discovery, the above-described Class and Subclass may be modified or narrowed as appropriate.

53.     **Numerosity:**  Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of Univision NOW consumers who are Class and Subclass members and who have been damaged by Defendant's unlawful disclosures.

54.     **Commonality and Predominance:**  There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class and Subclass that predominate over questions that may affect individual members of the Class and Subclass include:

(a)     whether Defendant is a Video Tape Service Provider within the meaning of the VPPA.

(b)     whether Defendant collected Plaintiffs' and the Class's PII;

(c)     whether Defendant unlawfully disclosed and continues to disclose its consumers' PII in violation of VPPA;

(d)     whether Defendant's disclosures were committed knowingly; and

(e)     whether Defendant's conduct violates California Civil Code § 1799.3;

(f)     whether Defendant's conduct under California Civil Code § 1799.3 was willful;

(g)     whether Defendant disclosed Plaintiffs', the Class's, and Subclass's PII without consent.

55.     **Typicality:**  Plaintiffs' claims are typical of the claims of the Class and Subclass because Plaintiffs, like members of the Class and Subclass, were Univision NOW consumers who consumed Univision NOW videos either through the Website or App.  Plaintiffs were consumers under the VPPA who, with Defendant's knowledge, had their PII tracked and disclosed without their consent.

56.     **Adequacy:**  Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this class action.  Neither Plaintiffs, nor their counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Class and Subclass.  Plaintiffs are able to fairly and adequately represent the interests of the Class and Subclass.  Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and Subclass and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of this Court to amend this complaint to include additional Class Representatives to represent the Class or Subclass or additional claims as may be appropriate.

57.     **Superiority:**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class and Subclass is impracticable.  Even if every member of the classes could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the classes.  Plaintiffs anticipate no difficulty in the management of this action as a class action.  Class-wide relief is essential to compel compliance with the VPPA.

## CAUSES OF ACTION
### COUNT I
**Violation of the Video Privacy Protection Act**
**18 U.S.C. § 2710, *et seq.***
**(On Behalf of the Class and Subclass)**

58.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

60.     Defendant is a "video tape service provider" because it creates, hosts, and delivers thousands of videos on its website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  In particular, Defendant provides a library of audio visual materials to consumers for a monthly fee, and inaccessible to users without Univision NOW accounts.

61.     Plaintiffs and members of the Class are "consumers" because they have subscriptions of the Univision NOW streaming service and pay a monthly fee to watch videos.  18 U.S.C. § 2710(a)(1).

62.     Defendant disclosed to a third party, Endeavor Streaming, Plaintiffs and the Class and Subclass members' personally identifiable information.  Defendant utilized Endeavor Streaming's Neulion Tracking Code to compel Plaintiffs' web browsers and internet-connected smartphone applications to transfer their personally identifying information, like their email, along with their event data, like the titles of the videos they watched.

63.     Plaintiffs and the Class and Subclass members viewed and accessed the videos using their Univision NOW accounts via the Website, univisionnow.com and/or the mobile App Univision NOW.

64.     Defendant knowingly disclosed Plaintiffs' PII because it used the data and installed Endeavor Streaming's Neulion Tracking Code in the background of its webpages and mobile app—which hosted the videos—for targeted advertising and remarketing.

65.     Plaintiffs and the Class and Subclass members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

66.     Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA.  Specifically, Defendant's disclosures to Endeavor Streaming were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership."  18 U.S.C. § 2710(a)(2).  Instead, Defendant's disclosures were made for advertising

purpose to further monetize its platform.  This purpose falls outside the ordinary course of business exception the VPPA affords.

A.      On behalf of himself, the Class, and Subclass, Plaintiffs seek: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff, the Class, and Subclass by requiring Defendant comply with the VPPA's requirement for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fee and costs and other litigation expenses.

<u>**COUNT II**</u>
**Violation of California Civil Code § 1799.3**
**(On Behalf of the Subclass)**

67.      Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

68.      Plaintiffs bring this claim individually and on behalf of the members of the proposed Subclass against Defendant.

69.      Cal. Civ. Code § 1799.3(a) prohibits a "person providing video recording sales … services" from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

70.      Defendant is a "person providing video recording sales … services" because it sells access to it online platform via its Website, univisionnow.com, and App, Univision NOW, which creates, hosts, and delivers thousands of videos on its website.  Alternatively, Defendant is a "person providing video recording … rental services" because it rents to consumers access to its video records every month in exchange for a monthly subscription fee.

71.      Defendant disclosed to a third party, Endeavor Streaming, Plaintiffs' and the Proposed Subclass Members' personal information.  Defendant utilized Endeavor Streaming's Neulion Tracking Code to compel Plaintiffs' web browser and internet-connected smartphone applications to transfer Plaintiffs' personal information, like their emails, as well as Plaintiffs and Subclass Members' event data, like the title of the videos they viewed.

72.     Plaintiffs and the Class and Subclass members viewed and accessed the videos using their Univision NOW accounts via the Website, univisionnow.com and/or the mobile App.

73.     Defendant knowingly disclosed Plaintiffs' PII because it used the data and installed Endeavor Streaming's Neulion Tracking Code in the background of its webpages and mobile application—which hosted the videos—for targeted advertising and remarketing.

74.     Plaintiffs and the Subclass Members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

75.     On behalf of themselves and the Subclass, Plaintiffs seek: (i) declaratory relief; (ii) injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Subclass by requiring Defendant comply with Cal. Civ. Code § 1799.3's requirements for protecting a consumer's PII; (iii) statutory damages of $500 for each violation of this law pursuant to Cal. Civ. Code § 1799.3(c), and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a)     For an order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the Class and Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and the Subclass;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiffs, the Class, and Subclass on all counts asserted herein;

(d)     An award of statutory damages to the extent available;

(e)     For punitive damages, as warranted, in an amount to be determined at trial;

(f)     For prejudgment interest on all amounts awarded;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiffs, the Class, and Subclass their reasonable attorneys' fees and expenses and costs of suit.

1

## **JURY TRIAL DEMANDED**

2

Plaintiffs demand a trial by jury on all claims so triable.

3

4

Dated:  June 6, 2024

5

**BURSOR & FISHER, P.A**.

6

By:   */s/ Ines Diaz Villafana*
Ines Diaz Villafana

7

8

Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ndeckant@bursor.com
          sbogdanovich@bursor.com
          idiaz@bursor.com

9

10

11

12

*Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28