Alexandria V. Ruiz (SBN 313286)
aruiz@sidley.com
SIDLEY AUSTIN LLP
350 S. Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Dianne O. Fischer (*admitted Pro Hac Vice*)
deedee.fischer@sidley.com
Ian Ross (*admitted Pro Hac Vice*)
iross@sidley.com
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Telephone: +1 305 391 5100
Facsimile: +1 305 391 5101

*Attorneys for Defendant*
D2C, LLC, d.b.a. UNIVISION NOW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| DINORATH VILLALOBOS and EZEQUIEL PALOMINO, individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>D2C, LLC, d.b.a. UNIVISION,<br><br>Defendant. | Case No. 5:24-cv-01517-BLF<br>Assigned to Hon. Beth Labson Freeman<br><br>**DEFENDANT D2C, LLC's (D.B.A. UNIVISION NOW) NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Time: 9:00 am<br>Hearing Date: October 17, 2024<br>Place: Courtroom 3 – 5th Floor<br><br>Action Filed: March 12, 2024<br>Trial Date: Not set |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 17, 2024 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3, 5th Floor of San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant D2C, LLC, d.b.a. UNIVISION NOW ("Univision NOW"), shall and hereby does move to dismiss Plaintiffs Dinorath Villalobos and Ezequiel Palomino's ("Plaintiffs") First Amended Class Action Complaint (the "FAC") pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and such other matters as the Court may consider.

## STATEMENT OF ISSUES PRESENTED

1. Whether the FAC should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction;

2. Whether Plaintiffs' VPPA claims relating to the Website should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs only used Univision NOW's mobile application and therefore lack standing to sue for VPPA violations relating to the Website;

3. Whether the FAC should be dismissed under Rule 12(b)(6) because any disclosure by Univision NOW to third-party service provider Endeavor Streaming is incident to Univision NOW's ordinary course of business, and therefore subject to the VPPA's ordinary course of business exception, 18 U.S.C. § 2710(b)(2)(E);

4. Whether the FAC should be dismissed under Rule 12(b)(6) because an ordinary person could not identify Plaintiffs or other Univision NOW subscribers from the disclosed data, *see Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017);

5. Whether the FAC should be dismissed under Rule 12(b)(6) because Plaintiffs' claims are barred under the applicable statute of limitations; and

6. Whether the FAC should be dismissed under Rule 12(b)(6) as to Plaintiffs' claims under Civil Code § 1799.3 on the same grounds as those relating to the VPPA.

///

///

# TABLE OF CONTENTS


Page

INTRODUCTION ....1

BACKGROUND ....2

I. THE VPPA....2

II. CALIFORNIA CIVIL CODE § 1799.3....3

III. PLAINTIFFS' ALLEGATIONS AND PURPORTED CAUSES OF ACTION....3

ARGUMENT....7

I. THE COURT LACKS PERSONAL JURISDICTION OVER UNIVISION NOW. ....7

A. There Is No General Jurisdiction Over Univision NOW in California. ....17

B. There Is No Specific Jurisdiction Over Univision NOW in California. ....17

1. There is No Purposeful Direction Toward California....8

a. The Alleged Act Was Not "Expressly Aimed" at California....8

b. Univision NOW's Alleged Actions Did Not Cause Harm That Univision NOW Knew Was Likely to be Suffered in California. ....11

2. Plaintiffs' Claims Do Not Arise Out Of Or Relate To Univision NOW's Forum-Related Activities. ....12

3. Subjecting Univision NOW to Jurisdiction in California Would Be Unreasonable. ....13

II. PLAINTIFFS LACK STANDING TO BRING VPPA CLAIMS PREMISED ON DISCLOSURES VIA UNIVISION NOW'S WEBSITE. ....14

III. PLAINTIFFS FAIL TO STATE A VIOLATION OF THE VPPA....16

A. Plaintiffs' Claims Are Precluded by the VPPA's "Ordinary Course of Business" Exception. ....17

B. Alleged Disclosures Encoded in Base64 Do Not Constitute PII Because An Ordinary Person Cannot Identify Univision NOW Users From Such Data. ....19

C. Plaintiffs' Claims are Time-Barred by the Two-Year Limitations Period. ....22

IV. PLAINTIFFS FAIL TO STATE A VIOLATION OF CIVIL CODE § 1799.3. ....23

CONCLUSION....23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ....................8, 9, 10, 11

*Ayer v. White*,
No. 21-cv-08773, 2022 WL 657502 (C.D. Cal. Mar. 4, 2022)....................12

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ....................9, 13

*Bates v. United States Parcel Serv., Inc.*,
511, F.3d 974 (9th Cir 2007) ....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................18

*Brand v. Menlove Dodge*,
796 F.2d 1070 (9th Cir. 1986) ....................8

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................10

*Caruth v. Int'l Psychoanalytical Ass'n*,
59 F.3d 126 (9th Cir. 1995) ....................14

*Chorost v. Rotor Amer. Inc.*,
No. 21-CV-00235, 2022 WL 17361299 (D. Ariz. Aug. 8, 2022)....................12

*Crouch v. Ruby Corp.*,
639 F. Supp. 3d 1065 (S.D. Cal. 2022)....................10

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) ....................9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................7

*DFSB Kollective Co. v. Bourne*,
897 F. Supp. 2d 871 (N.D. Cal. 2012) ....................10, 11

*Doe One v. CVS Pharmacy, Inc.*,
Case No. 18-cv-01031, 2024 WL 1707229 (N.D. Cal. Apr. 18, 2024)....................15

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) ....................18

*Dysthe v. Basic Research LLC*,
No. 09-8013, 2011 WL 5868307 (C.D. Cal. Jun. 13, 2011) .......... 16

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 2, 20

*Fan v. NBA Props., Inc.*,
No. 23-cv-05063, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 23

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
592 U.S. 351 (2021) .......... 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 7

*Granfield v. NVIDIA Corp.*,
No. C 11–05403, 2012 WL 2847575 (N.D. Cal. July 11, 2012) .......... 15

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 9

*Herskowitz v. Apple Inc.*,
940 F.Supp.2d 1131 (N.D. Cal. 2013) .......... 16

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023) .......... 16

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 16

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) .......... 8

*Lorentzen v. Kroger Co.*,
532 F. Supp. 3d 901 (C.D. Cal. 2021) .......... 16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 15

*Martin v. Outdoor Network LLC*,
No. 23-cv-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) .......... 13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 7, 9

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 15

*McDonald v. Sun Oil Co.*,
548 F.3d 774 (9th Cir. 2008) .......... 22

*Mlejnecky v. Olympus Imaging Am. Inc.*,
No. 2:10-CV-02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ......................................16

*Moledina v. Mariott, Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) ......................................................................11

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ..........................................................................2, 3, 23

*Neumann v. Red Rock 4-Wheelers, Inc.*,
No. 19-cv-02160, 2022 WL 3370170 (D. Nev. Aug. 15, 2022).............................................12

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)..........................................................................................2, 20

*Rancourt v. Meredith Corp.*,
No. 22-cv-10696, 2024 WL 381344 (D. Mass. Feb. 1, 2024)..........................................17, 19

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .........................................................................................12

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022) .........................................................................................12

*Rodriguez v. Sony Computer Ent. Amer., LLC*,
801 F.3d 1045 (9th Cir. 2015) .......................................................................................3, 17

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
60 F.4th 481 (9th Cir.), *opinion amended and superseded on denial of reh'g*,
65 F.4th 1012 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023)..........................................8

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................................................................................8, 10, 11

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) ..........................................................................22, 23

*Shulman v. Kaplan*,
58 F.4th 404 (9th Cir. 2023) ...........................................................................................15

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) .........................................................................................13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........................................................................................................15

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g*,
275 F.3d 1187 (9th Cir. 2001) .........................................................................................18

*Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014) ....................3, 17, 18, 19

*Timboe v. Clark*, No. 20-cv-08719, 2022 WL 991721 (N.D. Cal. Mar. 31, 2022) ....................22

*Walden v. Fiore*, 571 U.S. 277 (2014)....................12

*Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989 (9th Cir. 2006) ....................22

*Williams v. California*, 764 F.3d 1002 (9th Cir. 2014) ....................18

*Yershov v. Gannett Satellite Info Network, Inc.*, 820 F.3d 482 (1st Cir. 2016)....................20

**Statutes**

18 U.S.C. § 2710 .................... *passim*

Cal. Civ. Proc. Code § 1799.3.................... *passim*

**Rules**

Fed. R. Civ. P. 4 ....................7

Fed. R. Civ. P. 12 ....................16

**Other Authorities**

Senate Judiciary Committee Report on S.B. No. 2248, 1987-88 Regular Session (1988) ..........23

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In the FAC, Plaintiffs allege that online streaming service Univision NOW improperly shared subscribers' email addresses and titles of the videos watched on the Univision NOW service with its third-party web host and customer service provider, Endeavor Streaming ("Endeavor"), in violation of the Video Privacy Protection Act (the "VPPA" or the "Act") and California Civil Code § 1799.3. Specifically, Plaintiffs allege that Univision NOW installed a piece of code (which Plaintiffs refer to as "Neulion Tracking Code") on its website (the "Website") and mobile application (the "App"). Plaintiffs allege that Univision NOW uses the Neulion Tracking Code to disclose to Endeavor subscribers' private video viewing history and email addresses in an "identification Token"[1] encoded in Base64, an encoding scheme Plaintiffs sometimes refer to as "Hacker Pig Latin."

Univision NOW moved to dismiss Plaintiffs' original complaint for, among other things, lack of personal jurisdiction and failure to state a claim. Rather than respond to that motion, Plaintiffs filed the FAC, which tries but fails to address deficiencies in their claims. The FAC should be dismissed on the following grounds:

***First***, Plaintiffs fail to demonstrate a basis for the Court to assert either general or specific personal jurisdiction over Univision NOW.

***Second***, Plaintiffs lack standing to sue for VPPA violations allegedly associated with the Website because both Plaintiffs admit they only accessed Univision NOW through the App.

***Third***, any disclosure of Univision NOW subscriber information to third-party web host and customer service provider Endeavor falls within VPPA's "ordinary course of business" exception. 18 U.S.C. § 2710(b)(2).

***Fourth***, Plaintiffs fail to allege that the Neulion Tracking Code disclosed personally identifiable information to Endeavor because an ordinary person cannot readily identify a Univision NOW subscriber from data encoded in Base 64, as required under the VPPA.

---

[1] Plaintiffs refer to an "identification Token" numerous times but fail to explain what it is. *See, e.g.*, FAC ¶¶ 28, 31-34.

***Fifth***, Plaintiffs' VPPA claims are time-barred under the applicable statute of limitations. Under the VPPA, claims must be brought within two years of the date of conduct complained of or discovery. According to Plaintiffs, their claims arose when they began watching content on Univision NOW, which was "around three years ago" for Palomino and in March 2020 for Villalobos. FAC ¶¶ 40-41, 44-45. Plaintiffs fail to allege sufficient facts to invoke any tolling doctrines to revive their claims.

***Finally***, because California Civil Code § 1799.3 closely tracks the VPPA, Plaintiffs' second claim fails for all the same reasons that their VPPA claims fail.

Accordingly, the Court should dismiss the FAC in its entirety.

## BACKGROUND

### I. THE VPPA

Congress enacted the VPPA more than 35 years ago in response to a newspaper's publication of then-Supreme Court nominee Judge Robert Bork's video rental history. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citing S. Rep. 100-599, at 5 (1988), *reprinted* in 1988 U.S.C.C.A.N. 4342-1). According to the Senate Report accompanying the law's passage, Congress passed the Act "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016).

The VPPA generally prohibits "video tape service providers" from knowingly disclosing, to third parties, "personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b). A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1). And "personally identifiable information" ("PII") is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3). The Ninth Circuit has held "that 'personally identifiable information' means only information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *See Eichenberger*, 876 F.3d at 985; *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 283.

///

The VPPA contains an exception that permits disclosures of PII made "incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E). The Ninth Circuit has held that this exception applies to "intra-corporate disclosures of consumers' personal information" for the purpose of sustaining business operations, and other courts have similarly applied it to disclosures to a defendant's service providers as part of the provider's normal services. *See Rodriguez v. Sony Computer Ent. Amer., LLC*, 801 F.3d 1045, 1054-55 (9th Cir. 2015) (granting defendant's motion to dismiss, noting that "[T]he Senate Report [regarding the VPPA] reflects Congress' awareness of the unremarkable fact that no business is an island and that video tape services providers, like many other business, 'may use third parties in their business operations' . . . ."); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 626 (7th Cir. 2014) (finding that "wholesale disclosure of information pertaining to all customers" to a third party service provider for the purpose of supporting the provision of Redbox's services did not contravene the Act based on "'ordinary course of business' exception").

## II. CALIFORNIA CIVIL CODE § 1799.3

California Civil Code § 1799.3 also prohibits disclosure of video recording sale or rental services records. Section 1799.3 provides:

> No person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual.

Cal. Civ. Code § 1799.3(a). To violate this statute, the disclosure must be willful. *Mollett*, 795 F.3d at 1067 (citation omitted); Cal. Civ. Code § 1799.3(c).

## III. PLAINTIFFS' ALLEGATIONS AND PURPORTED CAUSES OF ACTION

Univision NOW is an online streaming service that offers programming through a paid monthly subscription. FAC ¶ 18. Endeavor provides a content delivery network platform and "market-differentiating direct-to-consumer business services" to clients in the streaming industry. *Id.* ¶ 22. Lifting language from Endeavor's website, Plaintiffs note that among the suite of services Endeavor offers is "audience development" services using its "digital marketers and analysis [to]

uncover critical user behavior patterns, harness proprietary predictive insights, and optimize multi-channel OTT marketing tactics to help [clients] make informed data-driven decisions." *Id.* ¶ 22 and nn. 7-9. However, Plaintiffs *do not* allege that Univision NOW engages Endeavor for its "audience development" services.

Plaintiffs allege that Univision NOW, as part of its relationship with Endeavor, embeds the Neulion Tracking Code on its Website and App to track users' email addresses and the titles of content watched. FAC ¶ 26. Plaintiffs further allege that users' email addresses and titles watched are disclosed to Endeavor in Base64. *Id.* ¶¶ 26, 28, 32.

Plaintiffs rely heavily on their mischaracterization of Base64 as a "language," claiming it is no more difficult to "translate" than "Spanish, Serbian, or Swahili." FAC ¶ 32. However, identifying a subscriber from information encoded in Base64 does not just require translation of information from one language into another; the numerous articles Plaintiffs cite in their FAC make clear that Base64 is an encoding scheme used to hide the contents of a communication, and must be decoded for the communication to be understood. *See, e.g.*, FAC at 13 n.15 (citing Daniel Smallwood, *Hacker Pig Latin: A Base64 Primer for Security Analysts* (Jan. 21, 2021) ("The Base64 encoding scheme is often used to hide the plaintext elements in the early stages of an attack that can't be concealed under the veil of encryption."); *id.* at 13 n.14 (Akshay Khot, *Base 64 Encoding, Explained*, Oct. 23, 2023 ("Base64 encoding takes binary data and converts it into text, specifically ASCII text. The resulting text contains only letters from A-Z, a-z, numbers from 0-9, and the symbols + and /. As there are 26 letters in the alphabet, we have 26 + 26 + 10 + 2 characters. Hence this encoding is named Base64. These 64 characters are considered "safe," that is, "they cannot be misinterpreted by legacy computers and programs unlike characters such as <, >, \n and many others.")); *id.* at 14 n.17 (Chris Morrow, *An Introduction to Base 64 Encoding*, Aug. 9, 2021 ("If you are in web development, data engineering, or cybersecurity, you might have heard of Base64. If you've seen examples of Base64 text, it looks like gibberish. You might have asked yourself 'What is this?', and more importantly, 'What is this used for?'")).

As evidence of Univision NOW's alleged disclosure to Endeavor, Plaintiffs present Figure 1, which they claim shows disclosure of a title and episode number of a series watched on the Website.

*Id.* at 7, ¶ 27. However, the alleged title is not displayed in Base64, nor is there any non-conclusory allegation that the information contained in Figure 1 was disclosed to Endeavor, which is not mentioned or referenced at all. Moreover, Figure 1 does not appear to contain an email address or any other identifying information, in either Base64 or otherwise, and in fact, it is not clear whose account Figure 1 relates to. *Id.*

Plaintiffs allege that Figures 2 and 3 of the FAC show an "identification Token" allegedly generated by Univision NOW, encoded in Base64, and purportedly shared with Endeavor. The Token is two to three lines long, with what appears to be hundreds of random characters, or "gibberish" as Plaintiffs' authority characterizes it. FAC at 14 n.17 (citing Morrow, *An Introduction to Base 64 Encoding*, Aug. 9, 2021). Nothing in the Token displays an email address or a video title—in fact, as discussed below, even when Plaintiffs decode these identification tokens, while an email address appears, the video title, which is required under the definition of PII applicable to the VPPA, does not.

Plaintiffs allege that Figure 4 of their FAC, which appears to be a screenshot from an iPhone of an unidentified person, shows what is disclosed to Endeavor when a consumer uses Univision NOW on the App. FAC ¶ 29. However, again, nothing in Figure 4 looks like an email address or a video title. There is also nothing in Figure 4 that suggests that the information displayed was disclosed to Endeavor, which is not mentioned or referenced at all.

Plaintiffs allege that Figure 5, which appears to be another screenshot from an unidentified iPhone, shows that Univision NOW disclosed the title of a series "being watched on the App." FAC at 10, ¶ 30. However, while there appears to be the title of a series on Univision NOW, the title is not encoded in Base64, there is no email address to associate the video title to a particular subscriber, and there is nothing showing that the information was disclosed to Endeavor. *Id.*

Plaintiffs allege that Figure 6 shows that Univision NOW generates an identification Token in Base64 for App users and shares it with Endeavor. *See* FAC ¶ 31. While there is a section of Figure 6 with the word "token," again it contains only eight lines of random figures, and there is no email address or video title. *Id.* Moreover, nothing in Figure 6 shows that the information was shared

///

with Endeavor. Moreover, unlike the other screen shots, the screenshot appears to have been altered, in that the bottom half appears to have been cut off, with no explanation as to why.

As for Figures 7 and 8, FAC at 12-13, Plaintiffs allege that they show the decoding of the Base64 identification Tokens shown in Figures 2 and 3, *id.* ¶ 33, and Figure 6, *id.* ¶ 34, respectively. However, while the decoded identification Tokens from the Website and App appear to contain the email address for Plaintiffs' counsel, neither of the decoded Tokens contains anything that resembles a video title. *Id.* In fact, Plaintiffs' FAC contains no examples of identification Tokens encoded in Base64 that, when decoded, show both an email address and a video title—both of which are required for a claim under the VPPA.

Plaintiffs claim that they created accounts with Univision NOW using their email addresses and have accessed Univision NOW content, solely on the App, over an unspecified period of time. FAC ¶¶ 40-49. Both Plaintiffs claim that as a result of watching Univision NOW programming on the App, their email addresses and video titles were disclosed to Endeavor. *Id.* ¶¶ 42, 47. Plaintiffs claim, without further explanation, that they only discovered in March 2024 that this information was transmitted to Endeavor. *Id.* ¶¶ 44, 49.

Plaintiffs make no allegation that they ever watched videos *on the Website*, nor do they allege that the Neulion Tracking Code *on the Website* ever disclosed their email addresses or video titles to Endeavor, in Base64 or otherwise.

Based on these allegations, Plaintiffs attempt to allege two causes of action against Univision NOW: (1) Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq*., FAC ¶¶ 58-66; and (2) Violation of California Civil Code § 1799.3, *id*. ¶¶ 67-75. For the VPPA claim, Plaintiffs seek to represent a nationwide class of "[a]ll similarly situated individuals in the United States who have a Univision NOW account and viewed Univision NOW videos via the website, univisionnow.com, and/or the mobile App, Univision NOW." *Id*. ¶ 50. As for the California claim, Plaintiffs seek to represent a California subclass of "[a]ll similarly situated individuals in California who have a Univision NOW account and viewed Univision NOW videos via the website, univisionnow.com, and/or the mobile App, Univision NOW." *Id*. ¶ 51. Plaintiffs demand statutory damages, declaratory and injunctive relief, and fees and costs. *Id*. ¶¶ 66, 75.

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER UNIVISION NOW.

"Exercises of personal jurisdiction" are limited "by due process constraints on the assertion of adjudicatory authority." *Daimler AG v. Bauman*, 571 U.S. 117, 121-122 (2014). Federal courts "follow state law in determining the bounds of their jurisdiction over persons." *Id.* at 125 (citing Fed. R. Civ. P. 4(k)(1)(A)). Thus, federal due process and the law of the forum State set the limits for this Court's exercise of personal jurisdiction—a single inquiry here, since "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id*. at 117. Plaintiffs, as the party seeking to invoke personal jurisdiction, bear the burden of establishing that jurisdiction exists. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Based on the allegations in the FAC, there is neither general nor specific personal jurisdiction over Univision NOW. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (personal jurisdiction over a defendant may be "general" or "specific"). This Court lacks general jurisdiction over Univision NOW because California is not Univision NOW's place of incorporation or principal place of business. And this Court lacks specific jurisdiction over Univision NOW because Univision NOW has not purposefully directed acts toward California that gave rise to Plaintiffs' claims, nor would exercising specific jurisdiction be reasonable under due process principles. The FAC should therefore be dismissed for lack of personal jurisdiction.

#### A. There Is No General Jurisdiction Over Univision NOW in California.

General jurisdiction exists only where a defendant is "essentially at home." *Goodyear*, 564 U.S. at 919. For "a corporation, the place of incorporation and principal place of business" are the paradigmatic forums. *Daimler AG*, 571 U.S. at 137. Otherwise, to be subject to general jurisdiction, a corporation's contacts must be "so 'continuous and systematic' as to render [them] essentially at home in the forum State," which could only occur in an "exceptional case." *Id*. at 139 & n.19.

The FAC provides no basis to find general jurisdiction over Univision NOW. As Plaintiffs allege, Univision NOW is incorporated in Delaware and has its principal place of business in Florida. FAC ¶ 7. Thus, the Court presumptively lacks general personal jurisdiction over Univision

NOW. Moreover, while Plaintiffs' amended pleading now alleges that Univision NOW "exhibits an intent to cultivate a California audience" and "provides video content that has a California-specific focus" (i.e., airing ads on the Univision Network news), they allege nothing to make Univision NOW "essentially at home" in California. *See, e.g.*, *id*. ¶¶ 9-11. The allegations therefore fall well short of the "exacting standard" for general jurisdiction outside the place of incorporation and principal place of business. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 801 (9th Cir. 2004); *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases denying general jurisdiction).

**B. There Is No Specific Jurisdiction Over Univision NOW in California.**

"A defendant is subject to specific personal jurisdiction in the forum state if: (1) the defendant performed an act or consummated a transaction by which it purposely directed its activity toward the forum state; (2) the claims arose out of defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 502 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 65 F.4th 1012 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023); *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). "'If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (citation omitted). None of the three requirements are satisfied here.

**1. There is No Purposeful Direction Toward California.**

To satisfy the first requirement that Defendant purposefully directed its alleged action to the forum State, Plaintiff must show that Defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. "All three parts of the test must be satisfied." *Id*. at 805. Plaintiffs cannot meet their burden.

**a. The Alleged Act Was Not "Expressly Aimed" at California.**

The Ninth Circuit has made clear that a "passive" website that simply hosts information "does not qualify as purposeful activity invoking the benefits and protections" of the law of that state.

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997). Likewise, even an interactive website that allows a party to watch media or purchase goods is not enough for specific jurisdiction. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023). To demonstrate "express aiming" in such circumstances, the complaint's allegations must show that an operator of "a website 'with national viewership and scope appeals to, and profits from, an audience in a particular state.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020) (*quoting Mavrix*, 647 F.3d at 1231). Thus, if the website itself is the "***only*** jurisdiction contact" relevant to a specific jurisdiction analysis, the analysis "turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Herbal Brands, Inc.*, 72 F.4th at 1092 (emphasis in original).

Here, the FAC fails to allege facts giving rise to either a forum-specific focus or an intent to cultivate a California audience. The relevant allegations are that when Plaintiffs "watched Defendant's videos through their Univision NOW accounts, Defendant disclosed [their] event data, which recorded and disclosed the video's URL and title as well as Plaintiff[s'] email address to Endeavor Streaming in Base64." FAC ¶¶ 42, 47. However, Plaintiffs cannot plausibly allege that Univision NOW specifically targeted California to collect subscriber data. On the contrary, Plaintiffs allege a company and nationwide practice of purportedly violating the VPPA, and only that California subscribers were part of this purported practice. FAC ¶¶ 1-4. Such activity cannot be said to be "expressly aimed" at the State of California. "Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021).

In an attempt to overcome the failure to allege that Univision NOW specifically targeted California to collect subscriber data, Plaintiffs' FAC now adds several conclusory allegations that Univision NOW aimed its contacts to California by operating its platform via the Website and App while (1) "exhibiting an intent to cultivate an audience in California" by airing advertisements on the "Univision Network"—not Univision NOW—news, FAC ¶ 10, and (2) providing video with a "California-specific focus" because its videos are in Spanish, *id.* ¶ 11.

Neither of these allegations are sufficient to confer specific personal jurisdiction over Univision NOW. With respect to Univision NOW's alleged advertisements on Univision Network news, Univision Network is a completely separate entity from Univision NOW, and Plaintiffs do not allege otherwise. Therefore, advertisements aired on Univision Network programs cannot constitute a basis for specific personal jurisdiction over Univision NOW. Moreover, even if Univision Network and Univision NOW were the same entity—which they are not—news programs are "live" programming not covered by the VPPA, and therefore cannot be said to give rise to Plaintiffs' VPPA claims such as to give rise to specific personal jurisdiction in California. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (requiring plaintiff's claim be one that ***arises out of or relates to*** defendant's forum-related activities); *see also Schwarzenegger*, 374 F.3d at 806-807 (same).

Moreover, Plaintiffs fail to allege facts showing that such advertising actually targeted Plaintiffs or other residents of California. That some advertising of Univision NOW may have incidentally occurred in California is not sufficient to establish express aiming when such advertising or marketing material is not also targeted at California residents, tailored to California residents, or features any content or themes specific to California. *Crouch v. Ruby Corp.*, 639 F. Supp. 3d 1065, 1081 (S.D. Cal. 2022) (holding that plaintiffs' failure to, among other things, allege what advertisements during the relevant time period were specifically directed at Californians where defendant did not tailor or otherwise specifically focus advertising on California, was insufficient to establish express aiming of conduct at California); *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 875 (N.D. Cal. 2012) (affirming plaintiffs must show individual targeting of forum residents to establish express aiming of conduct at California).

Plaintiffs' argument that Univision NOW's content is California-focused because it is in Spanish also fails. *See* FAC ¶ 11. The fact that videos are in Spanish does not make them either directed at California or California focused. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020) (holding that website did not have a specific focus on California; rather, the website featured content with a global market). Indeed, Plaintiffs themselves allege that Spanish is the second most spoken language in the entire United States. FAC ¶ 2. If Plaintiffs' position were

correct, then the courts of California (not to mention New Mexico, Puerto Rico, Texas, Arizona, Nevada and Florida, all of which also have significant Spanish-speaking populations) would have personal jurisdiction over every media company that carries Spanish-language content. That is clearly not the law.

Because Plaintiffs have failed to plausibly allege that Univision NOW targeted California, and that their claims arose out of such contacts, Plaintiffs have failed to meet their burden of showing that Univision NOW purposefully directed its conduct at California. *AMA Multimedia,* 970 F.3d at 1210-1213 (finding plaintiff failed to show that defendant expressly aimed his intentional acts at the United States); *see also DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, (N.D. Cal. 2012) (court lacked personal jurisdiction for infringement claims because plaintiffs did not allege that any of advertisements on defendant's websites targeted Californians, and subject matter of websites, was not directly related to California).

**b. Univision NOW's Alleged Actions Did Not Cause Harm That Univision NOW Knew Was Likely to be Suffered in California.**

Similarly, Plaintiffs cannot show that Univision NOW's alleged conduct caused them an injury that Univision NOW knew was "likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Again, the only connection between Univision NOW's alleged conduct and California is that Plaintiffs claim that they are California residents. As the Ninth Circuit has explained, even where a defendant's "intentional act eventually caused harm to [the plaintiff] in California, and [the defendant] may have known that [the plaintiff] lived in California," "this does not confer jurisdiction" where the defendant did not expressly aim its acts at the forum state. *Schwarzenegger*, 374 F.3d at 807; *see also Moledina v. Mariott, Int'l, Inc.*, 635 F. Supp. 3d 941, 949 (C.D. Cal. 2022) (holding that the mere fact that defendant "knew, or at least reasonably should have known, [they] w[ere] calling from California … during the time of the call" did not confer specific jurisdiction). Plaintiffs therefore cannot show that Univision NOW knew harm was likely to be suffered in California.

///

///

**2. Plaintiffs' Claims Do Not Arise Out Of Or Relate To Univision NOW's Forum-Related Activities.**

For similar reasons, Plaintiffs' claims do not arise out of or relate to Univision NOW's contacts with California. *See, e.g.*, *Ratha v. Phatthana Seafood Co*., 35 F.4th 1159, 1171 (9th Cir. 2022). This requirement "'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum [State] and is therefore subject to the [State's] regulation.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citations omitted).

Here, Plaintiffs' claims do not "arise out of contacts that the 'defendant *[it]self*' create[d] with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Univision NOW's nationally-available website and national advertising practices cause no different contacts in California than they do in any other state; the mere fact that a subscriber logs into the Univision NOW service from a certain State shows nothing about Univision NOW's activities within that State. *See, e.g.*, *id*. at 290 (where alleged injury could have occurred in "California, Mississippi, or wherever else [petitioner] might have traveled," the "effects of petitioner's conduct [were not] connected to the forum State in a way that makes those effects a proper basis for jurisdiction"); *Ayer v. White*, No. 21-cv-08773, 2022 WL 657502, at *5 (C.D. Cal. Mar. 4, 2022) ("Plaintiffs' injuries do not aid their jurisdictional argument because Plaintiffs would have suffered the same loss in any state they happened to be in at the time Defendants committed their alleged misconduct in Texas."). Nor is this prong satisfied by allegations that Univision NOW advertises, sells, and markets in California because those are not the acts that give rise to Plaintiffs' allegations of misconduct. *See, e.g., Chorost v. Rotor Amer. Inc.*, No. 21-CV-00235, 2022 WL 17361299, at *9 (D. Ariz. Aug. 8, 2022) (website listings and national advertising bore no relationship to alleged misconduct); *Neumann v. Red Rock 4-Wheelers, Inc.*, No. 19-cv-02160, 2022 WL 3370170, at *4 (D. Nev. Aug. 15, 2022) (online and print marketing materials directed to forum bore no relation to tort claims alleged). Because a rule conferring jurisdiction simply because a company's national advertisements may be seen from a specific state would not "adequately protect defendants foreign to a forum," *Ford Motor*

///

*Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 362 (2021), courts have repeatedly rejected this type of argument, and the Court should do so here.

### 3. Subjecting Univision NOW to Jurisdiction in California Would Be Unreasonable.

Plaintiffs' FAC should be dismissed for the independent reason "that the exercise of jurisdiction would be unreasonable and therefore violate due process." *Ayla*, *LLC*, 11 F. 4th at 983-84. This inquiry is "guided by seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id*. (citation and quotation omitted). These factors weigh against jurisdiction over Univision NOW.

*First*, the inquiry concerning the extent of a defendant's purposeful interjection is "analogous to the purposeful direction" analysis. *Sinatra v. Nat'l Enquirer, Inc*., 854 F.2d 1191, 1199 (9th Cir. 1988). As explained above, Univision NOW's operation of an interactive streaming website does not rise to the level of purposeful interjection into the forum state's affairs solely because Plaintiffs could view that website. Accordingly, this factor weighs against exercising jurisdiction. *See Martin v. Outdoor Network LLC*, No. 23-cv-09807, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31, 2024) (dismissing case for lack of personal jurisdiction).

*Second*, litigating in California would impose an unreasonable burden on Univision NOW. Univision NOW is a Delaware corporation with its principal place of business located in Florida. It should not be required to litigate a case across the country where Plaintiffs have not alleged anything other than their California residencies. Thus, this factor weighs against exercising jurisdiction.

*Third*, claims against Univision NOW should be heard by a court where Univision NOW is a corporate citizen when, as here, the claims do not arise out of its contacts with any other State. That is the essence of having forums where businesses are fundamentally at home and can thus have any claims heard against them. Therefore, this factor does not support exercising jurisdiction.

*Fourth*, although one of Plaintiffs' claims is based on California law, there otherwise is no relationship to California except that Plaintiffs live here, which, does not support exercising jurisdiction.

*Fifth*, the most efficient judicial resolution of the controversy would not be in California. Any relevant records relating to Plaintiffs' allegations would be outside California. Moreover, common class questions such as Univision NOW's policies and procedures, its Website and the services it provides, its relationship with Endeavor, and so forth, would be answered by witnesses and documents outside California. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (the location of the evidence and witnesses is an important consideration in determining which forum can most effectively resolve a dispute). Therefore, this factor does not favor jurisdiction.

*Sixth*, it is not unreasonably inconvenient to require Plaintiffs to litigate their claim in another forum, when none of the relevant information, documents, or witnesses (besides Plaintiffs themselves) are located in California.

*Seventh*, there exists multiple alternative forums for the dispute based on Plaintiffs' own allegations, so this factor also weighs against exercising jurisdiction.

On balance, the seven factors favor a finding that the exercise of jurisdiction over Univision NOW would be unreasonable and therefore violate due process.

## II. PLAINTIFFS LACK STANDING TO BRING VPPA CLAIMS PREMISED ON DISCLOSURES VIA UNIVISION NOW'S WEBSITE.

Plaintiffs' individual claims relate solely to disclosure of subscriber information via the Univision NOW App. Plaintiffs do not allege that they ever used the Univision NOW Website, nor do they allege that their subscriber or viewing information was disclosed to Endeavor or anyone else via the Website. Instead, Plaintiffs reference the Website in conclusory terms without ever making a connection to Plaintiffs themselves. *Compare* FAC ¶¶ 5-6 (stating that both Plaintiff Villalobos and Plaintiff Palomino use the Univision NOW streaming service via the App) with FAC ¶ 31 ("[W]hen Univision NOW subscribers utilize the service via *either the Website`or the App*,

///

Defendant discloses users' PII to Endeavor Streaming without users' consent.") (emphasis supplied).

Despite conceding that they used only the Univision NOW App, FAC ¶¶ 5, 6, Plaintiffs purport to represent a Class and Subclass of "[a]ll similarly situated individuals in the United States [and California] who have a Univision NOW account and viewed Univision NOW videos *via the Website* . . . and/or the mobile App." *Id*. ¶¶ 50, 51 (emphasis added). Plaintiffs bring claims on behalf of the proposed Class and Subclass arising from ***other*** Univision NOW subscribers' purported use of the Univision NOW Website. *Id.* ¶ 63. Plaintiffs lack standing to assert such claims.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements … The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The fact "[t]hat a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6. A named plaintiff must meet these requirements. *Bates v. United States Parcel Serv., Inc.*, 511, F.3d 974, 985 (9th Cir 2007) (en banc). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Doe One v. CVS Pharmacy, Inc.*, Case No. 18-cv-01031, 2024 WL 1707229, at *4 (N.D. Cal. Apr. 18, 2024), citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Because the question of standing is a "threshold issue," it "must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023).

An injury is "fairly traceable" for the purposes of establishing standing to sue where there is a causal connection between the plaintiff's injury and the defendant's challenged conduct. *Lujan*, 504 U.S. at 560–61. Plaintiffs have standing to assert claims with respect to products they used, but cannot assert claims on behalf of classes to which neither of them belong. *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) (dismissing claims to related to products named plaintiff did not purchase for lack of traceable injury—"economic or otherwise"); *Granfield v. NVIDIA*

*Corp.*, No. C 11–05403, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (striking for lack of standing allegations related to product models plaintiff did not purchase); *Dysthe v. Basic Research LLC*, No. 09-8013, 2011 WL 5868307 (C.D. Cal. Jun. 13, 2011) (dismissing claims regarding product that named plaintiff did not purchase); *Mlejnecky v. Olympus Imaging America Inc.*, No. 2:10-CV-02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) (same). And Article III "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (noting the limitations of standing in the prisoner context, where the "right to complain of *one* administrative deficiency" does not "automatically confer[ ] the right to complain of *all* administrative deficiencies"). By virtue of alleging injury related to one in a company's suite of products, plaintiffs do not create standing to assert claims related to other products. *See Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1150 (N.D. Cal. 2013) (holding that a plaintiff who alleged fraud relating to purchases from the iTunes Store lacked standing to assert claims on behalf of customers who purchased products from other Apple marketplaces, including the App Store, Mac App Store, and iBookstore).

In sum, neither Plaintiff satisfies their burden to allege traceability sufficient to satisfy this Court's standing requirements with respect to claims arising out of Univision NOW's Website. Absent allegations that they accessed prerecorded video on the Website and that the Neulion Tracking Code embedded on the Website disclosed their PII, they cannot allege that their alleged injuries were caused by Univision NOW's alleged Website conduct. Plaintiffs' allegations do not establish the line of causation necessary to establish standing, and therefore, Plaintiffs' VPPA claims as to Univision NOW's Website must be dismissed under Fed. R. Civ. P. 12(b)(1).

## III. PLAINTIFFS FAIL TO STATE A VIOLATION OF THE VPPA.

To state a claim for unlawful disclosure under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 763 (N.D. Cal. 2023) (citations omitted).

Plaintiffs fail to state a claim under the VPPA for at least three reasons. First, all disclosures made by Univision NOW to Endeavor were incident to Univision NOW's third-party service

provider relationship with Endeavor and therefore fall within the VPPA's ordinary course of business exception, 18 U.S.C. § 2710(b)(2)(e). Second, there are no plausible allegations that the information disclosed by Univision NOW to Endeavor was PII because the alleged disclosures were not made in a manner that would permit an ordinary person to identify them. Finally, Plaintiffs' claims are time-barred under the applicable two-year statute of limitations.

### A. Plaintiffs' Claims Are Precluded by the VPPA's "Ordinary Course of Business" Exception.

Plaintiffs' claims regarding Univision NOW's alleged disclosures to third-party service provider Endeavor should be dismissed pursuant to the VPPA's ordinary course of business exception. "[T]he permissibility of disclosure under the VPPA turns on the underlying purpose for which [the provider] provides the information to a third party." *See Sterk*, 770 F.3d at 626. Numerous courts, including the Ninth Circuit, have held that disclosures of customer information intended to support the management and operation of the company fall within the ordinary course of business exception. *See id.* (Redbox's outsourcing of customer service operation and disclosure of customer information to third-party in support of that operation fell into ordinary course of business exception); *Rodriguez*, 801 F.3d at 1054–55 ("disclosures of consumers' personal information between Sony entities to sustain the operations of the PlayStation Network" was incident to the ordinary course of business); *see also Rancourt v. Meredith Corp.*, No. 22-cv-10696, 2024 WL 381344, at *17 (D. Mass. Feb. 1, 2024) (finding that the ordinary course of business exception applies to disclosures "designed to ensure the smooth operation of the business, such as customer support, internal data analytics, or cyber security").

In the FAC, Plaintiffs concede that Endeavor is a third-party service provider to Univision NOW, which is why the Neulion Tracking Code is allegedly embedded on the Website and App. FAC ¶¶ 21-23. To that end, Plaintiffs cite to Endeavor's website, www.endeavorstreaming.com/services, to allege that Endeavor provides a "content delivery network platform" to clients such as Univision NOW. *Id.* ¶ 22 nn. 7-10 (explaining that Endeavor's content delivery network platform services include "content operations," "communications," and "end-user customer support."). In other words, Endeavor hosts the Univision NOW Website and

provides operations, communications, and end-user customer support—exactly the kind of services the "ordinary course of business exception" was intended to address.

Yet Plaintiffs refuse to accept this. Instead, they argue (for the first time in their FAC; the original complaint had no such allegations)—without any factual basis or detail of any kind (other than that relating to a different Endeavor customer, Ultimate Fighting Championship, with which Univision NOW has no relationship)—that Endeavor is a "marketing and advertising retargeting tool" that Univision NOW "utilizes to further their pecuniary interests"—hoping that the mere invocation of the words "marketing," "advertising," and "pecuniary" will render the ordinary course of business exception inapplicable.

However, this effort should be rejected. Plaintiffs can allege no facts to suggest that Endeavor provided to Univision NOW any services other than web hosting, customer service, and order processing. They certainly allege no factual basis for the made-up claim that Endeavor served as a "marketing and advertising retargeting tool" used by Univision NOW. It goes without saying that a "complaint must set forth 'more than labels and conclusions,'" *Williams v. California*, 764 F.3d 1002, 1007 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and contain more than "a formulaic recitation of the elements of a cause of action," *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (cleaned up). "Mere legal conclusions are not entitled to the assumption of truth." *Id.* "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

In *Sterk*, 770 F.3d at 621, the Seventh Circuit specifically addressed the ordinary course of business exception as it applies to customer service. In that case, defendant Redbox outsourced certain "back office" business operations of the kind normally performed by a company itself to various service providers, including Stream Global Services. Included in those services were customer service and marketing. *Id.* To enable Stream to perform its services, Redbox disclosed all of its subscribers' personal information to Stream. *Id.* Like here, the plaintiff in *Redbox* alleged that such disclosure was a violation of the VPPA. *Id.* The *Redbox* court disagreed, holding that customer

service is among the services covered by the "ordinary course of business" exception to the VPPA. *Id.* at 625. Because Redbox's disclosures to Stream were for the underlying purpose of facilitating Stream's customer service function, such disclosures were permitted. *Id.*[2]

The facts of *Redbox* are strikingly similar to those at issue here. Endeavor provides customer support services as well as web hosting to Univision NOW, and any subscriber information disclosed to Endeavor was for the purpose of facilitating such services. This is exactly the type of order fulfillment and request processing activities that the ordinary course of business exception is meant to cover. *See* 18 U.S.C. § 2710(a)(2); *Sterk*, 770 F.3d at 626; *see also Rancourt*, 2024 WL 381344, at *17 (finding that "if the disclosure of PII is in furtherance of business management and operations that are intra-corporate and inner-facing, designed to ensure the smooth operation of the business, such as customer support, internal data analytics, or cyber security, it falls under the exception."). Therefore, the Court should dismiss Plaintiffs' claims as covered by the ordinary course of business exception.

**B. Alleged Disclosures Encoded in Base64 Do Not Constitute PII Because An Ordinary Person Cannot Identify Univision NOW Users From Such Data.**

Even if the alleged disclosure of subscribers' PII to Endeavor did not fall into the VPPA's ordinary course of business exception, Plaintiffs still fail to state a claim for violation of the VPPA because information encoded in Base64 does not constitute PII under this Court's established precedent. Specifically, the Ninth Circuit has adopted an "ordinary person" standard to determine

[2] Assuming *arguendo* that Univision NOW contracted with Endeavor for marketing services, this fact alone does not render the ordinary business exception inapplicable. A 1998 Senate Judiciary Report speaks to the types of disclosure that Congress intended to permit pursuant to the VPPA, including "allow[ing] disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for *marketing* to their customers." *Sterk*, 770 F.3d at 624 (quoting S.Rep. No. 100–599, at 14 (1988), reprinted in 1988 U.S.C.C.A.N 4342) (emphasis added). Univision NOW's alleged use of Endeavor for customer service may properly encompass marketing to customers, a purpose Congress intended to be covered by the ordinary business exception.

what constitutes PII under the VPPA: "'[P]ersonally identifiable information' means only that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016)).

Many courts have considered the question of what constitutes PII under circumstances where the information disclosed does not identify a specific individual without combining it with other information. *See, e.g.*, *Nickelodeon*, 827 F.3d at 282-83 (considering whether IP addresses, browser fingerprints, and device identifiers constitute PII); *Yershov v. Gannett Satellite Info Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (considering whether IP addresses together with GPS coordinates constitute PII). In *Nickelodeon*, a class of children brought a multi-district class action against Viacom and Google, alleging that they unlawfully collected personal information—specifically, IP addresses, browser fingerprints, and unique device identifiers—on the Internet, including what webpages they visited and what videos they watched on Viacom's websites. 827 F.3d at 267. The Third Circuit considered, among other things, whether such identifiers constituted PII protected by the VPPA. *Nickelodeon*, 827 F.3d at 290. In so considering, the Court compared different pieces of information and their "power to identify a *specific person*." *Id.* at 289. Whereas the GPS coordinates of a person "would enable most people to identify what are likely the home and work addresses are of the viewer," an IP address, a device identifier, or a browser fingerprint would not. *Id.* "'[T]here is certainly a point at which the linkage of information to identity becomes too uncertain, or too dependent on too much yet-to-be-done, or unforeseeable detective work'" to trigger liability under this statute." *Id.* at 289 (citing *Yershov*, 820 F.3d at 486).

This kind of "yet-to-be-done" and unforeseeable detective work is exactly what would be required under the facts alleged by the Plaintiffs in this case. This is not an instance where an ordinary person can readily identify a specific person by looking at the encoded information allegedly disclosed by the Neulion Tracking Code. *See, e.g.*, Figures 2 and 3 of the FAC, showing the information allegedly disclosed to Endeavor in Base64. Plaintiffs essentially concede that disclosure in Base64, without more (such as a decoding website or a generative AI chatbot), is not something an ordinary person could read and understand. Plaintiffs' own allegations demonstrate

that an ordinary person would have to (1) recognize the coding scheme as Base64, (2) find free encoding software, and then (3) decode it in order to be able to even know what information the identification Token contains. FAC ¶¶ 32-39.

The sources cited by Plaintiffs in the FAC confirm that the decoding of information encoded in Base64 requires specialized knowledge and skill typically held by computer programming professionals that write code that instructs an application, computer, website, or software on how to perform. *See* FAC at 8 n.13 (citing Daniel Smallwood, *Hacker Pig Latin: A Base64 Primer for Security Analysts* (Jan. 21, 2021)). Before information encoded in Base64 can be "decoded," a person would first have to recognize the Base64 language. But Base64 text "looks like gibberish" to the untrained eye. *Id.* at 14 n.17 (Chris Morrow, *An Introduction to Base64 Encoding* (Aug. 8, 2021)). As a result, an ordinary person would not recognize such gibberish, much less know to take further steps to decode the information.

As an alternative, Plaintiffs allege that an "ordinary person" could decode information encoded in Base64 by running it through a generative AI chatbot. FAC at ¶ 38. However, Figures 9-11 of the FAC, which purportedly show this process, reveal that while the identification Token contains the email address for Plaintiffs' counsel, it does not contain the title of any video, nor does it suggest that it was ever disclosed to Endeavor. *See id.* at 16 (Figure 11).

While Plaintiffs seek to minimize the complexity of Base64, the encoding and decoding thereof, to the ordinary person, such allegations are undermined by the multiple pages of their FAC spent explaining how to decode it, along with the four articles Plaintiffs cite that explain the same process. FAC at 8 n. 13, 13 at nn. 14-15, and 14 nn. 16-17.

In short, it is obvious that an ordinary person could not identify the Plaintiffs' video consumption behavior from the identification Token allegedly disclosed to Endeavor by the "Neulion Tracking Code." Moreover, even if they could do so, Plaintiffs' Figures contained in the FAC reveal that the identification Tokens do not contain both an email address and the video title. Therefore, the FAC fails to adequately allege that Univision NOW disclosed Plaintiffs' PII to Endeavor in violation of the VPPA.

///

### C. Plaintiffs' Claims are Time-Barred by the Two-Year Limitations Period.

Plaintiffs' claims also are time-barred by VPPA's statute of limitations because they arose more than two years ago. 18 U.S.C. § 2710(c)(3) ("No action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery."). "A statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated." *McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008), *abrogated on other grounds by CTS Corp. v. Waldburger*, 573 U.S. 1 (2014). Plaintiffs seeking to toll the statute of limitations have the burden of pleading the factual predicates for any tolling theory. *Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings.").

According to Plaintiffs, their claims arose when they began watching content on Univision NOW via the mobile application, which was "around three years ago" for Palomino and in March 2020 for Villalobos. FAC ¶¶ 5-6. While Plaintiffs claim that they "frequently" visited Univision NOW to watch content and only "discovered" that Univision NOW disclosed their information to Endeavor in March 2024, they fail to plead sufficient facts to invoke the discovery rule. *See Wasco Prods.*, 435 F. 3d at 991; *Timboe v. Clark*, No. 20-cv-08719, 2022 WL 991721, at *5 (N.D. Cal. Mar. 31, 2022) (specific facts must be alleged to invoke the discovery rule exception) (citations and quotations omitted). "[A] plaintiff whose complaint shows on its face that his claims would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 910 (N.D. Cal. 2021). Here, Plaintiffs have failed to plead sufficient facts regarding the time period in which they viewed content or how they discovered that their data was disclosed, including that their data was actually disclosed to Endeavor. FAC ¶¶ 40-49. Plaintiffs have also failed to plead that they could not have discovered the purported disclosures earlier with reasonable diligence. Their failure to plead such facts bars tolling of their VPPA claims under the discovery rule. *Sharma*, 524 F. Supp. 3d at 910 (dismissing

///

claims as time-barred for failure to specifically plead delayed discovery). Absent tolling, Plaintiffs' claims must be dismissed.

**IV. PLAINTIFFS FAIL TO STATE A VIOLATION OF CIVIL CODE § 1799.3.**

California Civil Code section 1799.3 closely tracks the VPPA. It was enacted around the same time with the same purpose, and the elements of both statutes are similar. *See* Senate Judiciary Committee Report on S.B. No. 2248, 1987-88 Regular Session (1988). Therefore, this claim fails for all of the same reasons as does Plaintiffs' VPPA claims. *See Mollett*, 795 F.3d at 1067 (affirming dismissal of claim for violation of Civil Code § 1799.3 "for the same reasons" as dismissal of plaintiffs' VPPA claim); *see also Fan v. NBA Props., Inc.*, No. 23-cv-05063, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (collectively addressing challenges to the sufficiency of claims under the VPPA and Civil Code § 1799.3 because the elements of both statutes were similar).

**CONCLUSION**

For the foregoing reasons, Univision NOW respectfully requests that the Court grant this Motion and dismiss Plaintiffs' claims.

DATED: July 5, 2024

Respectfully Submitted

SIDLEY AUSTIN LLP

By: */s/ Alexandria V. Ruiz*
Dianne O. Fischer (*admitted pro hac vice*)
Ian Ross (*admitted pro hac vice*)
Alexandria V. Ruiz

*Attorneys for Defendant*
D2C, LLC, d.b.a. UNIVISION NOW

**CERTIFICATE OF SERVICE**

I certify that on this 5th day of July, 2024, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Alexandria V. Ruiz*
Alexandria V. Ruiz