**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
          sbogdanovich@bursor.com
          idiaz@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINORATH VILLALOBOS and EZEQUIEL PALOMINO, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>D2C, LLC, d.b.a. UNIVISION,<br><br>Defendant. | Case No. 5:24-cv-01517-BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: October 17, 2024<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Judge: Beth Labson Freeman |

1

**TABLE OF CONTENTS**

2

**PAGE(S)**

3

INTRODUCTION ...........................................................................................................1

4

ARGUMENT ..................................................................................................................3

5

I.     THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT .........................3

6

     A.     Defendant Expressly Aimed Its Activities Toward California...................3

7

          1.     Defendant committed an intentional act.......................................4

8

          2.     Defendant expressly aimed its intentional act at the California

9

                 forum ...........................................................................................4

10

                 a.     Defendant provides videos with a California-specific
focus ................................................................................4

11

                 b.     Defendant exhibits intent to cultivate an audience in
California.........................................................................8

12

          3.     Defendant's contacts caused harm that Defendant knew

13

               would likely be suffered in California .........................................12

14

     B.     The Claim Arises Out of Defendant's Forum-Related Contacts..............12

15

     C.     The Court's Exercise of Jurisdiction Over Defendant Comports With
Fair Play and Substantial Justice ...................................................14

16

II.    PLAINTIFFS HAVE STANDING TO PURSUE CLAIMS ON BEHALF

17

OF A CLASS OF CONSUMERS THAT USED BOTH THE WEBSITE

18

AND/OR APP ............................................................................................16

19

III.   PLAINTIFFS PLAUSIBLY ALLEGE VALID CLAIMS UNDER THE
VPPA ......................................................................................................17

20

     A.     The Ordinary Course of Business Exception Does Not Apply to

21

          Endeavor's Services ....................................................................17

22

     B.     Defendant's Disclosures of Users' Emails in Base64 Readily Enable
an Ordinary Person to Identify an Individual ..................................19

23

     C.     Defendant's Time-Bar and Tolling Arguments Are Inappropriate for

24

          This Stage In The Litigation..........................................................22

25

IV.   PLAINTIFFS PLAUSIBLY ALLEGE A CLAIM UNDER CALIFORNIA
CIVIL CODE § 1799.3 ...............................................................................23

26

V.    CONCLUSION ...........................................................................................23

27

28

1

**TABLE OF AUTHORITIES**

2

PAGE(S)

3

**CASES**

4

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) ......................................................................... 8

5

6

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021) ............................................................... 8, 13, 14

7

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ................................................................. 14, 15

8

9

*Campos v. Tubi, Inc.*,
   2024 WL 496234 (N.D. Ill. Feb. 8, 2024) ..................................................... 22

10

*Chorost v. Rotor Amer. Inc.*,
   2022 WL 17361299 (D. Ariz. Aug. 8, 2022) ........................................... 12, 13

11

12

*Collins v. Pearson Education, Inc.*,
   2024 WL 895316 (S.D.N.Y. Mar. 1, 2024) .................................................... 21

13

*Cybersell, Inc. v. Cybersell, Inc.*,
   130 F.3d 414 (9th Cir. 1997) .................................................................... 5, 11

14

15

*Data Disc, Inc. v. Systems Tech. Associates, Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ................................................................. 15, 16

16

*Doe v. WebGroup Czech Republic, a.s.*,
   93 F.4th 442 (9th Cir. 2024) .......................................................................... 12

17

18

*Dysthe v. Basic Rsch. LLC*,
   2011 WL 5868307 (C.D. Cal. June 13, 2011) .............................................. 16

19

20

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ................................................................. passim

21

*Ford Motor Company v. Montana Eight Judicial District Court*,
   592 U.S. 351 (2021) ................................................................................ 13, 14

22

23

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
   905 F.3d 597 (9th Cir. 2018) ................................................................. 15, 16

24

*Ghanaat v. Numerade Labs, Inc.*,
   689 F. Supp. 3d 714 (N.D. Cal. 2023) .......................................................... 19

25

26

*Golden v. NBCUniversal Media, LLC*,
   688 F. Supp. 3d 150 (S.D.N.Y. 2023) ........................................................... 21

27

28

*Granfield v. NVIDIA Corp.*,
   2012 WL 2847575 (N.D. Cal July 11, 2012) ................................................................. 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ......................................................................................................... 13

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
   72 F.4th 1085 (9th Cir. 2023) ........................................................................................... 4

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) ........................................................................... 16

*In re Hulu Priv. Litig.*,
   2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ................................................................. 17

*In re Hulu Priv. Litig.*,
   2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ............................................................ 2, 21

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) .......................................................................... 2, 3, 20, 21

*Incorp Servs. Inc. v. Incsmart.Biz Inc.*,
   2012 WL 3685994 (N.D. Cal. Aug. 24, 2012) ........................................................... 4, 12

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ........................................................................................................... 5

*Lamb v. Forbes Media LLC*,
   2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023) ................................................................ 21

*Lawrence v. Finicity Corp.*,
   2024 WL 584615 (E.D. Cal. Feb. 13, 2024) ................................................................... 22

*Lorentzen v. Kroger Co.*,
   532 F. Supp. 3d 901 (C.D. Cal. 2021) ............................................................................ 16

*Louth v. NFL Enterprises LLC*,
   2022 WL 4130866 (D.R.I. Sept. 12, 2022) ..................................................................... 18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ................................................................................. passim

*Mlejnecky v. Olympus Imaging Am. Inc.*,
   2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ................................................................. 16

*Neumann v. Red Rock 4-Wheelers, Inc.*,
   2022 WL 3370170 (D. Nev. Aug. 15, 2022) .............................................................. 12, 13

*Panavision International, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ......................................................................................... 15

*Rancourt v. Meredith Corp.*,
  2024 WL 381344 (D. Mass. Feb. 1, 2024) ................................................................. 19

*Rio Properties, Inc. v. Rio International Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ................................................................. 9, 10, 11

*Saunders v. Hearst Television, Inc.*,
  2024 WL 126186 (D. Mass. Jan. 11, 2024) ................................................. 17, 18, 19

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................. 11

*Sellers v. Bleacher Report, Inc.*,
  2023 WL 4850180 (N.D. Cal. Jul. 28, 2023) ................................................. 21, 22

*Sterk v. Redbox Automated Retail, LLC*,
  770 F.3d 618 (7th Cir. 2014) ................................................................. 18

*United States v. Hastie*,
  854 F.3d 1298 (11th Cir. 2017) ................................................................. 19

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
  556 F.2d 406 (9th Cir. 1977) ................................................................. 16

*Yershov v. Gannett Satellite Info. Network, Inc.*,
  820 F.3d 482 (1st Cir. 2016) ................................................................. 20

**STATUTES**

18 U.S.C. § 2710 ................................................................. 17, 22

Cal. Civ. Code § 1799.3 ................................................................. 1, 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendant D2C, LLC (d.b.a. Univision) ("Defendant," or "D2C") owns and operates an online video streaming service, Univision NOW, that focuses on providing Spanish-language video content.  *See* First Amended Complaint ("FAC") ¶¶ 2, 11.  Unfortunately for Defendant's consumers, Defendant secretly collects and discloses consumers' email addresses and the titles of the videos they watch on Univision NOW with an unauthorized third party, Endeavor Streaming, LLC ("Endeavor"), without consent.  FAC ¶ 2.  Because Defendant does not obtain its consumers' consent to disclose this information, Defendant violates the Video Privacy Protection Act ("VPPA") and its California analog, California Civil Code § 1799.3.

Defendant moves to dismiss Plaintiff Villalobos and Plaintiff Palomino's claims (collectively, the "Plaintiffs") by misconstruing the Plaintiffs' allegations, denying Plaintiffs' claims, or simply accusing their adversaries of "altering" screenshots and asserting a "made up claim."  Not only are D2C's factual disputes wrong, but they have no place in a Rule 12 motion.

First, contrary to D2C's arguments, this Court can assert personal jurisdiction over it. Where, as here, a defendant operates an interactive website, specific personal jurisdiction is proper where either (1) a defendant's content has a "forum-specific focus" or (2) a defendant displays an intent to "cultivate an audience" here.  Here, we have both.  D2C has shown its intent to cultivate a California audience by airing Univision NOW advertisements via the Univision Network, which hosts more local news stations in California than any other state.  D2C also primarily provides Mexican soap operas and television shows that particularly appeal to audiences in California – the state that by far has the most Mexican-American residents.  Although D2C counters that there are many Spanish speakers throughout the United States, not all Spanish-speaking populations are the same.  New York is home to many Puerto Ricans and Florida is home to many Cubans; California is home to more Mexican-Americans than any other state, and Univision's Mexican videos will particularly appeal to that state's audience.  And Plaintiffs' video privacy injuries arise out of D2C's contacts with this forum.  So, jurisdiction here is proper.

Turning to the merits, D2C argues its disclosures to Endeavor Streaming were made in the ordinary course of business, or that the disclosure of its Univision NOW subscribers' email

1  addresses and video titles is not personally identifiable information ("PII"). But as Plaintiffs' well-

2  pled allegations make clear, D2C's disclosures were done for marketing, advertising, and analytics

3  purposes – which courts uniformly hold such activities do not fall within the ordinary course of

4  business exception. D2C claims these allegations are "made up." But Plaintiffs quote directly

5  from Endeavor Streaming's website. First Amended Complaint ("FAC") ¶¶ 22-24. These are real,

6  direct quotes. In any event, such factual disputes are prematurely raised on a Rule 12(b)(6) motion

7  to dismiss.

8        Second, D2C claims the emails it disclosed in the Base64 computer language are not PII

9  because Base64 looks like "gibberish" and only individuals with "specialized knowledge" would

10  know what it is. Not so. Indeed, anybody who has taken a single semester of undergraduate

11  computer science is familiar with Base64 and can readily decode it. As such, the Ninth Circuit

12  holds that "'personally identifiable information' must have the same meaning without regard to its

13  recipient's capabilities." *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 985 (9th Cir. 2017). And

14  even though "the GPS coordinates of a particular device" also looks like gibberish, *Eichenberger*

15  held such gibberish "may also count" as PII because "modern technology may indeed alter – or

16  may already have altered – what qualifies under the statute." *Id*. at 986. "That it is a string of

17  numbers and letters does not alter the conclusion. Code is a language." *In re Hulu Priv. Litig.*,

18  2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014).

19        And here, "the Base64 language … as easily translatable as Spanish, Serbian, or Swahili."

20  *Id*. ¶ 32. Just as "any ordinary person can readily cut-and-paste Spanish text into Google Translate

21  to figure out what it means in English, any ordinary person can cut and paste Base64 text into any

22  one of myriad Base64 decoding websites and figure out what the Base64 text means." *Id*. ¶¶ 32-

23  36. "Moreover, any ordinary person can input Base64 text into one of several generative AI

24  chatbots like ChatGPT, and the AI will instantly recognize that the text is Base64 and translate it

25  for the person." *Id*. ¶ 38. Contrary to D2C's arguments, this does not require any "unforeseen

26  detective work." MTD at 20 (***mis***citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d

27  Cir. 2016)). The "unforeseen detective work," *in re Nickelodeon* refers to is the notion that

28  companies like "Google will assemble otherwise *anonymous pieces of data* to unmask the identity"

1    of a video viewer.  827 F.3d at 290 (emphasis added).  In fact, *in re Nickelodeon* expressly

2    distinguished "otherwise anonymous pieces of data" from the information at issue here: "pieces of

3    information … from which it would likely be possible to identify a person by consulting publicly

4    available sources, such as a phone book or property records."  827 F.3d at 282–83.  Likewise, here,

5    ChatGPT and Base64 decoding websites are all "publicly available sources" which any ordinary

6    person can use to identify an individual.

7        For the reasons set forth below, the Court should deny Defendant's motion to dismiss.

8                                            **ARGUMENT**

9    **I.    THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT**

10       Defendant argues that the Court lacks specific personal jurisdiction over it.  MTD at 8.

11   That is wrong.  The Court has specific personal jurisdiction over Defendant because Defendant has

12   substantial contacts with California – including operating its Univision NOW service via the

13   Website and mobile App along with Defendant's exhibited intent to cultivate an audience in

14   California for its Univision NOW service, and its provision of video content that has a California

15   focus.  Additionally, Plaintiffs' claims relate to and arise from Defendants' contacts with

16   California.

17       A court has personal specific jurisdiction over a defendant if defendant "(1) … purposefully

18   direct[s] its activities to the forum or … (2) the claim … arises out of or relates to the defendant's

19   activities in the forum … and (3) the court's exercise of jurisdiction comports with fair play and

20   substantial justice, meaning it is reasonable."  *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d

21   1218, 1227 (9th Cir. 2011) (citation omitted).

22       **A.    Defendant Expressly Aimed Its Activities Toward California**

23       In a case involving a defendant's tortious action, such as this, a party purposefully directs

24   its activities to a particular forum if it has "(1) committed an intentional act, (2) expressly aimed at

25   the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

26   state."  *Mavrix Photo*, 647 F.3d at 1228.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   Defendant committed an intentional act

Defendant's contacts (as fully described below) are intentional acts because they display an intent to "perform an actual, physical act in the real world." *Incorp Servs. Inc. v. Incsmart.Biz Inc.*, 2012 WL 3685994, at *6 (N.D. Cal. Aug. 24, 2012) (internal citations omitted).

### 2.   Defendant expressly aimed its intentional act at the California forum

Where, as here, a party's jurisdictional contact is the website itself, the courts will find express aiming at the forum state when the website is interactive, and defendant has done "something more" such as having a website with a (1) forum-specific focus or (2) the "defendant exhibited an intent to cultivate an audience in the forum." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023).  Defendant's Univision NOW website and app are interactive, and they readily satisfy both "something more" prongs (even though only one is required).

#### a.   *Defendant provides videos with a California-specific focus*

Univision NOW "provides videos with a California-specific focus because its videos target the Spanish-speaking community, and California is the U.S. state with the largest Spanish-speaking population.  Further, California is also the U.S. state with the largest Mexican population (34%).  And videos on the Univision NOW platform are primarily Mexican-made soap operas and television shows in Spanish, which particularly appeal to the California audience.  In fact, these videos appeal to the California audience more so than even an audience from Defendant's headquartered state of Florida.  Although Florida also has a large Spanish-speaking population, the vast majority do not come from Mexico, but rather from other nations like Cuba, the U.S. territory of Puerto Rico, and many other South American nations with their own unique Spanish dialects.  As such, Univision Now's Mexican soap operas are more likely to appeal to the Californian audience than Floridians.  FAC ¶ 11.

Defendant counters that it has not provided video content with a California focus because Spanish is the "second most spoken language in the entire United States" insinuating that Spanish-language videos would not particularly interest an audience in California, but the U.S. as a whole.  MTD at 10.  The Ninth Circuit already rejected this argument in *Mavrix Photo*, 647 F.3d 1218.

There, the court found that a celebrity gossip website had a forum-specific focus in California even though everyone in America loves celebrity gossip and "[l]ike any large media entity, celebrity-gossip.net courts a national audience." *Id*. at 1222. Even so, the court found that it was a "website with a specific focus on the California-centered celebrity and entertainment industries." *Id*. at 1230.

Defendant also argues that Plaintiff's allegations cannot be correct because it would also mean that courts in other U.S. states with high Spanish-speaker rates, such as New Mexico, Texas, and Arizona would also "have personal jurisdiction over every media company that carries Spanish-language content." MTD at 11. Defendant misses the forest for a single tree. Plaintiffs ***also*** allege that D2C has shown an intent to cultivate the California audience since it advertises through the Univision Network, which "hosts and airs ***more*** local news stations in California than in any other state, including Florida, where it is headquartered." FAC ¶ 10. New Mexico, Texas, or Arizona cannot say the same. And while it's true that states like New Mexico, Texas, and Arizona also have lots of Spanish speakers, California has the ***most***. *Id*. ¶ 11. Courts also consider the traffic and revenue a website receives from a certain forum when assessing a defendant's contacts. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 771-72, 775 (1984). And since California is the U.S. state with the most Spanish speakers,[1] and Defendant's video content specifically appeals to the California Spanish-speaking audience, it is a reasonable inference that Defendant derives most of its traffic and revenue from California users.[2]

What is more, not every state's Spanish-speaking population is the same. New York has a lot of Puerto Ricans who like to watch the *West Side Story*, Florida has a lot of Cubans who like to watch *Scarface*, but only "California is [] the U.S. state with the largest Mexican population (34%). And videos on the Univision NOW platform are primarily Mexican-made soap operas … which particularly appeal to the California audience." FAC ¶ 11. To treat all Spanish speakers as a single

---

[1] https://worldpopulationreview.com/state-rankings/spanish-speaking-states

[2] Should the Court require Plaintiffs to point to the specific traffic and revenue it receives from California, Plaintiffs request jurisdictional discovery. *See infra* Argument Section I.D.

monolith is like assuming a tea-sipping Brit would have the same taste in videos as a Texan cowboy.  One is more likely to watch *The Crown*; the other *Friday Night Lights*.  Defendant cannot simply gloss over this point.

Univision NOW provides "Univision and UniMás content live and on demand."[3]  Univision and UniMás are both owned by the Mexican-American[4] company TelevisaUnivision.[5]  Univision NOW primarily provides Mexican video content such as *Vivir de Amor*,[6] *El Amor No Tiene Receta*,[7] *Nadie Como Tú*,[8] *Minas de Pasión*,[9] *Amor Real*,[10] *Destilando Amor*,[11] *La Rosa de*

---

[3] UNIVISION NOW, GETTING STARTED WITH UNIVISION NOW, https://www.univisionnow.com/faq

[4] TelevisaUnivision, Inc. was created after "Mexico's media giant Grupo Televisa and U.S. Spanish-language broadcaster Univision" merged.  This strategic merger allowed TelevisaUnivision to reach "over 100 million Spanish speakers every day - more than 60% of the respective TV audiences in both the U.S. and Mexico across television, digital, streaming, and audio."  Veronica Villafane, *Televisa And Univision Close $4.8B Media Merger*, FORBES (Jan. 31, 2022), https://www.forbes.com/sites/veronicavillafane/2022/01/31/televisa-and-univision-close-48b-media-merger/.

[5] TELEVISAUNIVISION, OUR BRANDS, https://corporate.televisaunivision.com/our-brands/.

[6] UNIVISIONNOW, *Vivir de Amor*, https://www.univisionnow.com/category/vivir-de-amor; FANDOM, *Vivir de amor*, https://telenovela-database.fandom.com/wiki/Vivir_de_amor (describing the series as a "Mexican telenovela produced by Salvador Mejía for TelevisaUnivision").  Further, Salvador Mejía is a Mexican producer.  IMDb, https://www.imdb.com/name/nm0577249/.

[7] UNIVISIONNOW, *El Amor No Tiene Receta*, https://www.univisionnow.com/category/el-amor-no-tiene-receta; FANDOM, *El amor no tiene receta*, https://telenovela-database.fandom.com/wiki/El_amor_no_tiene_receta (describing the series as a "Mexican telenovela produced by Juan Osorio for TelevisaUnivision").  Further, Juan Osorio is a Mexican producer.  IMDb, https://www.imdb.com/name/nm0652184/?ref_=fn_al_nm_1.

[8] UNIVISIONNOW, *Nadie Como Tú*, https://www.univisionnow.com/category/nadie-como-t; FANDOM, *Nadie como tú*, https://telenovela-database.fandom.com/wiki/Nadie_como_t%C3%BA (describing the series as a "Mexican telenovela produced by Ignacio Sada Madero for TelevisaUnivision").  Further, Ignacio Sada Madero is a Mexican telenovela producer.  Tzoali Ferreyra, *Reconocido productor de Televisa toma el lugar de Nicandro Díaz en proyecto que dejó pendiente*, Radio Formula (Jan. 5, 2024), https://www.radioformula.com.mx/espectaculos/2024/5/1/reconocido-productor-de-televisa-toma-el-lugar-de-nicandro-diaz-en-proyecto-que-dejo-pendiente-813470.html.

[9] UNIVISIONNOW, *Minas de Pasión*, https://www.univisionnow.com/category/minas-de-pasin; FANDOM, Minas de pasión, https://telenovela-database.fandom.com/wiki/Minas_de_pasi%C3%B3n (describing the series as a "a Mexican telenovela produced by Pedro Ortiz de Pinedo for TelevisaUnivision").  Further, Pedro Ortiz de Pinedo is a Mexican producer.  IMDb https://www.imdb.com/name/nm1896117/?ref_=fn_al_nm_1.

[10] UNIVISIONNOW, *Amor Real*, https://www.univisionnow.com/category/amor-real (a telenovela set "[i]n 19th-century Mexico"); Further, the telenovela was produced by Mexican producer Carla Estrada.  IMDb, https://www.imdb.com/name/nm0261794/?ref_=ttfc_fc_cr.

[11] UNIVISIONNOW, *Destilando Amor*, https://www.univisionnow.com/category/destilando-amor; TMDB, *Distilling Love*, https://www.themoviedb.org/tv/12568-destilando-amor?language=en-US (describing the series as a "Mexican telenovela produced by Televisa and Nicandro Díaz ... set

*Guadalupe*,[12] various movies[13] starring the famous Mexican actress, María Félix, from the "Golden Era of Mexican cinematography,"[14] various movies starring Antonio Aguilar, who was "one of the most renowned legends of Mexican music,[15] *La Familia P. Luche*,[16] and many more.

Video content on Univision NOW is notably Mexican – from being created by Mexican producers,[17] to starring prominent Mexican actors,[18] featuring settings in Mexico,[19] and providing themes that strongly resonate with the Mexican audience.  For example, the telenovela *Destilando Amor*, although "a remake of the 1994 Colombian telenovela *Café*," took on a wholly Mexican

---

primarily in Tequila, Jalisco").  Further, Nicandro Díaz is a Mexican producer.  IMDb, https://www.imdb.com/name/nm0246695/?ref_=fn_al_nm_1.

[12] UNIVISIONNOW, *La Rosa de Guadalupe*, https://www.univisionnow.com/category/la-rosa-de-guadalupe; UNIVISION, *Sinopsis de La Rosa de Guadalupe*, https://www.univision.com/series/la-rosa-de-guadalupe/sinopsis-de-la-rosa-de-guadalupe (describing the series as being "inspired by true stories that show the faith that people have in la Virgen de Guadalupe") (translated from Spanish to English).

[13] UNIVISIONNOW, *Películas de María Félix*, https://www.univisionnow.com/category/pelculas-de-mara-flix.

[14] CMG WORLDWIDE, *About María Félix*, https://www.cmgworldwide.com/clients/maria-felix/.

[15] UNIVISION NOW, *Películas de Antonio Aguilar*, https://www.univisionnow.com/category/pelculas-de-antonio-aguilar

[16] UNIVISIONNOW, *La Familia P. Luche*, https://www.univisionnow.com/category/la-familia-p-luche ("Another witty creation of comedy genius Eugenio Derbez.")  Further, Eugenio Derbez is a Mexican "actor, writer, director and producer."  IMDb, https://www.imdb.com/name/nm0220240/bio/.

[17] *See, e.g.*, *supra* notes 16-21, 26.

[18] Such famous actors from the video content examples above include Mexican actors Fernando Colunga, Eugenio Derbez, Angélica Rivera, and Eduardo Yáñez.  APPLE TV+, FERNANDO COLUNGA, https://tv.apple.com/us/person/fernando-colunga/umc.cpc.49jmqdagtg55wz3qk3ruct7b6; CAPRADIO, *Eugenio Derbez: A Mexican Megastar Starts Over in Hollywood*, https://www.capradio.org/news/npr/story?storyid=527064992 ("probably the most famous comedian in Mexico's recent history"); FACTS.NET, *23 Extraordinary Facts About Angélica Rivera*, https://facts.net/celebrity/23-extraordinary-facts-about-angelica-rivera/#:~:text=a%20household%20name.-,She%20became%20the%20First%20Lady%20of%20Mexico%20in%202012.,First%20Lady%20of%20the%20country (noting Angélica Rivera is a "renowned Mexican actress" and former "First Lady of Mexico" as she was married to former Mexican President Enrique Peña Nieto); IMDb, *Eduardo Yáñez*, https://www.imdb.com/name/nm0951278/ (" An Emmy Award-winning actor" who is "one of Mexico's most celebrated leading men of stage and television");

[19] TMDB, *Distilling Love*, https://www.themoviedb.org/tv/12568-destilando-amor?language=en-US (noting the telenovela was "set primarily in Tequila, Jalisco" a Mexican city famous for its Tequila production).

theme when it was remade by Mexican Producer Nicandro Díaz.[20]  The original telenovela, *Café*, is set in Colombia and the female protagonist is a coffee farmer.[21]  In *Destilando Amor*, these facts were swapped to appeal to a Mexican audience.  Actress Angélica Rivera played a "*jimadora*," which is a type of farmer that harvests the agave plant used to make tequila,[22] and the telenovela was set in Tequila, Jalisco – the city in Mexico most known for its production of tequila.[23]  The theme song of *Destilando Amor* is also a mariachi-style[24] song sung by famous Mexican singer, Pepe Aguilar, son of Antonio Aguilar (mentioned in the preceding paragraph).[25]

Therefore, this case is unlike *AMA Multimedia, LLC v. Wanat*, where the court found that plaintiff did not sufficiently allege that the ePorner website had a U.S. forum-specific focus given that the "market for adult content is global."  970 F.3d 1201, 1210 (9th Cir. 2020).  Instead, this case is more like *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, where the court found that defendant operated a website with a California-specific focus given that it was about celebrities and the entertainment industries.  647 F.3d 1218, 1230 (9th Cir. 2011).

                                           b.    <u>Defendant exhibits intent to cultivate an audience in California</u>

Defendant argues that it has not expressly aimed its activities at the California forum by arguing that "California subscribers were [only] part of" Defendant's "nationwide practice of purportedly violating the VPPA."  MTD at 9.  Defendant similarly argues that "[e]xpress aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum.'"  MTD at 9 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (internal quotations omitted).  These arguments are misplaced.

---

[20] *Id.*

[21] TELEMUNDO, https://www.telemundo.com/shows/cafe-con-aroma-de-mujer-1994.

[22] SPANISHDICTIONARY, JIMADOR, https://www.spanishdict.com/translate/jimador.

[23] MEXICO FINDER, *The City of Tequila in Jalisco*, https://mexicofinder.com/art/the-city-of-tequila-in-jalisco/.

[24] BRITANNICA, MARIACHI, https://www.britannica.com/art/mariachi.

[25] YOUTUBE, *Destilando Amor: Entrada: UniMás*, https://www.youtube.com/watch?v=alCMxHa3YBU;  Pepe Aguilar: Biografía, https://pepeaguilar.com/bio.

1    Defendant's arguments fail because Defendant's activities in California go beyond

2    Plaintiffs' unilateral actions of utilizing Univision NOW.  Defendant's California contacts involve

3    Defendant operating the Univision NOW streaming service via the Website and App, in

4    combination with actively soliciting paid subscriptions from California residents, and collecting

5    and disclosing California residents' PII and associated video viewing histories to unauthorized

6    third parties.

7    When determining whether a defendant has exhibited an intent to cultivate an audience in

8    the forum the courts have considered the "geographic scope of the defendant's commercial

9    ambitions."  *Mavrix*, 647 F.3d at 1230.

10    In *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002),

11    the Ninth Circuit found that the plaintiff "sufficiently alleged that [the defendant] engaged in

12    'something more' than the operation of a passive website" by "specifically target[ing] consumers

13    in Nevada by running radio and print advertisements in Las Vegas."  *Id.* (internal quotations

14    omitted).

15    Plaintiffs are not arguing that Defendant should be subject to jurisdiction in any U.S. state

16    simply because Univision NOW is available nationwide.  Instead, Plaintiffs specifically argue

17    Defendant should be subject to jurisdiction in California because, like in *Rio*, Defendant has

18    exhibited an intent to cultivate the California audience for the sale of Univision NOW subscriptions

19    given its advertisement of Univision NOW ***locally*** to California consumers.  Specifically,

20    Defendant has advertised its Univision NOW streaming service on the Univision Networks' news[26]

21    and other Univision programming.[27]  Defendant's advertising is meaningful because California is

22

23

---

24    [26] https://www.youtube.com/watch?v=ooJrdlHFkHs

25    [27] DESPIERTA AMERICA, https://www.youtube.com/watch?v=Cc5GJp3AseU;
      https://www.youtube.com/watch?v=Cc5GJp3AseU;
26    https://www.youtube.com/watch?v=jsAF3lTjIJ0; UNIVISION DEPORTES
      https://www.youtube.com/watch?v=LDqxObv_AHM; REPUBLICA DEPORTIVA,
27    https://www.youtube.com/watch?v=tzerk9y4AXQ;
      https://www.youtube.com/watch?v=xnv3TEh9sQ4 ; PRIMER IMPACTO,
28    https://www.youtube.com/watch?v=oVXyrGJ-KAE

one of the Univision Network's largest consumer bases.  For example, the TelevisaUnivision[28] website includes a section geared towards informing companies of TelevisaUnivision's ability to "REACH HISPANIC[29] AMERICA."[30]  One method that TelevisaUnivision offers for its clients to reach the Hispanic audience is to advertise via its "local media solutions."[31]  The local media solutions page includes a map of the United States showing the areas where TelevisaUnivision has local television and radio stations.[32]  As seen on this map, California is the state where TelevisaUnivsion has the most local television and radio stations while other states, such as Montana, do not have any.  Based on the volume of local TelevisaUnivision television and radio stations, California is presumably the largest Spanish-speaking consumer base.  Therefore, by choosing to advertise via TelevisaUnivision's Univision Network, Defendant specifically directed advertisement at California and specific local television stations in California.

In terms of Univision local news stations specifically, the Univision Network has the *most* local news stations in California (five total), even more than in, Florida where it has its principal place of business (three total).[33]  And Univision *only* has local news stations in *nine*[34] out of the

---

[28] TelevisaUnivision is the owner of the Univision Network.  TELEVISAUNIVISION, ABOUT TELEVISAUNIVISION, https://corporate.televisaunivision.com/our-company/.

[29] The term Hispanic is commonly used to define the group of people living in the United States who are "from Spain or from Spanish-speaking countries in Latin America."  Mark Hugo Lopez, Jens Manuel Krogstad, and Jeffrey S. Passel, *Who is Hispanic?*, PEW RESEARCH CNTR. (Sept. 5, 2023), https://www.pewresearch.org/short-reads/2023/09/05/who-is-hispanic/.

[30] TELEVISAUNIVISION, HISPANIC CONSUMER, https://corporate.televisaunivision.com/hispanicinsights/.

[31] *Id.*

[32] TELEVISAUNIVISION, LOCAL MEDIA, https://corporate.televisaunivision.com/partner-with-us/local/ (stating, "With over 120 combined television and radio stations and an in-depth understanding of the markets we serve, we leverage our expertise to help brands reach our communities.")

[33] Univision has *five* local stations in California including Bakersfield, CA; Fresno, CA; Los Angeles, CA; Sacramento, CA; and San Francisco, CA.  In contrast, it has *three* local news stations in Florida including Tampa, FL; Orlando, FL; and Miami, FL.  *Your City*, UNIVISION, https://www.univision.com/local (last accessed 6/3/2024).

[34] The nine states include: California, Florida, Texas, Arizona, Illinois, Georgia, Pennsylvania, North Carolina, and Utah, plus it also includes Washington D.C. *Id.*

1    fifty U.S. states.  And there are no Univision news stations in the states with small Spanish-

2    speaking populations, such as North Dakota,[35] for example.

3          By advertising Univision NOW on the Univision news and Univision programming,

4    Defendant is specifically targeting the consumers in the areas where Univision has its news stations

5    and local television stations – which is predominantly in California.  *See Rio*, 284 F.3d at 1020.  As

6    such, Defendant has affirmatively acted to encourage California residents to subscribe to and

7    access Univision NOW by targeting California residents with advertising.  *Cf. Schwarzenegger v.*

8    *Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004) (finding that the defendant's

9    advertisement was aimed at Ohioans and was never circulated in California meaning the defendant

10   had "no reason to believe that any Californians would see it and pay a visit to the dealership");

11   *Cybersell*, 130 F.3d at 419 (noting that the defendant "did nothing to encourage people in Arizona

12   to access its site" and that there was no evidence of an Arizonan visiting the website at issue).

13         Defendant also challenges Plaintiff's allegations by arguing that "advertisements aired on

14   Univision Network programs cannot constitute a basis for specific personal jurisdiction over

15   Univision NOW" because (Defendant argues) "Univision Network is a completely separate entity

16   from Univision NOW" and "news programs are 'live' programming not covered by the VPPA."

17   MTD at 10.  However, Plaintiffs are not arguing that the advertisements themselves are the videos

18   at issue under the VPPA, so it is not an issue that the live advertisements are not videos covered by

19   the VPPA.  It is also immaterial that the Univision Network is a separate entity.  *See Rio*, 284 F.3d

20   at 1020 (noting Defendant used unrelated companies to advertise).  What matters is that Defendant

21   actively ***chose*** to use Univision Network's reach and platform to target the Spanish-speaking

22   audience locally in California with Univision NOW advertisements.  As such, this is not a case

23   where only "some advertising of Univision NOW may have incidentally occurred in California."

24   MTD at 10.

25   ───────────────────────

26   [35] Jens Manuel Krogstand, Jeffrey S. Passel, Mohamad Moslimani, and Luis Noe-Bustamante, *Key facts about U.S. Latinos for National Hispanic Heritage Month*, PEW RESEARCH CENTER (2023), https://www.pewresearch.org/short-reads/2023/09/22/key-facts-about-us-latinos-for-national-hispanic-heritage-month/#:~:text=Vermont%20had%20the%20nation's%20smallest,group%20since%20the%20early%202000s (noting North Dakota as one of the states with the smallest Latino populations).

27

28

1

2

### 3.   Defendant's contacts caused harm that Defendant knew would likely be suffered in California

3

Defendant's intentional contacts with California have foreseeable effects in California.  The

4

inquiry "does not require that the 'brunt' of the harm be suffered in the forum jurisdiction" and it

5

does not matter that more harm has been suffered in a different forum (although having more harm

6

in a forum besides California is unlikely in this case).  *Incorp*, 2012 WL 3685994, at *8.  Here, it is

7

foreseeable that video privacy violations would be inflicted in California because (1) Defendant

8

places local advertisements in California to get Californians to subscribe to its video streaming

9

service and (2) posts videos on that service with subject matter appeals specifically to California's

10

Spanish-speaking and Mexican populations – especially when (3) California is likely the largest

11

state market and (4) accounts for the largest state share of that video streaming service's traffic and

12

revenue.  *See Mavrix Photo*, 647 F.3d at 1230; *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th

13

442 (9th Cir. 2024).

14

### B.   The Claim Arises Out of Defendant's Forum-Related Contacts

15

Defendant launches three arguments against causation.  <u>First</u>, Defendant argues its only

16

contacts with California are Plaintiffs' unilateral use of Univision NOW in California.  MTD at 12.

17

<u>Second</u>, it argues "Univision NOW's nationally-available website and national advertising

18

practices cause no different contacts in California than they do in any other state." *Id.*  And <u>third</u>, it

19

argues that these national advertising practices are not the acts that gave rise to Plaintiffs'

20

allegations of misconduct." *Id.* (citing non-binding opinions *Chorost v. Rotor Amer. Inc.*, 2022

21

WL 17361299, at *9 (D. Ariz. Aug. 8, 2022); *Neumann v. Red Rock 4-Wheelers, Inc.*, 2022 WL

22

3370170, at *4 (D. Nev. Aug. 15, 2022)).

23

These arguments all miss the mark, because, as explained above, this case is ***not*** about a

24

nationally available streaming service that Plaintiffs just so happened to use in California.  As fully

25

detailed in Section I.A., this case ***is*** about Defendant operating its streaming service while

26

intentionally cultivating an audience in California and providing video content with a California

27

focus.  And so, the effect of Defendant's VPPA violations is more profound in California than

28

anywhere else.  Defendant's contacts are "part of [its] attempts to serve and attract [Univision

1  NOW subscribers] in the [California] market, which caused" Plaintiffs' injuries in California.  *See*

2  *Ayla*, 11 F.4th 972 at 983.

3  Plaintiffs need not even prove causation to show their claims "arise out of" Defendant's

4  California contacts.  As the Supreme Court recently explained, "[t]he first half of that standard asks

5  about causation; but the back half, after the 'or,' contemplates that some relationships will support

6  jurisdiction without a causal showing."  *Ford Motor Company v. Montana Eight Judicial District*

7  *Court*, 592 U.S. 351, 352 (2021).  Instead, alleging that a "company cultivates a market for a

8  product in the forum State" and alleging the harm is "*related to*" *that* product in *that* forum is

9  enough.  *Id.* (emphasis added).  Here, Defendant has "systematically served" the California market

10  for the "product" (the Univision NOW streaming platform/service) that Plaintiffs allege injured

11  them (due to Defendant's disclosures of Plaintiffs' PII and associated video viewing histories via

12  the Univision NOW platform).  *Id.* at 352-53.  Therefore, "there is a strong 'relationship among the

13  defendant, the forum, and the litigation'" here.  *Id.* (citing *Helicopteros Nacionales de Colombia,*

14  *S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

15  Defendant's reliance on the non-binding opinions in *Chorost v. Rotor America Inc.* and

16  *Neumann v. Red Rock 4-Wheelers, Inc.* are inapt.  The *Chorost* court found that plaintiff's

17  defective design claim against a bicycle manufacturer did not arise out of defendant's contacts with

18  Arizona – which included its website product listings and national advertising – given that the

19  "[p]laintiff did not obtain the stem at issue directly from [the defendant] and its website."  *Chorost*

20  *v. Rotor Am. Inc.*, 2022 WL 17361299, at *9 (D. Ariz. Aug. 8, 2022).  Here, in contrast Plaintiff's

21  video privacy injuries came from exactly the same video streaming website and app – Univision

22  NOW – that Defendant advertised directly to the California forum.

23  The *Neumann* opinion is equally inapt.  In *Neumann*, defendant's contacts included its

24  national advertisement which "d[id] not target Nevada or Nevadans but was instead merely

25  "accessible from" the forum state.  *Neumann*, 2022 WL 3370170, at *4.  The court held that even if

26  the contacts were sufficient to establish the contacts prong, the plaintiff's harm did not arise out of

27  the contacts because the plaintiff's decision to attend the defendant's event was unrelated to the

28  defendant's marketing materials.  However, this case, again, is not binding here.  As the Supreme

1 Court held in *Ford*, there need not be a causal connection between the contacts and the harm

2 alleged. *Ford*, 592 U.S. at 352. Instead, since Plaintiffs have plausibly alleged that Defendant

3 cultivated the California market for its Univision NOW streaming platform, and the harm suffered

4 is directly related to the use of that platform, Plaintiffs have met their burden to plausibly allege

5 this prong. *Id.*

6      In sum, Plaintiffs have plausibly alleged that Defendant has committed an intentional act,

7 has expressly aimed conduct at California, which caused harm Defendant knows is likely to be

8 suffered in California, and that Plaintiffs' claims arise out of Defendant's forum contacts.

9      **C.**     **The Court's Exercise of Jurisdiction Over Defendant Comports**

10               **With Fair Play and Substantial Justice**

     A court may assert personal jurisdiction over a Defendant if it comports with fair play and

11 substantial justice. To evaluate this question, courts consider; "(1) the extent of the defendant's

12 purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending

13 in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum

14 state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

15 controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective

16 relief; and (7) the existence of an alternative forum." *Ayla*, 11 F.4th at 980. If plaintiff establishes

17 a prima facie case for jurisdiction, "the defendant must come forward with a 'compelling case' that

18 the exercise of jurisdiction would not be reasonable." *Boschetto v. Hansing*, 539 F.3d 1011, 1016

19 (9th Cir. 2008). Here, Defendant has not made a compelling case that the Court's exercise of

20 jurisdiction would be unreasonable.

21      As discussed in Section I.A. above, Defendant's argument that it has not purposefully

22 interjected itself into the forum, MTD at 13, fails because its contacts with California are not

23 limited to Plaintiffs unilaterally using the services in California. Instead, Defendant purposefully

24 directed its activities at California by operating an interactive platform that it marketed and

25 advertised to California Spanish-speaking consumers, that contains California-focused content, and

26 from which Defendant derives substantial traffic and revenue from California consumers.

27 Therefore, the first inquiry weighs in favor of the Court's exercise of jurisdiction.

28

1    Defendant would not face an unreasonable burden by litigating in California, *id.*, because

2    even if Defendant would face a slight burden in having to travel to California, it has not "presented

3    evidence that the 'inconvenience is so great as to constitute a deprivation of due process.'"

4    *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 608 (9th Cir. 2018) (citing

5    *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).  Because

6    Defendant is a corporate entity that does business in different parts of the country and given

7    modern advances "in communication and transportation" that have "significantly reduced the

8    burden of litigating in another forum," it cannot be said that Defendant would be unreasonably

9    burdened by traveling to California to litigate.  *Id.*

10    California has an interest in adjudicating the case in California to protect its citizens against

11    tortious conduct committed against them in the state.  *Data Disc, Inc. v. Systems Tech. Associates,*

12    *Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977) (holding "[a] state has a special interest in exercising

13    jurisdiction over those who have committed tortious acts within the state").  So this factor favors

14    jurisdiction.

15    The efficiency factor depends on where the witnesses and evidence are likely located.

16    *Freestream*, 905 F.3d at 609.  And this factor is "no longer weighed heavily" given advances in

17    communication and transportation.  *Id.* (quoting *Panavision*, 141 F.3d at 1323.  Here, much of the

18    evidence and witnesses are likely located where Endeavor operates (New York) given that it

19    provided Defendant with the software to collect and disclose users' PII, and it received the

20    information.  Therefore, the alternative forum that Defendant argues for – litigating where

21    Defendant resides, *see* MTD at 13 – would be just as efficient as California.  This is because the

22    evidence and witnesses from Endeavor are not in Florida, Delaware, or California.  Nonetheless,

23    this factor is not given much weight and is neutral towards jurisdiction.

24    Because Plaintiffs are both located in California, and their counsel is in California, it would

25    be inconvenient to require Plaintiffs to litigate in a different forum.  Therefore, this factor favors

26    jurisdiction.  *See Freestream*, 905 F.3d at 609.

27

28

1

2

3

   Finally, just because there are other forums in which suit could be brought against Defendant, MTD at 14, does not make this court's exercise of jurisdiction over Defendant in California unreasonable once considering all the *other* factors. *See Freestream*, 905 F.3d at 609.

4

5

6

7

8

9

10

   In sum, Defendant has not presented a compelling case that this Court's exercise of personal jurisdiction over Defendant in California would be unreasonable, especially given the extensive purposeful interjection Defendant has in California and California's interest in adjudicating purposeful torts committed against its citizens in the state. *See Freestream*, 905 F.3d at 609-10 (holding that the defendant failed to make a compelling case that the court's exercise of jurisdiction would be unreasonable, especially "in light of Nevada's strong interest in adjudicating matters involving intentional torts committed within the State").[36]

11

12

## II.   PLAINTIFFS HAVE STANDING TO PURSUE CLAIMS ON BEHALF OF A CLASS OF CONSUMERS THAT USED BOTH THE WEBSITE AND/OR APP

13

14

15

16

17

18

19

20

   Defendant argues that Plaintiffs lack standing to bring claims on behalf of a class of consumers who suffered VPPA violations via their use of the Website since both Plaintiffs only used the App.  MTD at 16.  To support this argument, Defendant relies on various cases where the courts found that a plaintiff cannot assert claims for products that they did not buy because they did not suffer a fairly traceable injury for those unpurchased products.  MTD at 16 (citing *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021); *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal July 11, 2012); *Dysthe v. Basic Rsch. LLC*, 2011 WL 5868307 (C.D. Cal. June 13, 2011); *Mlejnecky v. Olympus Imaging Am. Inc.*, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011); *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1150 (N.D. Cal. 2013)).

21

22

23

24

   Defendant's argument misses the mark.  Unlike the cases Defendant cites, here there is only *one* product at issue – that is the Univision NOW streaming service.  FAC ¶¶ 2, 18, 20, 21, 29 (referencing the "product" as the Univision NOW streaming service that is accessible on the

25

26

27

28

---

[36] In the alternative, this Court should permit jurisdictional discovery.  The court has broad discretion to grant jurisdictional discovery. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285, n. 1 (9th Cir. 1977) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, at 430 n. 24 (9th Cir. 1977)).  Granting discovery is appropriate where the "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id*

1    Website and App rather than referencing the Website and App as separate services or "products").

2    That this service is available via its Website or its App is irrelevant.  They are distinct ways to

3    access the ***same*** Univision NOW streaming service.  The same video content is available on the

4    App and the Website.[37]  Consumers create ***one*** account and sign up for ***one*** subscription which

5    they can access via either the Website or the App.  And as Plaintiffs allege and show in the FAC

6    paragraphs 21, 26-31 and Figures 1-6, Defendant has "imbedded the Neulion Tracking Code" on

7    both the Website and App, and discloses the same information about its consumers to Endeavor via

8    the Website and App.  Because Plaintiffs were both subscribers of the Univision NOW streaming

9    service, and because the service is the same on the Website and App, Plaintiffs can properly assert

10   claims on behalf of a class of consumers that used Univision NOW via the Website even though

11   Plaintiffs themselves did not do so.

12   **III.     PLAINTIFFS PLAUSIBLY ALLEGE VALID CLAIMS UNDER THE VPPA**

13        **A.     The Ordinary Course of Business Exception Does Not Apply to
                   Endeavor's Services**

14

15        Defendant argues that Plaintiffs' VPPA claims should be dismissed because the disclosures

16   to Endeavor fall within the ordinary course of business exception of the statute.  MTD at 17-19.

17   They are not.  "[T]he term 'ordinary course of business' means <u>only</u> debt collection activities,

18   order fulfillment, request processing, and the transfer of ownership."  18 U.S.C. § 2710 (a)(2).

19   "Endeavor Streaming is a marketing and advertising retargeting tool that its clients, such as

20   Defendant, utilize to further their pecuniary interests."  FAC ¶ 24.  As courts have uniformly held,

21   "shar[ing] data with online market research, ad network and web analytics companies [for] …

22   services like internal research, advertising, and analytics… are not in the ordinary course of [a

23   defendant]'s business of delivering video content to consumers."  *In re Hulu Priv. Litig.*, 2012 WL

24   3282960, at *7 (N.D. Cal. Aug. 10, 2012) (*Hulu II*).   As explained in *Saunders v. Hearst

25   Television, Inc.*, 2024 WL 126186, at *4 (D. Mass. Jan. 11, 2024) "[t]he VPPA has a narrow

26   ───────────────────────

27   [37] UNIVISION NOW, GETTING STARTED WITH UNIVISION NOW, https://www.univisionnow.com/faq
     (stating "You can access Univision NOW content anywhere, anytime, on many devices. Univision
     NOW is available on mobile, tablets, and connected TVs. You can also watch on your computer or
     mobile phone at www.univisionnow.com.")

28

1    exception for disclosures made 'incident to the ordinary course of business.'…The alleged uses of

2    the information here – 'marketing, advertising, and analytics' – do not fall within the exception's

3    narrow list of permissible uses."  2024 WL 126186, at *4 (citing *Louth v. NFL Enterprises LLC*,

4    2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022).  Indeed, in *Sterk v. Redbox Automated Retail,*

5    *LLC*, 770 F.3d 618, 624 (7th Cir. 2014) – *a case which Defendant relies on* – the court rejected the

6    argument that "marketing activities" fall within the ordinary course of business exception.

7    Defendant says this is "the made-up claim."  MTD at 18.  It is not "made up."  It is based

8    on Endeavor Streaming's own marketing materials, which the FAC quotes verbatim.  *See* FAC ¶¶

9    21-24.  Endeavor Streaming says its services include "audience development" and involves "digital

10   marketers and analysts [to] uncover critical user behavior patterns, harness proprietary predictive

11   insights, and optimize multi-channel OTT marketing tactics to help [clients] make informed data-

12   driven decisions."  FAC ¶ 22.  Another one of Endeavor Streaming's clients is quoted as saying

13   they use their services to "monetize our content, but also identifies new fans, reduces churn, and

14   helps us understand our fans globally."  FAC ¶ 23.  Therefore, Plaintiffs' allegations are not

15   "unwarranted deductions of fact, or unreasonable inferences" as Defendant attempts to characterize

16   them.  MTD at 18.

17   Rewriting Plaintiffs' complaint, Defendant argues that Endeavor provides Defendant with

18   "content delivery network platform services [which] include 'content operations,'

19   'communications,' and 'end-user customer support'" which are "exactly the kind of services the

20   'ordinary course of business exception' was intended to address."  MTD at 17-18.  <u>First</u>, such

21   factual disputes are better addressed in a motion for summary judgment, not a Rule 12(b)(6)

22   motion to dismiss for failure to state a claim.  Indeed, it is significant that one of the principal cases

23   Defendant relies on – *Sterk*, 770 F.3d 618 – was decided *after* summary judgment.  <u>Second</u>, while

24   it may be true that Defendant uses Endeavor's services for its "content delivery network platform

25   services [which] include 'content operations,' 'communications,' and 'end-user customer

26   support,'" *id.*, it does not mean Defendant does not ***also*** use Endeavor's marketing services.  FAC ¶

27   22.  And "to the extent the PII disclosure is in furtherance of an objective beyond the general

28   upkeep of the operation, the ordinary course of business exception cannot apply … [and] targeted

1   advertising goes beyond the management and operations of the business to, as [plaintiffs]

2   contend[], a purely pecuniary end." *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *17 (D.

3   Mass. Feb. 1, 2024) (distinguishing both of Defendant's cited cases on this ground).

4        As such, because Plaintiffs plausibly allege that Defendant is using Endeavor's service for

5   advertising and remarketing, and because case law supports that information disclosed for these

6   purposes are outside the scope of the VPPA's ordinary course of business exception, Defendant's

7   argument fails.

8        **B.    Defendant's Disclosures of Users' Emails in Base64 Readily
              Enable an Ordinary Person to Identify an Individual**

9        Defendant argues that users' email addresses in Base64 are not personally identifiable

10  information ("PII") because the ordinary person would be unable to identify a person "without

11  combining" the Base64 email "with other information."  MTD at 20.  Not so.  Defendant's

12  arguments in this regard display a fundamental misunderstanding of the law.

13       First, "an email address may very well readily enable an 'ordinary person' to identify an

14  individual" and thus qualify as a PII under the VPPA.  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979,

15  986 (9th Cir. 2017); *accord Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal.

16  2023) (holding that "email addresses" and video titles constitutes PII under the VPPA); *Saunders*,

17  2024 WL 126186, at *3 (same).  "With a simple search engine or a service like Spokeo, an email

18  address can also be used to find personal information such as a corresponding username or physical

19  address."  *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017).

20       Contrary to Defendant's assertions, it is immaterial that these emails are disclosed in the

21  Base64 computer language as opposed to English.  The Ninth Circuit holds that "'personally

22  identifiable information' must have the same meaning *without regard to its recipient's*

23  *capabilities*." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (emphasis added).

24  As such, there is no requirement that the information be presented in a format that a person of

25  ordinary technical acumen can understand.  Instead, *Eichenberger* holds that *information* can be

26  PII if the "ordinary person," with the help of "modern technology," can figure out that a specific

27  person requested or obtained a specific video.  *Id*.  Indeed, the Court in *Eichenberger* said even

28

1  "GPS coordinates of a particular device" if combined with other information, could qualify as PII,

2  because "modern technology may alter – or may have already altered – what qualifies as PII under

3  the statute." *Id.*  This is so, even if the ordinary person, or *even the Ninth Circuit panel itself*,

4  lacked the "specialized knowledge," MTD at 21 to use that modern technology.[38]

5         As Plaintiffs' FAC demonstrates, FAC ¶¶ 32-36, the identification Token containing their

6  email addresses in Base64 objectively allows an ordinary person to figure out their identity through

7  "modern technology." *Id.*  Modern technology makes "the Base64 language … as easily

8  translatable as Spanish, Serbian, or Swahili. *Id.* ¶ 32.  And just as any ordinary person can readily

9  cut-and-paste Spanish text into Google Translate to figure out what it means in English, any

10 ordinary person can cut and paste Base64 text into any one of myriad Base64 decoding websites

11 and figure out what the Base64 text means." *Id.* ¶¶ 32-36.  "Moreover, any ordinary person can

12 input Base64 text into one of several generative AI chatbots like ChatGPT, and the AI will

13 instantly recognize that the text is Base64 and translate it for the person." *Id.* ¶ 38.  Nor is Base64

14 uncommon or obscure; anyone has who taken a single undergraduate computer science course

15 would be familiar with Base64 and know how to decode it with a pencil and paper.

16        Misciting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), D2C

17 argues there is too much "'yet-to-be-done' and unforeseeable detective work" in obtaining the

18 "specialized knowledge and skill typically held by computer programming professionals" to

19 "recognize the coding scheme as Base64," "find free encoding software, and then" "decode it" to

20

---

21 [38] Although the *Eichenberger* test for PII has at times been called the "ordinary person" test, it may
   be better understood as an objective test, in contrast to the subjective test for PII used by the First
22 Circuit in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016).
   *Yershov* held that the disclosure of video titles and "device identifier information" was PII under
23 the VPPA because, when this information was subjectively in the hands of the third party, Adobe,
   it was "reasonably and foreseeably likely to reveal which ... videos [a person] has obtained." 820
24 F.3d at 486.  This is because "Adobe takes this and other information culled from a variety of
   sources to create user profiles." *Id.* at 484 (emphasis added).  So "Adobe has the 'game program,'
25 so to speak, allowing it to link the … device identifier information to a certain person." *Id.* at 486.
   The Ninth Circuit rejected this subjective approach for an objective one, because "'personally
26 identifiable information' must have the same meaning without regard to its recipient's capabilities.
   Holding otherwise would make the lawfulness of a disclosure depend on circumstances outside of a
27 video service provider's control." *Eichenberger*, 876 F.3d at 985 (internal citations omitted).

28

1   identify a user.  MTD at 21.  However, all these things are **school work**, not the "detective work"

2   that *in re Nickelodeon* was referring to.  Instead, "the unforeseen detective work," *in re*

3   *Nickelodeon* refers to is the notion that companies like "Google will assemble otherwise

4   anonymous pieces of data to unmask the identity" of a video viewer.  827 F.3d at 290.  Here in

5   contrast, consumers' email addresses in Base 64 and titles of videos they viewed in Spanish are PII

6   because they contain all the information necessary to identify a person.  A person need not

7   "combine" this data with any *additional information* to identify a person.  In fact, *in re*

8   *Nickelodeon* actually undermines Defendant's argument because it expressly distinguished those

9   "anonymous pieces of data" from the information at issue here: "pieces of information … from

10  which it would likely be possible to identify a person by consulting publicly available sources, such

11  as a phone book or property records."  827 F.3d 262, 282–83.  Likewise here, ChatGPT and

12  Base64 decoding websites are all "publicly available sources" which any ordinary person can use

13  to identify an individual.

14       Defendant next argues that for a person to translate the Base64 email, they first need to

15  "recognize the Base64 language" and it "'looks like gibberish' to the untrained eye."  MTD at 21.

16  Again, this is irrelevant; "'personally identifiable information' must have the same meaning

17  *without regard to its recipient's capabilities*."  *Eichenberger*, 876 F.3d at 986.  Indeed, the

18  Facebook ID also "looks like gibberish to the untrained eye."  And courts uniformly hold that

19  Facebook IDs are PII.  *Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180, at *5 (N.D. Cal. Jul.

20  28, 2023); *Collins v. Pearson Education, Inc.*, 2024 WL 895316, at *7 (S.D.N.Y. Mar. 1, 2024);

21  *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023); *Lamb v. Forbes*

22  *Media LLC*, 2023 WL 6318033, at *11 (S.D.N.Y. Sept. 28, 2023); *Hulu*, 2014 WL 1724344, at

23  *14.  In fact, over a decade ago, another defendant argued that the Facebook ID was not PII

24  because it appears as a "string of numbers and letters."  *Hulu*, 2014 WL 1724344 at *14.  The court

25  rejected that argument.  *Id*.  This court should as well.

26       In *Eichenberger*, the court held that a "(1) Roku device serial number and (2) the names of

27  the videos that [plaintiff] watched" were not PII because "that information cannot identify an

28  individual unless it is combined with other data in Adobe's possession."  876 F.3d at 986

(emphasis in original).  Here, contrary to Defendant's argument, the Base64 disclosure "is enough, on its own, to identify a person" and need not be "combined with other data."  *See Sellers*, 2023 WL 4850180, at *5.  And translating the Base64 emails to English is not the same as combining additional data to the emails.  *See Eichenberger*, 876 F.3d at 986.

Finally, Defendant argues the information here is not PII because it is disclosed in two separate packets of data.  MTD at 21 ("identification Tokens do not contain both an email address and the video title").  Defendant cites no authority for this argument, and indeed, other courts have rejected it.  *Campos v. Tubi, Inc.*, 2024 WL 496234, at *8 (N.D. Ill. Feb. 8, 2024) (holding complaint plausibly alleged the disclosure of PII even though defendant claimed it "collects and discloses its subscribers' viewing data at multiple points.").[39]

In sum, Plaintiffs have plausibly alleged that the information Defendant discloses – consumers' emails in Base64 and the titles of the videos they watched – is PII under the VPPA's definition.

### C.  Defendant's Time-Bar and Tolling Arguments Are Inappropriate for This Stage In The Litigation

Defendant argues that Plaintiffs' claims are time-barred by misconstruing the allegations to say that Plaintiff Palomino's claims arose "'around three years ago' …  and in March 2020 for Plaintiff Villalobos.  MTD at 22.  First, whenever Plaintiffs started their video subscription is irrelevant, because the VPPA has a statutory tolling provision.  18 U.S.C. § 2710(c)(3) ("No action may be brought under this subsection unless such action is begun within 2 years from …<u>the date of discovery</u>.") (Emphasis added).  And in any event, questions on the statute of limitation and equitable tolling are "generally determined by matters outside of the pleadings" and Defendant should wait and "renew its statute of limitations argument at the appropriate time."  *Lawrence v. Finicity Corp.*, 2024 WL 584615 at *24 (E.D. Cal. Feb. 13, 2024).

---

[39] Attempting to manufacture a factual dispute where there isn't one, D2C comments that Figure 6 in the FAC "appears to be altered, in that the bottom half appears to have been cut off, with no explanation as to why."  MTD at 6.  Almost every single one of the screenshots in the FAC were cropped to give the clearest view of the relevant text discussed.  In any event, if D2C doubts the authenticity of any of these screenshots, it can consult with their own experts and collect their own screenshots of the data their website and app disclose to Endeavor Streaming.

1

2

## IV.     PLAINTIFFS PLAUSIBLY ALLEGE A CLAIM UNDER CALIFORNIA CIVIL CODE § 1799.3

Cal. Civ. Code § 1799.3(a) prohibits a "person providing video recording sales or rental services" from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

The California analog is broader than the VPPA because it does not require that the information the person discloses be *identifiable* to any particular person, but instead prohibits disclosure of generalized "personal information" without the person's consent.  The statute also prohibits the mere disclosure of the "contents of any record, including sales or rental information." As such, Defendant's arguments that Plaintiffs cannot plausibly allege a violation because the emails disclosed in Base64 cannot identify a person have even less weight under this state law claim.

## V.     CONCLUSION

For these reasons, the Court should deny Defendant's motion to dismiss.

Dated:  July 19, 2024                    **BURSOR & FISHER, P.A**.

By:   */s/ Stefan Bogdanovich*
                    Stefan Bogdanovich

Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
          sbogdanovich@bursor.com
          idiaz@bursor.com

*Attorneys for Plaintiff*