**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ndeckant@bursor.com
          sbogdanovich@bursor.com
          idiaz@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZEQUIEL PALOMINO and DINORATH VILLALOBOS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>D2C, LLC, d.b.a. UNIVISION,<br><br>Defendant. | Case No. 5:24-cv-01517-EKL<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

1    Plaintiffs Ezequiel Palomino and Dinorath Villalobos (collectively "Plaintiffs") bring this

2    action on behalf of themselves and all others similarly situated against D2C, LLC ("Defendant" or

3    "Univision").  Plaintiffs make the following allegations pursuant to the investigation of their

4    counsel and based upon information and belief, except as to allegations specifically pertaining to

5    themselves and their counsel, which are based on personal knowledge.

6    <u>**NATURE OF THE ACTION**</u>

7    1.    This is a class action suit brought against Defendant D2C, LLC for violating the

8    Video Privacy Protection Act ("VPPA") and California Civil Code § 1799.3 (Cal. Civ. Code §

9    1799.3) by collecting and sharing highly specific and sensitive information about consumers' video

10   consumption habits without their consent.

11   2.    Defendant owns and operates a video streaming service platform called Univision

12   NOW which is accessed through the website univisionnow.com ("Website") or through the mobile

13   application ("App") called Univision NOW.  Univision NOW specializes in providing various

14   prerecorded shows and movies in America's second-most spoken language, Spanish.

15   Unfortunately for consumers, Defendant secretly discloses the Spanish titles and URLs of the

16   videos they consume on this platform (via the Website and App), along with consumers' email

17   addresses, to Endeavor Streaming, LLC ("Endeavor Streaming"), an unrelated third party, in yet

18   another commonly used language, Hacker Pig Latin (also known as Base64).

19   3.    As Congress recognized in enacting the VPPA, "films are the intellectual vitamins

20   that fuel the growth of individual thought." S. Rep. No. 100-599, at 7 (Oct. 21, 1988) (citing

21   Senate Judiciary Subcommittee on Technology and the Law, Hearing Tr. at 10 (Aug. 3, 1988)).

22   Indeed, the videos people watch can often reveal their private politics, religious views, or

23   sexuality—in other words, their most personal and intimate details.  *Id.*  In enacting the VPPA,

24   Congress decided that this intimate information "should be protected from the disruptive intrusion

25   of a roving eye."  *Id.*  The VPPA was meant to give consumers the power to "maintain control over

26   personal information divulged and generated in exchange for receiving services from video tape

27   service providers."  S. Rep. No. 100-599, at 8 (Oct. 5, 1988).  "The Act reflects the central

28

principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.*

4.      Defendant violated the VPPA and Cal. Civ. Code § 1799.3 by knowingly disclosing Plaintiffs and Class Members' personally identifiable information ("PII")—including the specific videos they requested and obtained, and their email addresses—to unrelated third parties without their consent.  Defendant installed Endeavor Streaming's computer code on its Website and App, called the "Neulion Tracking Code," which tracks and transmits Plaintiffs' and the Class Members' private video consumption and their emails to neulion.com when they access videos on both the Website and App.  Behind the scenes of the webpages and app pages that display the movies and series—and unbeknownst to video viewers—this code collects Plaintiffs and Class Members' video-watching history and discloses it to Endeavor Streaming, the owner of neulion.com.  All of Plaintiffs and Class Members' video viewing history is, in turn, unknowingly collected and stored by Endeavor Streaming, a third-party tracker.

## PARTIES

5.      Plaintiff Dinorath Villalobos is, and has been, at all relevant times, a citizen of California who resides in San Jose, California.  Plaintiff has been a subscriber of the Univision NOW streaming service since March of 2020 and uses the service in California via the application.

6.      Plaintiff Ezequiel Palomino is, and has been, at all relevant times, a citizen of California who resides in San Bernardino, California.  Plaintiff has been a subscriber of the Univision NOW streaming service for approximately 3 years and uses the service in California via the application.

7.      Defendant D2C, LLC, is a Delaware limited liability company with its principal place of business in Florida.  Defendant owns and operates the univisionnow.com Website and Univision NOW App, which are used throughout California and the United States.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under a law of the United States (*i.e.,* the VPPA).  This Court also has supplemental jurisdiction over the California state claim because it arises from the same

1    transactions and occurrences which give rise to the action under federal law.  This Court also has

2    jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because the

3    amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, there are more than

4    100 members of the Class and California Subclass, and there is minimal diversity.

5        **A.    Defendant, TelevisaUnivision, and the Univision Network**

6        9.    D2C LLC is a limited liability company and its sole member is TelevisaUnivision

7    Digital, Inc.[1]  In other words, D2C LLC is wholly-owned by TelevisaUnivision Digital, Inc..[2]

8    Another company named TelevisaUnivision, Inc. states that it owns D2C LLC's streaming

9    platform, Univision NOW.[3]  On information and belief, TelevisaUnivision, Inc. is likely the

10   ultimate parent company of TelevisaUnivision Digital, Inc.

11       10.    According to TelevisaUnivision, Inc.: "TelevisaUnivision is the world's leading

12   Spanish-language media company."[4]  This media giant offers a variety of media options including

13   "market-leading broadcast networks" such as the Univision Network.[5]  The Univision Network

14   provides television programming and news.[6]

15       **B.    Defendant Purposefully Directs Its Activities to the California Forum and
         Plaintiffs' Injuries Arise Out of or Relate to Defendant's Contacts**

16       11.    This Court has personal jurisdiction over Defendant because it conducts substantial

17   business and purposefully avails itself of the benefits of conducting business within California, and

18   Plaintiffs' claims arise out of and relate to Defendant's contacts with California.

19

20

21   [1] *See* Exhibit 1.  Exhibit 1 is a downloaded copy of the D2C LLC entity information available via
     the Florida Secretary of State website.  This exhibit shows that the "Title Member" of D2C LLC is
22   TelevisaUnivision Digital, Inc.

23   [2] Jane Haskins, Esq., *What is the owner of an LLC called?*, LEGAL ZOOM,
     https://www.legalzoom.com/articles/what-title-do-i-use-if-i-am-head-of-an-llc (noting that the full
24   or partial owner of a limited liability company is known as a "member").

25   [3] TELEVISAUNIVISION, *Our Brands*, https://corporate.televisaunivision.com/our-brands/ (including
     Univision NOW as one of the TelevisaUnivision's brands).

26   [4] TELEVISAUNIVISION, *About TelevisaUnivision*, https://corporate.televisaunivision.com/our-
     company/.

27   [5] *Id.*

28   [6] UNIVISION NOTICIAS, https://www.univision.com/local.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12.    Specifically, Defendant's contacts with California involve Defendant collecting user activity and geo-location[7] data from its California resident subscribers and using that data to "tailor advertisements and content to increase user engagement" in California.  *See Rancourt v. Meredith Corp.*, 2024WL 381344, at *9 (D. Mass. Feb. 1, 2024).

13.    Defendant's Univision NOW Privacy Policy confirms that Defendant provides tailored advertisements to its subscribers: "We work with third-party advertising partners to show you ads that may interest you, and we may disclose information to third parties to enable targeted advertising."[8]

14.    Defendant's Frequently Asked Questions (FAQ) page also confirms that Defendant geo-locates its subscribers.[9]  For example, Univision NOW subscribers can watch the Univision Network news on Defendant's platform.  Defendant's FAQ page states: "The Univision App will stream the live local content from our New York, **Los Angeles**, Houston, Dallas, Chicago, Miami, Atlanta, and **San Francisco** stations to users in those cities.  Users not located in one of those cities will see the live national stream with network programming.  The Univision app is **geo-based** so you cannot access a local station if you are not that city.  For example, you cannot watch the Los Angeles station if you are in New York."[10]  Additionally, Defendant admits to geo-locate California subscribers in particular, given that its users located in the Los Angeles and San Francisco areas will be able to view the news from those Univision Network stations while on the platform.[11]  This shows that Defendant is aware of its California consumer base and is actively obtaining data from the California market.

---

[7] GEOAPIFY, *What is Geolocation: How It Works and Its Many Uses*, https://www.geoapify.com/what-is-geolocation/ (noting that there are several methods of obtaining a user's geolocation, including obtaining a user's IP address or network location).  Upon information and belief, Defendant is using one of these common methods to obtain subscribers' location both the Website and the App.

[8] UNIVISION NOW, https://www.univisionnow.com/privacy.

[9] UNIVISION NOW, *Frequently Asked Questions*, https://www.univisionnow.com/faq.

[10] *Id.* (emphasis added).

[11] *Id.*

15.    Defendant displays further evidence of geo-locating users as seen in Figure 1 below. Figure 1 is a screenshot from the Univision NOW App.  This screenshot was taken while Plaintiffs' counsel was logged into her Univision NOW account.  Plaintiffs' counsel lives in Sacramento, California.  Notably, the account information section of Defendant's App, has determined and informed Plaintiff's counsel that her local Univision news station is Univision 19, which is the Sacramento local news station.[12]  *See* Figure 1.

**Figure 1**



16.    As to the Univision NOW Website, Defendant also shows evidence of geo-locating subscribers.  For example, when Plaintiff's counsel logged onto her Univision NOW account while

---

[12] UNIVISION SACRAMENTO, https://www.univision.com/local/sacramento-kuvs.

1    in Jacksonville, Florida, Defendant's Website knew and informed Plaintiff's counsel that she was

2    in Jacksonville, Florida. *See* Figure 2.

**Figure 2**



17.    After collecting geo-location and platform use data from California subscribers,

Defendant can use California subscribers' data to increase user engagement in California through

its use of Endeavor Streaming's "audience development" services (as more fully described below).

1

2

3

4

5

6

As such, Defendant is not only aware that it obtains data from California Univision NOW platform users, but is also "taking a 'voluntary act[]' to foster the '"regular flow or regular course of sales"' from California. *See Rancourt*, 2024 WL 381344, at *9 (citing *Knox v. MetalForming Inc.*, 914 F.3d 685, 692 (1st Cir. 2019)). By engaging in its practice of collecting and sharing California consumers' data with Endeavor Streaming to target California consumers with advertising, Defendant also ultimately derives further revenue from California consumers.

7

8

9

10

11

12

13

14

18.    Plaintiffs' claims arise out of Defendant's contacts with California because by using California subscribers' data to target California consumers with advertising, Defendant obtains more traffic from California, allowing Defendant to further collect and disclose its California subscribers' video viewing data and PII. *See id.* at *10. Plaintiffs' claims also relate to Defendant's contacts with California because, through these actions, Defendant cultivates an audience in California and there is a strong relationship between the Plaintiffs' harm of having their privacy violated, Defendant's actions in California that leads to more subscribers having their privacy violated, and the present litigation.

15

16

17

19.    Defendant has also expressly aimed its contacts to California by operating its Univision NOW platform (via the Website and App) while (1) exhibiting an intent to cultivate an audience in California and (2) providing video content that has a California-specific focus.

18

19

20

21

22

20.    Defendant exhibits an intent to cultivate an audience in California for its Univision NOW platform because it has engaged in the directed act of advertising[13] the Univision NOW platform in California. This includes airing ads on the Univision Network news and other Univision programming. The Univision Network news primarily airs in California, more so than in any other state in the country. That is because the Univision Network hosts and airs ***more*** local

23

24

25

26

27

28

---

[13] DESPIERTA AMERICA, https://www.youtube.com/watch?v=Cc5GJp3AseU; https://www.youtube.com/watch?v=Cc5GJp3AseU; https://www.youtube.com/watch?v=jsAF3lTjiIJ0; UNIVISION DEPORTES https://www.youtube.com/watch?v=LDqxObv_AHM; REPUBLICA DEPORTIVA, https://www.youtube.com/watch?v=tzerk9y4AXQ; https://www.youtube.com/watch?v=xnv3TEh9sQ4 ; PRIMER IMPACTO, https://www.youtube.com/watch?v=oVXyrGJ-KAE.

1    news stations in California than in any other state, including Florida, where it is headquartered.[14]

2    Indeed, Defendant does not have any local news stations in many states.

3        21.    Defendant, as part of a larger corporate family, also attempts to cultivate an

4    audience in California.  In particular, D2C LLC's likely ultimate parent, TelevisaUnivision, Inc.,

5    has used its own media network to attempt to cultivate an audience for its Univision NOW brand

6    platform in California.

7        22.    TelevisaUnivision, Inc. specializes in providing Spanish-language content to

8    "REACH HISPANIC[15] AMERICA,"[16] which includes California given that it is the U.S. state with

9    the largest Spanish-speaking population.[17]  Therefore, as a brand forming part of the

10   TelevisaUnivision, Inc. media giant, Defendant is also exhibiting an intent to cultivate an audience

11   in the areas of the country where most Spanish-speakers reside, which includes California.

12       23.    Defendant also exhibits an intent to cultivate an audience in California by choosing

13   to tailor its content on the Univision NOW platform to include local news for subscribers located in

14   Los Angeles and San Francisco, California.[18]  Notably, Defendant's FAQ page makes clear that

15   Defendant is not choosing to tailor news content in this way for **all** subscribers.[19]  What is more,

16   Defendant does not make all its local news stations available via the Univision NOW streaming

17   service, but only local stations in one of eight "select markets," two of which happen to be in

---

[14] Univision has *five* local stations in California including Bakersfield, CA; Fresno, CA; Los Angeles, CA; Sacramento, CA; and San Francisco, CA.  In contrast, it has *three* local news stations in Florida including Tampa, FL; Orlando, FL; and Miami, FL.  *Your City*, UNIVISION, https://www.univision.com/local.

[15] The term Hispanic is commonly used to define the group of people living in the United States who are "from Spain or from Spanish-speaking countries in Latin America." Mark Hugo Lopez, Jens Manuel Krogstad, and Jeffrey S. Passel, *Who is Hispanic?*, PEW RESEARCH CNTR. (Sept. 5, 2023), https://www.pewresearch.org/short-reads/2023/09/05/who-is-hispanic/.

[16] TELEVISAUNIVISION, *Hispanic Consumer*, https://corporate.televisaunivision.com/hispanicinsights/.

[17] WORLD POPULATION REVIEW, https://worldpopulationreview.com/state-rankings/spanish-speaking-states.

[18] UNIVISION NOW, *Frequently Asked Questions*, https://www.univisionnow.com/faq; UNIVISION NOTICIAS, https://www.univision.com/local.

[19] UNIVISION NOW, *Frequently Asked Questions*, https://www.univisionnow.com/faq.

California (Los Angeles and San Francisco).[20]  So while there may be Univision branded local news stations in states and territories like Pennsylvania, North Carolina, Utah, Washington, D.C., or Puerto Rico,[21] *none* of the local stations in *those* US states, districts, or territories are available on the Univision Now streaming service.[22]

24.    By providing video content that directly relates to California subscribers in Los Angeles and San Francisco, Defendant is likely to attract subscribers from these regions.  And because Defendant considers Los Angeles and San Francisco two of its "select markets," its *selection* of those two local stations *at the exclusion* of *other* stations in *other* states exhibits an intent to cultivate an audience in California.  In other words, Defendant's airing local California programming on the Univision NOW streaming service is not incidental.

25.    Defendant further expressly aimed its contacts to the California forum by providing videos with a California-specific focus.  As mentioned in the preceding paragraphs, Defendant admits to, and does in fact, tailor video content on its Univision NOW platform by providing subscribers with local news video content when users are located in the regions specified above — which includes Los Angeles and San Francisco, California.  Therefore, because this video content is specifically about events that occur locally in Los Angeles and San Francisco, meaning that occur in California, Defendant provides its subscribers with video content that has a California-specific focus.

26.    Defendant also provides video content with a California-specific focus because its videos target the Spanish-speaking community, and California is the U.S. state with the largest Spanish-speaking population.[23]  Further, California is also the U.S. state with the largest Mexican population (34%).[24]  Videos on the Univision NOW platform are primarily Mexican soap operas

---

[20] *Id.*

[21] UNIVISION NOTICIAS, https://www.univision.com/local.

[22] UNIVISION NOW, *Frequently Asked Questions*, https://www.univisionnow.com/faq

[23] WORLD POPULATION REVIEW, https://worldpopulationreview.com/state-rankings/spanish-speaking-states.

[24] Mohamad Moslimani, Luis Noe-Bustamante, and Sono Shah, *Facts on Hispanics of Mexican origin in the United States, 2021*, PEW RESEARCH CENTER (Aug. 16, 2023), https://www.pewresearch.org/race-and-ethnicity/fact-sheet/us-hispanics-facts-on-mexican-origin-

and television shows that are in Spanish and are Mexican-made and Mexican-themed — meaning, they are made by Mexican producers, star Mexican actors, are set in Mexican settings, and include themes that resonate with the Mexican audience.  Therefore, because California's population includes the largest percentage of Spanish-speakers and people of Mexican descent in the country, Defendant's video content particularly appeals to the California audience.  *See DFSB Kollective Co, Ltd. v. Bing Yang*, 2013 WL 1294641, at *6 (N.D. Cal. Mar. 28, 2013) ("Plaintiffs have provided evidence that the United States is their largest market for sales and that California accounts for a large share of their business within the United States, in part because the music appeals to the large population of residents of Korean descent in the state … As in *Mavrix,* these facts show that Defendants had actual or constructive knowledge of their California users and that they exploited that user base for profit.")

27.     In fact, these videos appeal to the California audience more so than even an audience from Defendant's headquartered state of Florida.  Although Florida also has a large Spanish-speaking population, the vast majority do not come from Mexico, but rather from other nations like Cuba, the U.S. territory of Puerto Rico, and many other South American nations with their own unique Spanish dialects.[25]  As such, Univision Now's Mexican soap operas are more likely to appeal to the Californian audience than the Floridian one.

28.     Plaintiffs are not required to conduct a poll and show that California residents in fact watch Defendant's video content or have an appeal to this content.  Plaintiffs' allegations are a matter of making a logical inference that because Defendant's video content is in Spanish and has a Mexican theme and is Mexican-made, that it is plausible that the California audience, who is largely Spanish-speaking and of Mexican descent, will have an appeal to this content compared to non-Spanish speakers or non-Mexicans.  On the other hand, it does not make sense that, for example, non-Spanish speakers would be interested in Defendant's video content since this

latinos/#:~:text=for%20foreign%20born.-
,Top%20states%20of%20residence,%25)%20and%20Colorado%20(2%25).

[25] Taemin Ahn, Hector De Leon, Misael Galdàmez, Rocio Perez, Denise Ramos-Vega, Lupe Renteria Salome, Jie Zong, *15 Facts About Latino Well-Being In Florida*, UCLA Latino Policy & Politics Institute, available at https://latino.ucla.edu/research/15-facts-latinos-florida/ (last accessed 6/5/2024).

audience would not understand the videos due to the language barrier — not to mention the cultural appeal to these videos that is unique to the Mexican audience. While there are always exceptions — such as Mexican Spanish-speakers who do not like watching video content in Spanish and Mexican shows or non-Spanish speakers and non-Mexicans who love watching Mexican shows — it is still more likely that the people who will be interested in Defendant's particular video content will be the Spanish-speaking audience and the audience of Mexican descent.

29.     At a minimum, the make-up of the California resident population is evidence of California being one of, if not the largest market Defendant has.

30.     Plaintiffs' claims arise out of Defendant's contacts with California since, but for its express aiming of the Univision NOW platform to California, California viewers like Plaintiffs would not have tuned in to the Univision Now's California-focused programming, and Plaintiffs' harms would not have occurred in California. Plaintiffs' claims also relate to Defendant's contacts with California given that Defendant has cultivated an audience in California and there is a strong relationship between the privacy violation Plaintiffs suffered, the Defendant's actions of cultivating an audience in California and its data sharing practices that affect California resident subscribers, and the litigation at hand.

31.     As such, this Court's exercise of jurisdiction over Defendant is proper.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this District. In particular, Plaintiffs reside in this District and watched videos from the Univision NOW streaming platform in this District.

## FACTUAL ALLEGATIONS

### A.     The VPPA.

33.     The origins of the VPPA begin with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper, which was then published. With an eye toward the digital future, Congress responded by passing the VPPA. As Senator Patrick Leahy, who introduced the Act, explained:

It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home.  In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, or who some of the people they telephone.  I think that is wrong.  I think that really is Big Brother and I think it is something that we have to guard against.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

34.     Accordingly, the VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710(b)(1).  The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider."  18 U.S.C. § 2710(a)(3).  A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

**A.      Univision NOW, the Neulion Tracking Code, and Base64 Computer Language**

35.     Through its online streaming platform, Univision NOW, Defendant provides prerecorded Spanish-language series and movies.  Individuals can access Univision NOW content through a paid monthly subscription that costs $11.99.[26]

36.     VPPA applies to "video tape service providers," defined as "any person engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

37.     Because Defendant owns and operates an online streaming service where subscribers can watch online video content, Defendant is essentially delivering or renting access to its library of "audio visual materials"[27] to its subscribers.  Defendant is therefore engaged in the

---

[26] UNIVISION NOW, *Frequently Asked Questions*, https://www.univisionnow.com/faq.

[27] Courts have held that "audio visual materials" is a broad category that encompasses online videos.  *See In re Hulu Privacy Litigation*, No. C 11-03764 LB, 2012 WL 3282960, at *5 (N.D. Cal. Aug. 10, 2012) (holding that whether something is considered "audio visual materials"

business of rental or delivery of audio visual materials via its online streaming platform, Univision NOW, and qualifies as a video tape service providers under 18 U.S.C. § 2710(a)(4).

38.    Defendant has embedded the Endeavor Streaming code into its Website and App. Therefore, when Univision NOW subscribers utilize the service via either the Website or App, Defendant discloses users' PII to Endeavor Streaming without users' consent.

39.    Endeavor Streaming provides a content delivery network platform[28] and "market-differentiating direct-to-consumer business services"[29] to clients in the streaming industry. Endeavor Streaming's business services include "audience development" services which involve "digital marketers and analysts [to] uncover critical user behavior patterns, harness proprietary predictive insights, and optimize multi-channel OTT marketing tactics to help [clients] make informed data-driven decisions."[30]

40.    As one of Endeavor Streaming's clients, Ultimate Fight Championship ("UFC"), stated, "Endeavor Streaming's platform is what we rely on to reach our fans throughout the world. They provide us with end-to-end tooling that not only enables us to monetize our content, but also identifies new fans, reduces churn, and helps us understand our fans globally."[31]

41.    In other words, Endeavor Streaming is a marketing and advertising retargeting tool that its clients, such as Defendant, utilize to further their pecuniary interests.

42.    Endeavor Streaming's Neulion Tracking Code is identified by its API signature.  An API is a "mechanism[] that enable[s] two software components to communicate with each other using a set of definitions and protocols.  For example, the weather bureau's software system contains daily weather data.  The weather app on your phone 'talks' to this system via APIs and

---

depends on it being video content and not about how it is delivered, whether in person in a physical iteration, or online)). !

[28] ENDEAVOR STREAMING, *Platform*, https://www.endeavorstreaming.com/platform/.

[29] ENDEAVOR STREAMING, Services, https://www.endeavorstreaming.com/services/.

[30] *Id.*

[31] *Id.*

shows you daily weather updates on your phone."³²  Put differently, an API "acts an intermediary layer that processes data transfer between systems, letting companies open their application data and functionality to external third-party developers [and] business partners[.]"³³

43.     On each page on the Website and App where Univision NOW provides video content for subscribers to watch, Defendant has imbedded the Neulion Tracking Code.  This code tracks a user's personally identifiable information including the Spanish name of the video they are watching and users' email address in Base64.

44.     For example, Figure 3 shows that Defendant shared the title of a series being watched on the Website, *Apuesta Por Un Amor*, and the episode number "captulo-115" (meaning episode 115) with Endeavor Streaming when a user watches a video on the Website.

**Figure 3**



---

³² Amazon Web Service, *What is an API (Application Programming Interface)?*, available https://aws.amazon.com/what-is/api/ (last accessed Dec. 19, 2023).

³³ IBM, *What is an API?*, available https://www.ibm.com/topics/api (last accessed Dec. 19, 2023).

45.    Further, Figure 4 and 5 on the following page, show that Defendant generates an identification Token for its users and shares those with Endeavor Streaming.  The Token is delivered in Base64 language.  Base64 is a computer language known as "Hacker Pig Latin."[34] This computer language is designed to carry and easily transfer data between sources by compressing the data into a simple, long string of plain text.

**Figure 4**



**Figure 5**

46.    Defendant discloses the same information to Endeavor Streaming when a consumer uses Univision NOW on the App.  As seen in Figure 6 below, when a user utilizes the Univision NOW app, Defendant discloses users' information via the Neulion Tracking Code.  When one clicks on the GET and POST requests from the Neulion Tracking Code, one can see the screenshots pictured in Figures 6-8 below.

---

[34] DARK READING, Daniel Smallwood, *Hacker Pig Latin: A Base64 Primer for Security Analysts* (Jan. 21, 2021), available https://www.darkreading.com/cybersecurity-analytics/hacker-pig-latin-a-base64-primer-for-security-analysts (last accessed Dec. 19, 2023).

1

2

**Figure 6**

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17

18

19

20

21

22

23

24

25

26

27

28

47.    For example, Figure 7 below shows that Defendant shared the Spanish title of a series being watched on the App, *Amor Prohibido*, and the episode number "captulo-68" (meaning episode 68) with Endeavor Streaming when a user watches a video on the App.

**Figure 7**



48.    Further, Figure 8 on the following page, shows that Defendant also generates an identification Token for its users via the App and shares those with Endeavor Streaming.  The Token on the App also delivers a user's email address in Base64.

1

**Figure 8**



49.     Unfortunately for the privacy rights of Univision NOW consumers, by publishing the identification Token in Base64 instead of encrypting this information, Defendant makes consumer's email addresses readily translatable into English.  The Base64 language is as easily translatable as Spanish, Serbian, or Swahili.  And just as any ordinary person can cut-and-paste Russian text into Google Translate to figure out what it means in English, any ordinary person can cut and paste Base64 text into any one of a myriad of Base64 decoding websites and figure out what the Base64 text means.  Therefore, even though Defendant shares Plaintiffs and Class Members' email addresses with Endeavor Streaming in Base64, the email addresses are personally *identifiable* information because the email addresses are easily translated into English and can be used to identify a subscriber.

50.     For example, Figure 9 shows the identification Token published in Base64 from Figure 4 and 5 above, inserted in a publicly available Base64 decoding website, https://www.base64decode.org/, revealing user's personally identifiable information, collected and existing in the string:

1

**Figure 9**



51.     Further, Figure 10 shows the identification Token published in Base64 from Figure 8 above, inserted in the same publicly available Base64 decoding website, https://www.base64decode.org/, revealing user's personally identifiable information, collected and existing in the string:

**Figure 10**



52.     In seconds, a regular person can translate Base64 text and sift out the user's

personally identifiable information, clearly indicating their email address.

53.     In fact, because Base64 encoding is limited to 64 available characters to use in its

generated data strings,[35] "decoding it is trivial.  Simple, free Base64 encode/decode tools are easy

to find online."[36]

**D.     The Base64 Computer Language Is Distinctive and Easily Recognizable.**

54.     Like many other languages' distinctive sounds and symbols, Base64 has a

distinctive alphabet and structure.  Whereas other computer languages frequently use special

---

[35] Akshay Khot, *Base64 Encoding, Explained* (Oct. 23, 2023), available
https://www.writesoftwarewell.com/base64-encoding-explained/ (last accessed Dec. 19, 2023).

[36] Daniel Smallwood, *Hacker Pig Latin: A Base64 Primer for Security Analysts* (Jan. 21, 2021),
available https://www.darkreading.com/cybersecurity-analytics/hacker-pig-latin-a-base64-primer-
for-security-analysts (last accessed Dec. 19, 2023).

characters, the Base64 alphabet is limited from A-Z, a-z, 0-9, +, and /.[37]  This is a by-product of its alphabet being used to encode 6-bit strings of binary data (like "011011") into one letter in its 64-character alphabet.[38][39]  Moreover, any text in Base64 is always encoded in groups of four characters, and Base64 will use the "=" symbol for the first and only time at the very end of a string to ensure the string ends in a multiple of four.[40]

55.    Moreover, any ordinary person can input Base64 text into one of several generative AI chatbots like ChatGPT, and the AI will instantly recognize that the text is Base64.  ChatGPT can then translate the text for the person.  *See* Figures 11-13.

**Figure 11**



[37] B64ENCODE, *Base 64 Characters: A Comprehensive Guide with Tables, Regular Expressions, and More*, https://b64encode.com/blog/base64-characters/ (last accessed December 26, 2023).

[38] MEDIUM, Chris Morrow, *An Introduction to Base64 Encoding*, https://levelup.gitconnected.com/an-introduction-to-base64-encoding-716cdccc58ce (last accessed Dec. 26, 2023).

[39] In other words, because 2 to the power of 6 is 64, a 64-character alphabet like Base64 can encode 6-bit binary data.

[40] B64ENCODE, *Base 64 Characters: A Comprehensive Guide with Tables, Regular Expressions, and More*, https://b64encode.com/blog/base64-characters/ (last accessed December 26, 2023).

1

**Figure 12**

2

The text you provided appears to be a JSON Web Token (JWT). JWTs are used for
securely transmitting information between parties in a compact and self-contained
manner. They typically consist of three parts separated by dots:

1. Header: eyJhbGciOiJIUzI1NiIsInR5cCI6IkpXVCJ9
2. Payload:
   eyJpYXQiOjE3MDM4NzU2NzYsImV4cCI6MTcwMzg4Mjg3Niwic3ViIjoiaWRpYXPAYn
   Vyc29yLmNvbSIsImxpZ2l6IjM1OTUzMDMiLCJhdWQiOiJ1bmI2aXNpcb25ub3ib3ciLCJqdG
   kiOiI5ZDM1NTQwNDY2YzIzZGU5ZjY5NmM5YWI3ZjAwMDAwMSIsImIzcyI6InVuaXZp
   c2lvbm5vZHYJ9
3. Signature: zOMIEhwtdtgxTkMdJ2jMl92xY3InDAQA4gAvroI67tU

JWTs are often used for authentication and authorization purposes. The header
typically specifies the algorithm used to sign the token, and the payload contains
claims or information about the user. The signature is used to verify the authenticity of
the token.

As for the encoding scheme, JWTs are typically encoded using  Base64Url encoding
which is a variant of Base64 encoding with some modifications to make it URL-safe.
The parts of the JWT (header, payload, and signature) are base64url-encoded. You can
decode these parts if needed to access the information within the token.

If you have specific questions or need to perform any actions with this JWT, please let
me know, and I'll be happy to assist further.

You

Message ChatGPT...

ChatGPT can make mistakes. Consider checking important information.

1

**Figure 13**

2



3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    56.    As applied here, the fact that Plaintiffs' email addresses were disclosed in the

21    commonly used Base64 language as opposed to the English language is immaterial under the

22    VPPA.  Unlike many other countries, the United States is a melting pot with no official language.

23    It makes no difference whether personally identifiable information is disclosed in one language as

24    opposed to another.

25         **E.    Plaintiff Ezequiel Palomino's Experience**

26    57.    Around 3 years ago, Plaintiff Ezequiel Palomino created a Univision NOW account

27    using his Yahoo email account which bore his real-life name and began paying for a subscription.

28

58.     Since creating the account, Plaintiff Palomino frequently visited Univision NOW to watch various movies and series for entertainment.

59.     When Plaintiff Palomino watched Defendant's videos through his Univision NOW account, Defendant disclosed his event data, which recorded and disclosed the video's URL, video title in Spanish, as well as Plaintiff's email address in Base 64 to Endeavor Streaming.

60.     By disclosing his event data and identifiers, Defendant disclosed Plaintiff's personally identifiable information to a third party, Endeavor Streaming.

61.     Plaintiff discovered that Defendant surreptitiously collected and transmitted his personally identifiable information in March 2024.

**F.     Plaintiff Dinorath Villalobos' Experience**

62.     In March of 2020, Plaintiff Dinorath Villalobos created a Univision NOW account using her Yahoo email account which bore her real-life name and began paying for a subscription.

63.     Since creating the account, Plaintiff Villalobos frequently visited Univision NOW to watch various movies and series for entertainment.

64.     When Plaintiff Villalobos watched Defendant's videos through her Univision NOW account, Defendant disclosed her event data, which recorded and disclosed the video's URL, the video title in Spanish, as well as Plaintiff's email address in Base64 to Endeavor Streaming.

65.     By disclosing her event data and identifiers, Defendant disclosed Plaintiff's personally identifiable information to a third party, Endeavor Streaming.

66.     Plaintiff discovered that Defendant surreptitiously collected and transmitted his personally identifiable information in March 2024.

## CLASS ALLEGATIONS

67.     **Class Definition:**  Plaintiffs seek to represent a nationwide class defined as (the "Class):

> All similarly situated individuals in the United States who have a Univision NOW account and viewed Univision NOW videos via the Website, univisionnow.com, and/or the mobile App, Univision NOW.

68.     **California Subclass:** Plaintiffs also seek to represent a California Subclass defined as (the "Subclass"):

All similarly situated individuals in California who have a Univision NOW account and viewed Univision NOW videos via the Website, univisionnow.com, and/ or the mobile App, Univision NOW.

69.    Subject to additional information obtained through further investigation and discovery, the above-described Class and Subclass may be modified or narrowed as appropriate.

70.    **Numerosity:**  Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of Univision NOW consumers who are Class and Subclass members and who have been damaged by Defendant's unlawful disclosures.

71.    **Commonality and Predominance:**  There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class and Subclass that predominate over questions that may affect individual members of the Class and Subclass include:

(a)    whether Defendant is a Video Tape Service Provider within the meaning of the VPPA.

(b)    whether Defendant collected Plaintiffs' and the Class's PII;

(c)    whether Defendant unlawfully disclosed and continues to disclose its consumers' PII in violation of VPPA;

(d)    whether Defendant's disclosures were committed knowingly; and

(e)    whether Defendant's conduct violates California Civil Code § 1799.3;

(f)    whether Defendant's conduct under California Civil Code § 1799.3 was willful;

(g)    whether Defendant disclosed Plaintiffs', the Class's, and Subclass's PII without consent.

72.    **Typicality:**  Plaintiffs' claims are typical of the claims of the Class and Subclass because Plaintiffs, like members of the Class and Subclass, were Univision NOW consumers who consumed Univision NOW videos either through the Website or App.  Plaintiffs were consumers under the VPPA who, with Defendant's knowledge, had their PII tracked and disclosed without their consent.

73.    **Adequacy:**  Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this class action.  Neither Plaintiffs, nor their counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Class and Subclass.  Plaintiffs are able to fairly and adequately represent the interests of the Class and Subclass.  Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and Subclass and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of this Court to amend this complaint to include additional Class Representatives to represent the Class or Subclass or additional claims as may be appropriate.

74.    **Superiority:**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class and Subclass is impracticable.  Even if every member of the classes could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the classes.  Plaintiffs anticipate no difficulty in the management of this action as a class action.  Class-wide relief is essential to compel compliance with the VPPA.

## CAUSES OF ACTION

### COUNT I
### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710, *et seq.*
### (On Behalf of the Class and Subclass)

75.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

76.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

77.     Defendant is a "video tape service provider" because it creates, hosts, and delivers thousands of videos on its website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  In particular, Defendant provides a library of audio visual materials to consumers for a monthly fee, and inaccessible to users without Univision NOW accounts.

78.     Plaintiffs and members of the Class are "consumers" because they have subscriptions of the Univision NOW streaming service and pay a monthly fee to watch videos.  18 U.S.C. § 2710(a)(1).

79.     Defendant disclosed to a third party, Endeavor Streaming, Plaintiffs and the Class and Subclass members' personally identifiable information.  Defendant utilized Endeavor Streaming's Neulion Tracking Code to compel Plaintiffs' web browsers and internet-connected smartphone applications to transfer their personally identifying information, like their email, along with their event data, like the titles of the videos they watched.

80.     Plaintiffs and the Class and Subclass members viewed and accessed the videos using their Univision NOW accounts via the Website, univisionnow.com and/or the mobile App Univision NOW.

81.     Defendant knowingly disclosed Plaintiffs' PII because it used the data and installed Endeavor Streaming's Neulion Tracking Code in the background of its webpages and mobile app—which hosted the videos—for targeted advertising and remarketing.

82.     Plaintiffs and the Class and Subclass members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

83.     Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA.  Specifically, Defendant's disclosures to Endeavor Streaming were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership."  18 U.S.C. § 2710(a)(2).  Instead, Defendant's disclosures were made for advertising

1  purpose to further monetize its platform.  This purpose falls outside the ordinary course of business

2  exception the VPPA affords.

3      A.     On behalf of himself, the Class, and Subclass, Plaintiffs seek: (i) declaratory relief;

4  (ii) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff, the Class,

5  and Subclass by requiring Defendant comply with the VPPA's requirement for protecting a

6  consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18

7  U.S.C. § 2710(c); and (iv) reasonable attorneys' fee and costs and other litigation expenses.

8                          <u>COUNT II</u>
                  **Violation of California Civil Code § 1799.3**
9                     **(On Behalf of the Subclass)**

10     84.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set

11  forth herein.

12     85.    Plaintiffs bring this claim individually and on behalf of the members of the

13  proposed Subclass against Defendant.

14     86.    Cal. Civ. Code § 1799.3(a) prohibits a "person providing video recording sales …

15  services" from disclosing "any personal information or the contents of any record, including sales

16  or rental information, which is prepared or maintained by that person, to any person, other than the

17  individual who is the subject of the record, without the written consent of that individual."

18     87.    Defendant is a "person providing video recording sales … services" because it sells

19  access to it online platform via its Website, univisionnow.com, and App, Univision NOW, which

20  creates, hosts, and delivers thousands of videos on its website.  Alternatively, Defendant is a

21  "person providing video recording … rental services" because it rents to consumers access to its

22  video records every month in exchange for a monthly subscription fee.

23     88.    Defendant disclosed to a third party, Endeavor Streaming, Plaintiffs' and the

24  Proposed Subclass Members' personal information.  Defendant utilized Endeavor Streaming's

25  Neulion Tracking Code to compel Plaintiffs' web browser and internet-connected smartphone

26  applications to transfer Plaintiffs' personal information, like their emails, as well as Plaintiffs and

27  Subclass Members' event data, like the title of the videos they viewed.

28     89.    Plaintiffs and the Class and Subclass members viewed and accessed the videos

1    using their Univision NOW accounts via the Website, univisionnow.com and/or the mobile App.

2            90.    Defendant knowingly disclosed Plaintiffs' PII because it used the data and installed

3    Endeavor Streaming's Neulion Tracking Code in the background of its webpages and mobile

4    application—which hosted the videos—for targeted advertising and remarketing.

5            91.    Plaintiffs and the Subclass Members did not provide Defendant with any form of

6    consent—either written or otherwise—to disclose their PII to third parties.

7            92.    On behalf of themselves and the Subclass, Plaintiffs seek: (i) declaratory relief; (ii)

8    injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Subclass by

9    requiring Defendant comply with Cal. Civ. Code § 1799.3's requirements for protecting a

10   consumer's PII; (iii) statutory damages of $500 for each violation of this law pursuant to Cal. Civ.

11   Code § 1799.3(c), and (iv) reasonable attorneys' fees and costs and other litigation expenses.

12                              **PRAYER FOR RELIEF**

13           WHEREFORE, Plaintiffs seek a judgment against Defendant, individually and on behalf of

14   all others similarly situated, as follows:

15   (a)    For an order certifying the Class and the Subclass under Rule 23 of the Federal
16          Rules of Civil Procedure, naming Plaintiffs as representatives of the Class and
            Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Class
17          and the Subclass;

18   (b)    For an order declaring that Defendant's conduct violates the statutes referenced
19          herein;

20   (c)    For an order finding in favor of Plaintiffs, the Class, and Subclass on all counts
            asserted herein;
21
     (d)    An award of statutory damages to the extent available;
22
     (e)    For punitive damages, as warranted, in an amount to be determined at trial;
23
     (f)    For prejudgment interest on all amounts awarded;
24
     (g)    For injunctive relief as pleaded or as the Court may deem proper; and
25
26   (h)    For an order awarding Plaintiffs, the Class, and Subclass their reasonable attorneys'
            fees and expenses and costs of suit.
27

28

1

## JURY TRIAL DEMANDED

2          Plaintiffs demand a trial by jury on all claims so triable.

3

4

Dated:  December 10, 2024              **BURSOR & FISHER, P.A**.

5

                                       By:  ___/s/ Ines Diaz Villafana_____
6                                           Ines Diaz Villafana

7                                      Neal J. Deckant (State Bar No. 322946)
                                       Stefan Bogdanovich (State Bar No. 324525)
8                                      Ines Diaz Villafana (State Bar No. 354099)
                                       1990 North California Blvd., 9th Floor
9                                      Walnut Creek, CA 94596
                                       Telephone: (925) 300-4455
10                                     Facsimile: (925) 407-2700
                                       E-mail: ndeckant@bursor.com
11                                              sbogdanovich@bursor.com
                                                idiaz@bursor.com
12
                                       *Attorneys for Plaintiffs*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28