Alexandria V. Ruiz (SBN 313286)
aruiz@sidley.com
SIDLEY AUSTIN LLP
350 S. Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Dianne O. Fischer (*admitted Pro Hac Vice*)
deedee.fischer@sidley.com
Ian Ross (*admitted Pro Hac Vice*)
iross@sidley.com
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Telephone: +1 305 391 5100
Facsimile: +1 305 391 5101

*Attorneys for Defendant*
D2C, LLC, d.b.a. UNIVISION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

DINORATH VILLALOBOS and EZEQUIEL PALOMINO, individual and on behalf of all others similarly situated,

Plaintiffs,

vs.

D2C, LLC, d.b.a. UNIVISION,

Defendant.

Case No. 5:24-CV-01517-EKL
Assigned to Hon. Eumi K. Lee

**DEFENDANT D2C, LLC's (D.B.A. UNIVISION NOW) NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

| | |
|---|---|
| Hearing Time: | 10:30 a.m. |
| Hearing Date: | April 16, 2025 |
| Place: | Courtroom 7 – 4th Floor |
| Action Filed: | March 12, 2024 |
| Trial Date: | Not set |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 16, 2025 at 10:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7, 4th Floor of San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant D2C, LLC, d.b.a. UNIVISION ("Univision NOW"), shall and hereby does move to dismiss Plaintiffs Dinorath Villalobos and Ezequiel Palomino's ("Plaintiffs") Second Amended Class Action Complaint (the "SAC") pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and such other matters as the Court may consider.

## STATEMENT OF ISSUES PRESENTED

1. Whether the SAC should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction;

2. Whether Plaintiffs' Video Privacy Protection Act ("VPPA") claims relating to the Website should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs only used Univision NOW's mobile application and therefore lack standing to sue for VPPA violations relating to the Website;

3. Whether the SAC should be dismissed under Rule 12(b)(6) because any disclosure by Univision NOW to third-party service provider Endeavor Streaming is incident to Univision NOW's ordinary course of business, and therefore subject to the VPPA's ordinary course of business exception, 18 U.S.C. § 2710(b)(2)(E);

4. Whether the SAC should be dismissed under Rule 12(b)(6) because an ordinary person could not identify Plaintiffs or other Univision NOW subscribers from the disclosed data, *see Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017);

5. Whether the SAC should be dismissed under Rule 12(b)(6) because Plaintiffs' claims are barred under the applicable statute of limitations; and

6. Whether the SAC should be dismissed under Rule 12(b)(6) as to Plaintiffs' claims under California Civil Code § 1799.3 on the same grounds as those relating to the VPPA.

///

///

# TABLE OF CONTENTS

Page

INTRODUCTION ....... 2

BACKGROUND ....... 3

I. THE VPPA ....... 3

II. CALIFORNIA CIVIL CODE § 1799.3 ....... 4

III. PLAINTIFFS' ALLEGATIONS AND PURPORTED CAUSES OF ACTION ....... 4

ARGUMENT ....... 8

I. THE COURT LACKS PERSONAL JURISDICTION OVER UNIVISION NOW. ....... 8

A. There Is No General Jurisdiction Over Univision NOW in California. ....... 8

B. There Is No Specific Jurisdiction Over Univision NOW in California. ....... 9

1. There is No Purposeful Direction Toward California. ....... 9

2. Plaintiffs' Claims Do Not Arise Out Of Or Relate To Univision NOW's Forum-Related Activities. ....... 14

3. Subjecting Univision NOW to Jurisdiction in California Would Be Unreasonable. ....... 16

II. PLAINTIFFS LACK STANDING TO BRING VPPA CLAIMS PREMISED ON DISCLOSURES VIA UNIVISION NOW'S WEBSITE. ....... 17

III. PLAINTIFFS FAIL TO STATE A VIOLATION OF THE VPPA. ....... 19

A. Plaintiffs' Claims Are Precluded by the VPPA's "Ordinary Course of Business" Exception. ....... 19

B. Alleged Disclosures Encoded in Base64 Do Not Constitute PII Because An Ordinary Person Cannot Identify Univision NOW Users From Such Data. ....... 22

C. Plaintiffs' Claims are Time-Barred by the Two-Year Limitations Period. ....... 24

IV. PLAINTIFFS FAIL TO STATE A VIOLATION OF CIVIL CODE § 1799.3. ....... 25

CONCLUSION ....... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ........ *passim*

*Ayer v. White*,
No. 21-cv-08773, 2022 WL 657502 (C.D. Cal. Mar. 4, 2022) ........ 15

*Ayla, LLC v. Alya Skin Pty. Ltd*.,
11 F.4th 972 (9th Cir. 2021) ........ 11, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 20

*Brand v. Menlove Dodge*,
796 F.2d 1070 (9th Cir. 1986) ........ 9

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 13

*Caruth v. Int'l Psychoanalytical Ass'n*,
59 F.3d 126 (9th Cir. 1995) ........ 17

*Chien v. Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022) ........ 12

*Chorost v. Rotor Am. Inc.*,
No. 21-CV-00235, 2022 WL 17361299 (D. Ariz. Aug. 8, 2022) ........ 15

*Crouch v. Ruby Corp.*,
639 F. Supp. 3d 1065 (S.D. Cal. 2022) ........ 13

*Cybersell, Inc. v. Cybersell, Inc*.,
130 F.3d 414 (9th Cir. 1997) ........ 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 8

*DFSB Kollective Co. v. Bourne*,
897 F. Supp. 2d 871 (N.D. Cal. 2012) ........ 11, 14

*Doe One v. CVS Pharmacy, Inc.*,
Case No. 18-cv-01031, 2024 WL 1707229 (N.D. Cal. Apr. 18, 2024) ........ 18

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) ........ 21

*Dysthe v. Basic Research LLC*,
No. 09-8013, 2011 WL 5868307 (C.D. Cal. Jun. 13, 2011) ........ 18

*Egan v. X-Mode Social, Inc.*,
No. 23-cv-11651, 2024 WL 2701967 (D. Mass. May 24, 2024) ........ 12, 15

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 4, 22

*Fan v. NBA Props., Inc.*,
No. 23-cv-05063, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ........ 25

*Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*,
592 U.S. 351 (2021) ........ 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ........ 8

*Granfield v. NVIDIA Corp.*,
No. C 11–05403, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ........ 18

*Graves v. Downey Sav. and Loan Ass'n*,
No. C 09-02666, 2009 WL 3335335 (N.D. Cal. Oct. 14, 2009) ........ 25

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ........ 9, 10, 13

*Herskowitz v. Apple Inc.*,
940 F. Supp. 2d 1131 (N.D. Cal. 2013) ........ 19

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023) ........ 19

*Lewis v. Casey*,
518 U.S. 343 (1996) ........ 18

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ........ 9

*Lorentzen v. Kroger Co.*,
532 F. Supp. 3d 901 (C.D. Cal. 2021) ........ 18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 18

*Martin v. Outdoor Network LLC*,
No. 23-cv-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ........ 16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........ 8, 10

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ....................18

*McDonald v. Sun Oil Co.*,
548 F.3d 774 (9th Cir. 2008) ....................24

*Mlejnecky v. Olympus Imaging Am. Inc.*,
No. 2:10-CV-02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ....................18

*Moledina v. Marriott, Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) ....................14

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ....................3, 4, 25

*Neumann v. Red Rock 4-Wheelers, Inc.*,
No. 19-cv-02160, 2022 WL 3370170 (D. Nev. Aug. 15, 2022)....................15

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)....................4, 22, 23

*Rancourt v. Meredith Corp.*,
No. 22-cv-10696, 2024 WL 381344 (D. Mass. Feb. 1, 2024) ....................12, 20, 22

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ....................13, 14

*Ratha v. Phatthana Seafood Co*.,
35 F.4th 1159 (9th Cir. 2022) ....................15

*Rodriguez v. Sony Comput. Entm't Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ....................4, 20

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
60 F.4th 481 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 65 F.4th 1012 (9th Cir. 2023) ....................3, 9, 16

*Schwarzenegger v. Fred Martin Motor Co*.,
374 F.3d 797 (9th Cir. 2004) ....................9, 13, 14

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) ....................25

*Shulman v. Kaplan*,
58 F.4th 404 (9th Cir. 2023) ....................18

*Sinatra v. Nat'l Enquirer, Inc*.,
854 F.2d 1191 (9th Cir. 1988) ....................16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 18

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g by* 275 F.3d 1187 (9th Cir. 2001) ........ 21

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ........ 19, 20, 21, 22

*Timboe v. Clark*,
No. 20-cv-08719, 2022 WL 991721 (N.D. Cal. Mar. 31, 2022) ........ 24

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 12, 15

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006) ........ 24

*Williams v. California*,
764 F.3d 1002 (9th Cir. 2014) ........ 20

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ........ 22, 23

**Statutes**

18 U.S.C. § 2710(a) ........ 4, 21

18 U.S.C. § 2710(b) ........ 3, 4, 19

18 U.S.C. § 2710(c)(3) ........ 13, 24

Cal. Civ. Proc. Code § 1799.3 ........ 2, 3, 4, 25

Fed. R. Civ. P. 4(k)(1)(A) ........ 8

Fed. R. Civ. P. 12(b)(1) ........ 19

**Other Authorities**

S. Rep. No. 100–599 (1988), reprinted in 1988 U.S.C.C.A.N 4342 ........ 21

Sen. Judiciary Comm. Rep. on S.B. No. 2248, 1987-88 Regular Session (1988) ........ 25

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

In their Second Amended Complaint ("SAC")—their third attempt at satisfying federal pleading standards—Plaintiffs fail to correct the defects that led the Court to dismiss their First Amended Complaint ("FAC") for lack of personal jurisdiction over online streaming service Defendant D2C, LLC ("Univision NOW"). Instead, Plaintiffs double-down on a theory that the Court has already criticized as reductionist and stereotyping, which relies on allegations that Univision NOW's Spanish-language and Mexican-made programming should be assumed to target California, and adds new allegations that, at most, suggest that Univision NOW collects geolocation information from its visitors, irrespective of whether they reside in California. These allegations do nothing to address the Court's prior finding that Univision NOW does not direct its activities at California residents, nor do they show that Plaintiffs' specific claims arise out of or relate to those activities. Accordingly, Plaintiffs again fail to establish a basis for personal jurisdiction over Univision NOW.

Nor does the SAC address Univision NOW's other arguments from the Motion to Dismiss the FAC, which the Court did not reach given Plaintiff's failure to plead personal jurisdiction. Instead, the SAC merely repeats the FAC's same faulty allegations claiming that Univision NOW violated the Video Privacy Protection Act (the "VPPA" or the "Act") and California Civil Code § 1799.3 because its website (the "Website") and mobile application (the "App") allegedly shared subscribers' email addresses and titles of the videos watched with its third-party web host and customer service provider, Endeavor Streaming ("Endeavor"). According to Plaintiffs, Univision NOW installed a piece of code (which Plaintiffs refer to as "Neulion Tracking Code") on its Website and App which disclosed to Endeavor subscribers' video viewing history and email addresses in an "identification Token"[1] encoded in "Base64," an encoding scheme Plaintiffs sometimes refer to as "Hacker Pig Latin." But Plaintiffs' own allegations make clear that Endeavor was not some random "third party" operating separately from Univision NOW; Endeavor was Univision NOW's webhost and customer service provider used in the "ordinary course of business," and thus expressly carved out from the VPPA. *See*

[1] Plaintiffs refer to an "identification Token" numerous times but fail to explain what it is. *See, e.g.*, SAC ¶¶ 45, 48-51.

18 U.S.C. § 2710(b)(2). Moreover, Plaintiffs' allegations still fail to show that either of them ever even used Univision NOW's Website.

Accordingly, and for the reasons detailed below, the SAC should be dismissed with prejudice on the following grounds:

***First***, Plaintiffs still fail to demonstrate a basis for the Court to assert personal jurisdiction over Univision NOW because they fail to show that Univision NOW purposefully directed its activities towards California residents, or that Plaintiffs' claims arise out of or relate to Univision NOW's purported acts in California.

***Second***, Plaintiffs lack standing to sue for VPPA violations allegedly associated with the Website because both Plaintiffs admit they only accessed Univision NOW through the App.

***Third***, any disclosure of Univision NOW subscriber information to Endeavor falls within VPPA's "ordinary course of business" exception. 18 U.S.C. § 2710(b)(2).

***Fourth***, Plaintiffs fail to adequately allege that the Neulion Tracking Code disclosed personally identifiable information to Endeavor because an ordinary person could not readily identify a Univision NOW subscriber from data encoded in Base 64, as required under the VPPA.

***Fifth***, Plaintiffs' VPPA claims are time-barred under the applicable two-year statute of limitations. According to Plaintiffs, their claims arose when they began watching content on Univision NOW, which was "around three years ago" for Palomino and in March 2020 for Villalobos. SAC ¶¶ 57-58, 62-63. Plaintiffs fail to allege sufficient facts to invoke any tolling doctrines to revive their claims.

***Finally***, because California Civil Code § 1799.3 closely tracks the VPPA, Plaintiffs' second claim fails for all the same reasons that their VPPA claims fail.

The Court should thus dismiss the SAC in its entirety, with prejudice.

## BACKGROUND

### I. THE VPPA

Congress enacted the VPPA more than 35 years ago in response to a newspaper's publication of then-Supreme Court nominee Judge Robert Bork's video rental history. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citing S. Rep. 100-599, at 5 (1988), *reprinted* in 1988

U.S.C.C.A.N. 4342-1). The VPPA generally prohibits "video tape service providers" from knowingly disclosing, to third parties, "personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b). A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1). And "personally identifiable information" ("PII") is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3). The Ninth Circuit has held "that 'personally identifiable information' means only information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (citation, emphasis omitted); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 283 (3d Cir. 2016).

The VPPA contains an exception that permits disclosures of PII made "incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E). The Ninth Circuit has held that this exception applies to "intra-corporate disclosures of consumers' personal information" for the purpose of sustaining business operations, and other courts have similarly applied it to disclosures to a defendant's service providers as part of the provider's normal services. *See Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1054-55 (9th Cir. 2015); *see also* discussion *infra* Section III.A.

## II. CALIFORNIA CIVIL CODE § 1799.3

California Civil Code § 1799.3 also prohibits disclosure of video recording sale or rental services records where that disclosure includes "personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person." Cal. Civ. Code § 1799.3(a). To violate this statute, the disclosure must be willful. *Mollett*, 795 F.3d at 1067; Cal. Civ. Code § 1799.3(c).

## III. PLAINTIFFS' ALLEGATIONS AND PURPORTED CAUSES OF ACTION

Univision NOW is an online streaming service that offers programming through a paid monthly subscription. SAC ¶ 35. Endeavor provides a content delivery network platform and "market-differentiating direct-to-consumer business services" to clients in the streaming industry. *Id.* ¶ 39. Lifting language from Endeavor's website, Plaintiffs note that among the suite of services

Endeavor offers is "audience development" services using its "digital marketers and analysis [to] uncover critical user behavior patterns, harness proprietary predictive insights, and optimize multi-channel OTT marketing tactics to help [clients] make informed data-driven decisions." *Id.* ¶ 39 and nn. 29-30. Plaintiffs allege Univision NOW "can" use Endeavor's "audience development" services, but do not allege that Univision NOW actually uses such services.

Plaintiffs have added a series of allegations concerning Univision NOW's "geo-location" of its subscribers, and its use of such geo-location data to tailor advertisements and content. *See* SAC ¶¶ 12-17. Plaintiffs do not, and cannot, allege that ***only*** California subscribers are geo-located, or that as a result of such geo-location, ***only*** California subscribers had their PII disclosed to Endeavor. Plaintiffs also do not allege that their claims have anything to do with, let alone relate to or arise out of, the purported geo-location of their data. In fact, the most that Plaintiffs allege is that, as a result of such geo-location data, California subscribers are able to view Los Angeles and San Francisco news from third-party Univision Network stations—in the same way that New York, Houston, Dallas, Chicago, Miami and Atlanta subscribers are able to view their local news on Univision Network stations. *Id.* ¶ 14.

Plaintiffs continue to allege that Univision NOW embeds the Neulion Tracking Code on its Website and App to track users' email addresses and the titles of content watched, *id.* ¶ 43, and that Univision NOW knowingly disclosed such information to Endeavor in Base64. *Id.* Plaintiffs rely heavily on their mischaracterization of Base64 as a "language," claiming it is no more difficult to "translate" than "Spanish, Serbian, or Swahili." *Id.* ¶ 49. However, identifying a subscriber from information encoded in Base64 does not just require translation of information from one language into another; the numerous articles Plaintiffs cite in their SAC make clear that Base64 is an encoding scheme used to hide the contents of a communication, and must be decoded for the communication to be understood. *See, e.g.*, SAC at 45 n.34 (citing Daniel Smallwood, *Hacker Pig Latin: A Base64 Primer for Security Analysts*, DarkReading (Jan. 21, 2021), https://tinyurl.com/45caytu5 ("The Base64 encoding scheme is often used to hide the plaintext elements in the early stages of an attack that can't be concealed under the veil of encryption."); *id.* at 53 n.35 (Akshay Khot, *Base 64 Encoding, Explained*, Write Software, Well (Oct. 23, 2023), https://tinyurl.com/mry2u3bj ("Base64

encoding takes binary data and converts it into text, specifically ASCII text. The resulting text contains only letters from A-Z, a-z, numbers from 0-9, and the symbols + and /. As there are 26 letters in the alphabet, we have 26 + 26 + 10 + 2 characters. Hence this encoding is named Base64. These 64 characters are considered "safe," that is, "they cannot be misinterpreted by legacy computers and programs unlike characters such as <, >, \n and many others.")); *id.* at 54 n.38 (Chris Morrow, *An Introduction to Base 64 Encoding*, Level Up Coding (Aug. 8, 2021), https://tinyurl.com/4ndred8d ("If you are in web development, data engineering, or cybersecurity, you might have heard of Base64. If you've seen examples of Base64 text, it looks like gibberish. You might have asked yourself 'What is this?', and more importantly, 'What is this used for?'")).

As evidence of Univision NOW's alleged disclosure to Endeavor, Plaintiffs present Figure 3, which they claim shows disclosure of a title and episode number of a series watched on the Website. SAC at 14, ¶ 44. However, the alleged title is not displayed in Base64, nor is there any non-conclusory allegation that the information contained in Figure 3 was disclosed to Endeavor, which is not mentioned or referenced at all. Moreover, Figure 3 does not appear to contain an email address or any other identifying information, in either Base64 or otherwise, and in fact, it is not clear whose account Figure 3 relates to. *Id.*

Plaintiffs allege that Figures 4 and 5 of the SAC show an "identification Token" allegedly generated by Univision NOW, encoded in Base64, and purportedly shared with Endeavor. The Token is two to three lines long, with what appears to be hundreds of random characters, or "gibberish" as Plaintiffs' authority characterizes it. SAC at 54 n.38 (citing Morrow, *An Introduction to Base 64 Encoding*). Nothing in the Token displays an email address or a video title—in fact, as discussed below, even when Plaintiffs decode these identification tokens, while an email address appears, the video title, which is required under the definition of PII applicable to the VPPA, does not.

Plaintiffs allege that Figure 6 of their SAC, which appears to be a screenshot from an iPhone of an unidentified person, shows what is disclosed to Endeavor when a consumer uses Univision NOW on the App. SAC ¶ 46. However, again, nothing in Figure 6 looks like an email address or a

video title. There is also nothing in Figure 6 that suggests that the information displayed was disclosed to Endeavor, which is not mentioned or referenced at all.

Plaintiffs allege that Figure 7, which appears to be another screenshot from an unidentified iPhone, shows that Univision NOW disclosed the title of a series "being watched on the App." SAC at 17, ¶ 47. However, while there appears to be the title of a series on Univision NOW, the title is not encoded in Base64, there is no email address to associate the video title to a particular subscriber, and there is nothing showing that the information was disclosed to Endeavor. *Id.*

Plaintiffs allege that Figure 8 shows that Univision NOW generates an identification Token in Base64 for App users and shares it with Endeavor. *See* SAC at 17-18, ¶ 48. While there is a section of Figure 6 with the word "token," again it contains only eight lines of random figures, and there is no email address or video title. *Id.* Nothing in Figure 8 shows that the information was shared with Endeavor. Moreover, unlike the other screen shots, the screenshot appears to have been altered, in that the bottom half appears to have been cut off, with no explanation as to why.

As for Figures 9 and 10, SAC at 18-20, ¶¶ 50-51, Plaintiffs allege that they show the decoding of the Base64 identification Tokens shown in Figures 4 and 5, *id.* at 15, ¶ 45, and Figure 8, *id.* at 17-18, ¶ 48, respectively. However, while the decoded identification Tokens from the Website and App appear to contain the email address for Plaintiffs' counsel, neither of the decoded Tokens contains anything that resembles a video title. *Id.* In fact, Plaintiffs' SAC contains no examples of identification Tokens encoded in Base64 that, when decoded, show both an email address and a video title—both of which are required for a claim under the VPPA.

Plaintiffs claim that they created accounts with Univision NOW using their email addresses and have accessed Univision NOW content, solely on the App, over an unspecified period of time. SAC ¶¶ 57-66. Both Plaintiffs claim that as a result of watching Univision NOW programming on the App, their email addresses and video titles were disclosed to Endeavor. *Id.* ¶¶ 59, 64. Plaintiffs claim, without further explanation, that they only discovered in March 2024 that this information was transmitted to Endeavor. *Id.* ¶¶ 61, 66. Neither Plaintiff alleges that they ever watched videos *on the Website*, nor do they allege that the Neulion Tracking Code *on the Website* ever disclosed their email addresses or video titles to Endeavor, in Base64 or otherwise.

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER UNIVISION NOW.

"Exercises of personal jurisdiction" are limited "by due process constraints on the assertion of adjudicatory authority." *Daimler AG v. Bauman*, 571 U.S. 117, 121-22 (2014). Federal courts "follow state law in determining the bounds of their jurisdiction over persons." *Id.* at 125 (citing Fed. R. Civ. P. 4(k)(1)(A)). Thus, federal due process and the law of the forum State set the limits for this Court's exercise of personal jurisdiction—a single inquiry here, since "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id*. at 117. Plaintiffs, as the party seeking to invoke personal jurisdiction, bear the burden of establishing that jurisdiction exists. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Based on the allegations in the SAC, there is neither general nor specific personal jurisdiction over Univision NOW. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (personal jurisdiction over a defendant may be "general" or "specific"). This Court lacks general jurisdiction over Univision NOW because California is not Univision NOW's place of incorporation or principal place of business. And this Court lacks specific jurisdiction over Univision NOW because Univision NOW has not purposefully directed acts toward California that gave rise to Plaintiffs' claims, nor would exercising specific jurisdiction be reasonable under due process principles. The SAC should therefore be dismissed again for lack of personal jurisdiction.

#### A. There Is No General Jurisdiction Over Univision NOW in California.

General jurisdiction exists only where a defendant is "essentially at home." *Goodyear*, 564 U.S. at 919. For "a corporation, the place of incorporation and principal place of business" are the paradigmatic forums. *Daimler AG*, 571 U.S. at 137. Otherwise, to be subject to general jurisdiction, a corporation's contacts must be "so 'continuous and systematic' as to render [them] essentially at home in the forum State," which could only occur in an "exceptional case." *Id.* at 139 & n.19.

Plaintiffs' prior briefing and argument to the Court conceded that there is no basis for general jurisdiction over Univision NOW. Nothing in their amended allegations regarding the purported "California-specific focus" of Univision NOW's video content and Univision NOW's purported use

of geolocation and other data to tailor advertisements changes this analysis. *See, e.g.*, SAC ¶¶ 9-32. Accordingly, Plaintiffs' allegations fall well short of the "exacting standard" required for a court to assert general jurisdiction over an out-of-state party. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases denying general jurisdiction).

**B. There Is No Specific Jurisdiction Over Univision NOW in California.**

"A defendant is subject to specific personal jurisdiction in the forum state if: (1) the defendant performed an act or consummated a transaction by which it purposely directed its activity toward the forum state; (2) the claims arose out of defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 502 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 65 F.4th 1012 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023); *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). "'If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (citation omitted). None of the three requirements are satisfied here.

**1. There is No Purposeful Direction Toward California.**

To satisfy the first requirement that Defendant purposefully directed its alleged action to the forum State, Plaintiff must show that Defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citation omitted). "All three parts of the test must be satisfied." *Id*. at 805. Plaintiffs cannot meet their burden.

**a. No Alleged Act Was "Expressly Aimed" at California.**

The Ninth Circuit has made clear that a "passive" website that simply hosts information "does not qualify as purposeful activity invoking the benefits and protections" of the law of that state. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997). Likewise, even an interactive website that allows a party to watch media or purchase goods is not enough for specific jurisdiction. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023). To demonstrate

"express aiming" in such circumstances, the complaint's allegations must show that an operator of "a website 'with national viewership and scope appeals to, and profits from, an audience in a particular state.'" *AMA Multimedia*, 970 F.3d at 1210 (*quoting Mavrix*, 647 F.3d at 1231). Thus, if the website itself is the "***only*** jurisdiction contact" relevant to a specific jurisdiction analysis, the analysis "turns on whether the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Herbal Brands, Inc.*, 72 F.4th at 1092 (emphasis in original).

In an attempt to overcome a failure of the original Complaint to allege that Univision NOW targeted California to collect subscriber data, Plaintiffs' FAC added conclusory allegations that Univision NOW aimed its contacts to California by operating its platform while (1) "exhibiting an intent to cultivate an audience in California" by airing advertisements on local news programming broadcast by "Univision Network"—not Univision NOW—and (2) providing video with a "California-specific focus" because its videos are in Spanish and some of its programming is purportedly "Mexican-made." FAC ¶¶ 10-11. The Court ruled that the FAC's allegations did not provide a sufficient basis for a finding of personal jurisdiction against Univision NOW.

In the SAC, Plaintiffs have alleged an additional sixteen paragraphs and seventeen footnotes, yet they still fail to address the deficiencies in their jurisdictional allegations. Specifically, Plaintiffs now allege that Univision NOW directed its activities to California by (1) collecting geo-location data via the Website and App to "tailor advertisements and content to increase user engagement," SAC ¶¶ 12-13, (2) streaming live local Univision Network content to users in select cities via the App, *id.* ¶¶ 14, 22-25, and (3) forming part of a corporate family that purportedly "attempts to cultivate an audience in California," *id.* ¶¶ 21, 22.

The core factual allegations—unchanged in the SAC—are that when Plaintiffs "watched Defendant's videos through [their] Univision NOW account[s], Defendant disclosed [their] event data, which recorded and disclosed the video's URL, [and title] as well as Plaintiff[s'] email address in Base64 to Endeavor Streaming." SAC ¶¶ 59, 64. Plaintiffs do not and cannot plausibly allege that Univision NOW specifically targeted California with its efforts to collect subscriber data. On the contrary, Plaintiffs again allege a company and nationwide practice of collecting and disclosing such data, and that California subscribers were only part of this purported practice. SAC ¶¶ 1-4.

Such activity cannot be said to be "expressly aimed" at California. "Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (citation omitted).

Plaintiffs' additional allegations fail to provide a sufficient basis for specific personal jurisdiction over Univision NOW. First, Plaintiffs' renewed argument that Univision NOW's content is California-focused because it is in Spanish is made no less reductionist by Plaintiffs' amendments. *See* SAC ¶ 26. The fact that videos are in Spanish does not make them either directed at California or California-focused. *See AMA Multimedia*, 970 F.3d at 1210 (website did not have a specific focus on California; rather, the website featured content with a global market). The further fact that Univision NOW broadcasts Mexican-made or "Mexican-themed" soap operas is also not evidence that it is specifically targeting California viewers, Mexican or otherwise. *See DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 874, 883 (N.D. Cal. 2012) (plaintiff could not make a prima facie showing of personal jurisdiction in California, "one of the largest markets for Korean music," on the basis of "the subject matter of Defendant's Websites—linking users to other websites where they can download Korean-language songs"). Plaintiffs ask the Court to stretch the limits of plausibility by inferring the viewing preferences of a linguistically and culturally diverse viewing public, but the Court already properly refused to do so.

Plaintiffs' new allegations also incorrectly insist that express aiming can be inferred because Univision NOW "collect[s] user activity and geo-location data from its California subscribers and us[es] that data to 'tailor advertisements and content to increase user engagement." *See* SAC ¶¶ 12-13, 17 (emphasis added). But these allegations do not show *purposeful* direction toward California on the part of Univision NOW. *See AMA Multimedia,* 970 F.3d at 1210. In *AMA Multimedia*, the Ninth Circuit considered in part whether the defendant, a citizen and resident of Poland and an owner of the adult video website "ePorner," expressly aimed ePorner at the United States through ePorner's use of "geotargeted advertisements and the purported corresponding U.S. revenue." 970 F.3d at 1210. The Court found that this tailoring "[did] not establish that [Defendant] *expressly aimed* ePorner at the United States," observing that "ePorner's geolocated advertisements,

provided by a third-party advertising company, . . . are *always* directed at the forum," whether in the United States or elsewhere. *Id.* at 1211 (emphasis altered from original). "If such geo-located advertisements constituted express aiming, ePorner could be said to expressly aim at any forum in which a user views the website," which would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *AMA Multimedia*, 970 F. 3d at 1211 (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).

Plaintiffs' reliance on the out-of-Circuit ruling in *Rancourt v. Meredith Corp.*, No. 22-cv-10696, 2024 WL 381344 (D. Mass. Feb. 1, 2024), is also misplaced. *See* SAC ¶ 12. In *Rancourt*, the defendant derived revenue solely from advertising activities on the mobile application at issue, and the plaintiff alleged facts—discovered in the course of an analysis conducted by a private research company—regarding the revenue the defendant derived from advertising activities in the specific forum. *Id.* at *2, 8; *see also Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 929 (S.D. Cal. 2022) ("unlike the defendant website that lacked forum-specific subject matter in *AMA Multimedia*, the App [in *Chien*] offers value to its users on the basis that its content within the forum State displays other users also presently within the forum State."). In *Rancourt* and *Chien*, the alleged collection and use of user and geolocation data was central to the means by which the defendants derived revenue from the mobile applications at issue. Here, that is not the case, nor do Plaintiffs allege otherwise. *See generally* SAC ¶¶ 11-32. Absent indicia that Univision NOW derives substantial revenue from the alleged advertising structure, Univision NOW's purported collection and use of geolocation data to potentially tailor advertisements does not have the same relevance here. Moreover, courts have specifically distinguished *Rancourt* in finding that, in most cases, location data is not collected because a business "deliberately singled out" a jurisdiction, but because a user in that jurisdiction is using the service. *See Egan v. X-Mode Social, Inc.*, No. 23-cv-11651, 2024 WL 2701967, at *5 (D. Mass. May 24, 2024) (distinguishing *Rancourt* where website and app could be accessed by "anyone with an internet connection" in any forum).

Plaintiffs' argument that Univision NOW "exhibits an intent to cultivate an audience in California" by making live local news available via the App to users in eight select cities across the U.S. also fails. SAC ¶¶ 23-24. Simply alleging that California subscribers have access to live local

news programming hardly constitutes targeting California residents by "providing videos with a California-specific focus." Plaintiffs' incomplete allegations ask the Court to make inference after inference necessary to find the App had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum. *See Herbal Brands, Inc.*, 72 F.4th at 1092. These new allegations do not provide justification for the Court's doing so.

Plaintiffs' new and largely speculative allegations concerning a relationship between Univision Network and TelevisaUnivision, Inc. also fail to establish that Univision NOW aimed its acts at California. *See* SAC ¶¶ 9-10, 20-22. Even if TelevisaUnivision, Inc. were the ultimate parent to Univision Network and Univision NOW, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purposes of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). Plaintiffs do not (because they cannot) make any allegations of agency or alter ego that would overcome this legal principle. Therefore, advertisements aired on Univision Network programs and TelevisaUnivision, Inc.'s specialization in "REACH[ing] HISPANIC AMERICA" are red herrings; such statements cannot constitute a basis for specific personal jurisdiction over Univision NOW. SAC ¶¶ 20, 22.

Moreover, even if Univision Network's contacts could be imputed to Univision NOW, news programs are "live" programming not covered by the VPPA, and therefore cannot be said to give rise to Plaintiffs' VPPA claims such as to give rise to specific personal jurisdiction in California. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (requiring plaintiff's claim be one that ***arises out of or relates to*** defendant's forum-related activities); *see also Schwarzenegger*, 374 F.3d at 806-807 (same). And to the extent Plaintiffs allege that Univision NOW engaged in a "directed act of advertising the Univision NOW platform in California," including by airing ads on Univision Networks, Plaintiffs do so by citing YouTube videos from the Univision Network dated as many as *eight* years before the filing of the original Complaint, far preceding the VPPA's two-year statute of limitations. *See* SAC ¶ 20, n. 13; 18 U.S.C. § 2710(c)(3); *see also Crouch v. Ruby Corp.*, 639 F. Supp. 3d 1065, 1081 (S.D. Cal. 2022) (holding that plaintiffs' failure to, among other things,

allege what advertisements during the relevant time period, was insufficient to establish express aiming of conduct at California).

Because Plaintiffs have failed to plausibly allege that Univision NOW targeted California, or that their claims arose out of such contacts, Plaintiffs cannot meet their burden of showing that Univision NOW purposefully directed its conduct at California. *See AMA Multimedia,* 970 F.3d at 1210-1213 (finding plaintiff failed to show that defendant expressly aimed his intentional acts at the United States); *DFSB Kollective*, 897 F. at 871 (court lacked personal jurisdiction for infringement claims because plaintiffs did not allege that any of advertisements on defendant's websites targeted Californians, and subject matter of websites, was not directly related to California).

**b. Univision NOW's Alleged Actions Did Not Cause Harm That Univision NOW Knew Was Likely to be Suffered in California.**

Similarly, Plaintiffs cannot show that Univision NOW's alleged conduct caused them an injury that Univision NOW knew was "likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Again, the only connection between Univision NOW's alleged conduct and California is that Plaintiffs claim that they are California residents. As the Ninth Circuit has explained, even where a defendant's "intentional act eventually caused harm to [the plaintiff] in California, and [the defendant] may have known that [the plaintiff] lived in California," "this does not confer jurisdiction" where the defendant did not aim its acts at the forum state. *Id.* at 807; *see also Moledina v. Marriott, Int'l, Inc.*, 635 F. Supp. 3d 941, 949 (C.D. Cal. 2022) (the mere fact that defendant "knew, or at least reasonably should have known, [they] w[ere] calling from California … during the time of the call" did not confer specific jurisdiction).

**2. Plaintiffs' Claims Do Not Arise Out Of Or Relate To Univision NOW's Forum-Related Activities.**

For similar reasons, Plaintiffs' claims do not arise out of or relate to Univision NOW's contacts with California. This requirement "'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Ranza*, 793 F.3d at 1068 (citations omitted).

Here, Plaintiffs' claims do not "arise out of contacts that the 'defendant *[it]self*' create[d] with the forum State." *Walden*, 571 U.S. at 284. Univision NOW's nationally-available website and alleged national advertising practices cause no different contacts in California than they do in any other state; the mere fact that a subscriber logs into the Univision NOW service from a certain State shows nothing about Univision NOW's activities within that State. *See, e.g.*, *id*. at 290 (where alleged injury could have occurred in "California, Mississippi, or wherever else [petitioner] might have traveled," the "effects of petitioner's conduct [were not] connected to the forum State in a way that makes those effects a proper basis for jurisdiction"); *Ayer v. White*, No. 21-cv-08773, 2022 WL 657502, at *5 (C.D. Cal. Mar. 4, 2022) ("Plaintiffs' injuries do not aid their jurisdictional argument because Plaintiffs would have suffered the same loss in any state they happened to be in at the time Defendants committed their alleged misconduct in Texas."). Courts have rejected the argument that the use of geolocation technology for advertising or content relates to claims based on a plaintiff's use of a website or mobile application. *See AMA Multimedia*, 970 F.3d at 1212 n.9 ("AMA has failed to show that its claims arise out of or relate to Wanat's forum-related activities"); *Egan*, 2024 WL 2701967, at *4 ("A website or app's forum-state collection of location data does not automatically relate to claims arising from the out-of-state handling and disclosure of that information.").

Nor is this prong satisfied by allegations that Univision NOW provides access to third-party, live local content or advertises, sells, and markets in California markets because those are not the acts that give rise to Plaintiffs' allegations of misconduct. *See, e.g.*, *Chorost v. Rotor Am. Inc.*, No. 21-CV-00235, 2022 WL 17361299, at *9 (D. Ariz. Aug. 8, 2022) (website listings and national advertising bore no relationship to alleged misconduct); *Neumann v. Red Rock 4-Wheelers, Inc.*, No. 19-cv-02160, 2022 WL 3370170, at *4 (D. Nev. Aug. 15, 2022) (online and print marketing materials directed to forum bore no relation to tort claims alleged). As laid out above, Plaintiffs' further "intentional cultivation" and "California focus" arguments are inherently flawed. Because Univision NOW neither intentionally cultivated a California audience nor provided video content with a California focus, Plaintiffs' injuries cannot properly be said to arise out of or relate to contacts Univision NOW created in California. *See, e.g.*, *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159,

1171 (9th Cir. 2022). A rule conferring jurisdiction simply because a company's national advertisements may be seen from a specific state would not "adequately protect defendants foreign to a forum," *Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021).

**3. Subjecting Univision NOW to Jurisdiction in California Would Be Unreasonable.**

Plaintiffs' SAC should be dismissed for the independent reason "that the exercise of jurisdiction would be unreasonable and therefore violate due process." *Ayla*, *LLC*, 11 F. 4th at 983-84. This inquiry is "guided by seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id*. (citation and internal quotation marks omitted). These factors weigh against jurisdiction over Univision NOW.

*First*, the inquiry concerning the extent of a defendant's purposeful interjection is "analogous to the purposeful direction" analysis. *Sinatra v. Nat'l Enquirer, Inc*., 854 F.2d 1191, 1199 (9th Cir. 1988). The operation of an interactive website does not rise to the level of purposeful interjection into the forum state's affairs. Accordingly, this factor weighs against exercising jurisdiction. *See Martin v. Outdoor Network LLC*, No. 23-cv-09807, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31, 2024) (dismissing case for lack of personal jurisdiction).

*Second*, litigating in California would impose an unreasonable burden on Univision NOW. Univision NOW is a Delaware corporation with its principal place of business located in Florida. It should not be required to litigate a case across the country where Plaintiffs have not alleged anything other than their California residencies. Thus, this factor weighs against exercising jurisdiction.

*Third*, claims against Univision NOW should be heard by a court where Univision NOW is a corporate citizen when, as here, the claims do not arise out of its contacts with any other State. That is the essence of having forums where businesses are fundamentally at home and can thus have any claims heard against them. Therefore, this factor does not support exercising jurisdiction.

*Fourth*, although one of Plaintiffs' claims is based on California law, there otherwise is no relationship to California except that Plaintiffs live here, which does not favor jurisdiction.

*Fifth*, the most efficient judicial resolution of the controversy would not be in California. Any relevant records relating to Plaintiffs' allegations would be outside California. Moreover, common class questions such as Univision NOW's policies and procedures, its Website and the services it provides, its relationship with Endeavor, and so forth, would be answered by witnesses and documents outside California. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (the location of the evidence and witnesses is an important consideration in determining jurisdiction). Therefore, this factor does not favor jurisdiction.

*Sixth*, it is not unreasonably inconvenient to require Plaintiffs to litigate their claim in another forum, when none of the relevant information, documents, or witnesses (besides Plaintiffs themselves) are located in California.

*Seventh*, there exists multiple alternative forums for the dispute based on Plaintiffs' own allegations, so this factor also weighs against exercising jurisdiction.

On balance, the seven factors favor a finding that the exercise of jurisdiction over Univision NOW would be unreasonable and therefore violate due process.

## II. PLAINTIFFS LACK STANDING TO BRING VPPA CLAIMS PREMISED ON DISCLOSURES VIA UNIVISION NOW'S WEBSITE.

Plaintiffs' individual claims relate solely to the alleged disclosure of their subscriber information via the Univision NOW App. Plaintiffs do not allege that they ever used the Univision NOW Website, nor do they allege that their subscriber or viewing information was disclosed to Endeavor or anyone else via the Website. Instead, Plaintiffs reference the Website in conclusory terms without ever making a connection to Plaintiffs themselves. *Compare* SAC ¶¶ 5-6 (stating that both Plaintiff Villalobos and Plaintiff Palomino use the Univision NOW streaming service via the App) with SAC ¶ 38 ("[W]hen Univision NOW subscribers utilize the service via *either the Website or the App*, Defendant discloses users' PII to Endeavor Streaming without users' consent.") (emphasis added). Plaintiffs nonetheless purport to seek recovery on behalf of themselves and others based on alleged disclosures from a Website they never allege they used. *Id.* ¶¶ 67-68 (class

definition). This claim should be dismissed (or these class allegations should be stricken) because Plaintiffs lack standing to assert such claims.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements . . . The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[T]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6. (citation omitted). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Doe One v. CVS Pharmacy, Inc.*, Case No. 18-cv-01031, 2024 WL 1707229, at *4 (N.D. Cal. Apr. 18, 2024) (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). Standing is a "threshold issue" and "must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023).

An injury is "fairly traceable" for the purposes of establishing standing to sue where there is a causal connection between the plaintiff's injury and the defendant's challenged conduct. *Lujan*, 504 U.S. at 560-61. Plaintiffs have standing to assert claims with respect to products they used, but cannot assert claims relating to products or services they never used. *See Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) (dismissing claims to related to products named plaintiff did not purchase for lack of traceable injury); *Dysthe v. Basic Research LLC*, No. 09-8013, 2011 WL 5868307 (C.D. Cal. Jun. 13, 2011) (same); *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-CV-02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) (same); *see also Granfield v. NVIDIA Corp.*, No. C 11–05403, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (striking for lack of standing allegations related to product models plaintiff did not purchase); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (noting the limitations of standing in the prisoner context, where the "right to complain of *one* administrative deficiency" does not "automatically confer[ ] the right to complain of *all* administrative deficiencies").

Here, by virtue of alleging injury related to one of Univision NOW's suite of products, Plaintiffs do not create standing to assert claims related to other products. *See e.g.*, *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1150 (N.D. Cal. 2013) (holding plaintiff who alleged fraud relating to purchases from iTunes Store lacked standing to assert claims on behalf of customers who purchased products from other Apple marketplaces). Thus, absent allegations that their PII was allegedly disclosed from the Website, Plaintiffs cannot establish the line of causation necessary to establish standing, and their claims should be dismissed under Fed. R. Civ. P. 12(b)(1).

## III. PLAINTIFFS FAIL TO STATE A VIOLATION OF THE VPPA.

To state a claim for unlawful disclosure under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 763 (N.D. Cal. 2023) (citations omitted).

Plaintiffs still fail to state a claim under the VPPA for the reasons demonstrated in Univision NOW's prior Motion to Dismiss. First, all disclosures made by Univision NOW to Endeavor were incident to Univision NOW's third-party service provider relationship with Endeavor and therefore fall within the VPPA's ordinary course of business exception. Second, there are no plausible allegations that the information allegedly disclosed by Univision NOW to Endeavor was PII because they cannot be used to identify a specific individual under the Ninth Circuit's ordinary person standard. Finally, Plaintiffs' claims are time-barred under the applicable statute of limitations.

### A. Plaintiffs' Claims Are Precluded by the VPPA's "Ordinary Course of Business" Exception.

Plaintiffs' claims regarding Univision NOW's alleged disclosures to third-party service provider Endeavor should be dismissed pursuant to the VPPA's ordinary course of business exception. "[T]he permissibility of disclosure under the VPPA turns on the underlying purpose for which [the provider] provides the information to a third party." *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 626 (7th Cir. 2014). Numerous courts, including the Ninth Circuit, have held that disclosures of customer information intended to support the management and operation of

the company fall within the ordinary course of business exception. *See id.* (Redbox's outsourcing of customer service operation and disclosure of customer information to third-party in support of that operation fell into ordinary course of business exception); *Rodriguez*, 801 F.3d at 1054-55 ("disclosures of consumers' personal information between Sony entities to sustain the operations of the PlayStation Network" was incident to the ordinary course of business); *see also Rancourt*, 2024 WL 381344, at *17 (finding that the ordinary course of business exception applies to disclosures "designed to ensure the smooth operation of the business, such as customer support, internal data analytics, or cyber security").

In the SAC, Plaintiffs again concede (as they must) that Endeavor is a third-party service provider to Univision NOW, which is why the Neulion Tracking Code is allegedly embedded on the Website and App. SAC ¶¶ 39-40. Plaintiffs also cite to Endeavor's website to allege that Endeavor provides a "content delivery network platform" to clients such as Univision NOW. *Id.* ¶ 39 nn. 28-30 (explaining that Endeavor's content delivery network platform services include "content operations," "communications," and "end-user customer support."). In other words, the SAC confirms that Endeavor hosts the Univision NOW Website and provides operations, communications, and end-user customer support—exactly the kind of services the "ordinary course of business exception" was intended to address.

The SAC continues to plead—without any factual basis (other than a reference to a completely different, unrelated client)—that Endeavor can be used as a "marketing and advertising retargeting tool" that Univision NOW "utilize[s] to further their pecuniary interests." SAC ¶¶ 40-41. Based solely on the allegation that Endeavor ***can*** be used for "marketing" or "advertising," Plaintiffs argued in their prior briefing that whether their claims are barred by the ordinary course of business exception is automatically a fact issue that the Court cannot resolve until summary judgment.

This effort should be rejected. Plaintiffs allege no facts to suggest that Endeavor provided to Univision NOW any services other than web hosting, customer service, and order processing. They certainly allege no factual basis for their claim that Endeavor provides its "marketing and advertising retargeting tool" to Univision NOW. A "complaint must set forth 'more than labels and conclusions,'" *Williams v. California*, 764 F.3d 1002, 1007 (9th Cir. 2014) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007)), and contain more than "a formulaic recitation of the elements of a cause of action," *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (cleaned up). "Mere legal conclusions are not entitled to the assumption of truth." *Id.* "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g by* 275 F.3d 1187 (9th Cir. 2001).

In *Sterk*, 770 F.3d at 621, the Seventh Circuit specifically addressed the ordinary course of business exception as it applies to customer service. In that case, defendant Redbox outsourced certain "back office" business operations of the kind normally performed by a company itself to various service providers, including Stream Global Services. Included in those services were customer service and marketing. *Id.* To enable Stream to perform its services, Redbox disclosed all of its subscribers' personal information to Stream. *Id.* Like here, the plaintiff in *Redbox* alleged that such disclosure was a violation of the VPPA. *Id.* The *Redbox* court disagreed, holding that customer service is among the services covered by the "ordinary course of business" exception to the VPPA. *Id.* at 625. Because Redbox's disclosures to Stream were for the underlying purpose of facilitating Stream's customer service function, such disclosures were permitted. *Id.*[2]

The facts of *Redbox* are strikingly similar to those at issue here—in the parties' prior briefing, the only effort Plaintiffs made to distinguish *Redbox* was to note that it was decided at summary judgment. Endeavor provides customer support services as well as web hosting to Univision NOW, and any subscriber information, including geolocation data, disclosed to Endeavor was for the purpose of facilitating such services. This is exactly the type of order fulfillment and request processing activities that the ordinary course of business exception is meant to cover. *See* 18 U.S.C.

---

[2] Assuming *arguendo* that Univision NOW contracted with Endeavor for marketing services, this fact alone does not render the ordinary business exception inapplicable. A 1998 Senate Judiciary Report states that the VPPA was intended to "allow[] disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for *marketing* to their customers." *Sterk*, 770 F.3d at 624 (quoting S. Rep. No. 100–599, at 14 (1988), reprinted in 1988 U.S.C.C.A.N 4342) (emphasis added). Univision NOW's alleged use of Endeavor for customer service is thus an intended purpose covered by the ordinary business exception.

§ 2710(a)(2); *Sterk*, 770 F.3d at 626; *see also Rancourt*, 2024 WL 381344, at *17 (finding that "if the disclosure of PII is in furtherance of business management and operations that are intra-corporate and inner facing, designed to ensure the smooth operation of the business, such as customer support, internal data analytics, or cyber security, it falls under the exception."). Therefore, the Court should dismiss Plaintiffs' claims as covered by the ordinary course of business exception.

### B. Alleged Disclosures Encoded in Base64 Do Not Constitute PII Because An Ordinary Person Cannot Identify Univision NOW Users From Such Data.

Plaintiffs still fail to state a claim for violation of the VPPA because the information they allege was disclosed in encoded form (in Base64) does not constitute PII under this Court's established precedent. Specifically, Plaintiffs fail to plead that this encrypted and encoded information meets the Ninth Circuit's "ordinary person" standard for what constitutes PII under the VPPA: "[P]ersonally identifiable information means only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 267).

Unlike the vast majority of VPPA claims filed in the last few years—where a plaintiff alleges that an identifier individually attributable to that plaintiff was disclosed along with the videos they watched—Plaintiffs here ask the Court to find it plausible that an ordinary person could deduce that information from the code allegedly disclosed to Endeavor. Many courts have questioned whether such a disclosure, when it does not identify the specific individual, can constitute PII. *See, e.g.*, *Nickelodeon*, 827 F.3d at 282-83 (considering whether IP addresses, browser fingerprints, and device identifiers constitute PII); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (considering whether IP addresses together with GPS coordinates constitute PII). In *Nickelodeon*, a class of children brought a multi-district class action against Viacom and Google, alleging that they unlawfully collected personal information—specifically, IP addresses, browser fingerprints, and unique device identifiers—on the Internet, including what webpages the plaintiffs visited and what videos they watched on Viacom's websites. *Nickelodeon*, 827 F.3d at 267. The Third Circuit considered, among other things, whether such identifiers constituted PII protected by the VPPA. *Id.* at 290. In so considering, the Court compared different pieces of information and

their "power to identify a *specific person*." *Id.* at 289. Whereas the GPS coordinates of a person "would enable most people to identify what are likely the home and work addresses are of the viewer," an IP address, a device identifier, or a browser fingerprint would not. *Id.* "'[T]here is certainly a point at which the linkage of information to identity becomes too uncertain, or too dependent on too much yet-to-be-done, or unforeseeable detective work'" to trigger liability under this statute." *Id.* at 289 (citing *Yershov*, 820 F.3d at 486).

This kind of "yet-to-be-done" and unforeseeable detective work is exactly what would be required under the facts alleged by Plaintiffs. This is not an instance where an ordinary person could readily identify a user by looking at the encoded information allegedly disclosed by the Neulion Tracking Code. *See, e.g.*, Figures 4 and 5, SAC at 15 (showing the information allegedly disclosed to Endeavor in Base64). Plaintiffs essentially concede that disclosure in Base64, without more (such as a decoding website or a generative AI chatbot), is not something an ordinary person could read and understand. Plaintiffs' own allegations demonstrate that an ordinary person would have to (1) recognize the coding scheme as Base64, (2) find free encoding software, and then (3) decode it in order to be able to even know what information the identification Token contains. SAC ¶¶ 49-56.

Indeed, the sources cited by Plaintiffs in the SAC confirm that the decoding of information encoded in Base64 requires specialized knowledge and skill typically held by computer programming professionals. *See* SAC at 15 n.34 (citing Smallwood). Before information encoded in Base64 can be "decoded," and as Plaintiffs essentially concede, a person would first have to recognize the Base64 language. But Base64 text "looks like gibberish" to the untrained eye. *Id.* at 21 n.38 (citing Morrow). As a result, an ordinary person would not recognize such text, much less know how to decode it. Although Plaintiffs allege that an "ordinary person" could decode this information by running it through a generative AI chatbot, SAC at ¶ 55, Figures 11-13 of the SAC, which purportedly show this process, reveal that while the identification Token contains the email address for Plaintiffs' counsel, it does not contain the title of any video, nor does it suggest that it was ever disclosed to Endeavor. *See id.* at 23 (Figure 13).

While Plaintiffs seek to minimize the complexity of Base64, such allegations are undermined by the multiple pages of their SAC spent explaining how to decode it, as well as the four articles

they cite that explain the process. SAC at 15 n. 34, 20 nn. 35-36, and 21 nn. 37-40. Notably, in their prior briefing on this matter, Plaintiffs cited cases suggesting that courts in some circumstances have found that an email address or GPS coordinate could, under certain circumstances, be linked to a specific individual—but they did not cite a single case suggesting that the creation, implementation, and decoding of a unique "identification token" (which they do not allege is tracked to a specific individual across multiple visits) can possibly be within the coverage of the VPPA.

In short, an ordinary person could not identify the Plaintiffs' video consumption behavior from the identification Token allegedly disclosed to Endeavor. Moreover, even if they could do so, Plaintiffs' Figures contained in the SAC reveal that the identification Tokens do not contain both an email address and the video title. Therefore, the SAC fails to adequately allege that Univision NOW disclosed Plaintiffs' PII to Endeavor in violation of the VPPA.

### C. Plaintiffs' Claims are Time-Barred by the Two-Year Limitations Period.

Plaintiffs' claims also are time-barred by VPPA's statute of limitations because they arose more than two years ago. 18 U.S.C. § 2710(c)(3) ("No action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery."). "A statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated." *McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008), *abrogated on other grounds by CTS Corp. v. Waldburger*, 573 U.S. 1 (2014) (citation omitted). Plaintiffs seeking to toll the statute of limitations have the burden of pleading the factual predicates for any tolling theory. *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings.").

Plaintiffs' allegations in the SAC are unchanged: they still allege that their claims arose when they began watching content on Univision NOW via the App, which was "around three years ago" for Palomino and in March 2020 for Villalobos. SAC ¶¶ 5-6. While Plaintiffs claim that they "frequently" visited Univision NOW to watch content and only "discovered" that Univision NOW disclosed their information to Endeavor in March 2024, they fail to plead sufficient facts to invoke the discovery rule. *See Wasco Prods.*, 435 F. 3d at 991; *Timboe v. Clark*, No. 20-cv-08719, 2022

WL 991721, at *5 (N.D. Cal. Mar. 31, 2022) (specific facts must be alleged to invoke the discovery rule exception). "[A] plaintiff whose complaint shows on its face that his claims would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 910 (N.D. Cal. 2021) (citation omitted). Here, Plaintiffs have failed to plead sufficient facts regarding the time period in which they viewed content or how they discovered that their data was disclosed, including that their data was actually disclosed to Endeavor. SAC ¶¶ 57-66. Plaintiffs have also failed to plead that they could not have discovered the purported disclosures earlier with reasonable diligence. Their failure to plead such facts bars tolling of their VPPA claims under the discovery rule. *Sharma*, 524 F. Supp. 3d at 910 (dismissing claims as time-barred for failure to specifically plead delayed discovery); *Graves v. Downey Sav. and Loan Ass'n*, No. C 09-02666, 2009 WL 3335335, at *3 (N.D. Cal. Oct. 14, 2009) ("Plaintiffs' sole assertion regarding when they actually discovered" the alleged harm "contains no facts indicating how or when in the last year Plaintiffs discovered" the same) (emphasis omitted).

## IV. PLAINTIFFS FAIL TO STATE A VIOLATION OF CIVIL CODE § 1799.3.

California Civil Code §1799.3 closely tracks the VPPA. It was enacted around the same time with the same purpose, and the elements of both statutes are similar. *See* Sen. Judiciary Comm. Rep. on S.B. No. 2248, 1987-88 Regular Session (1988). If anything, Plaintiffs' California claim sets an even higher pleading standard, requiring a "willful" violation before civil remedies are available. *Mollett*, 795 F.3d at 1067. Therefore, this claim fails because Plaintiffs have not pleaded a willful violation, and for all of the other reasons that Plaintiffs' VPPA claims fails. *See id.* (affirming dismissal of claim for violation of Civil Code § 1799.3 "for the same reasons" as dismissal of plaintiffs' VPPA claim); *see also Fan v. NBA Props., Inc.*, No. 23-cv-05063, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (collectively addressing challenges to the sufficiency of claims under the VPPA and Civil Code § 1799.3 because the elements of both statutes were similar).

## CONCLUSION

For the foregoing reasons, Univision NOW respectfully requests that the Court grant this Motion and dismiss Plaintiffs' claims with prejudice.

DATED: January 7, 2025

Respectfully Submitted

SIDLEY AUSTIN LLP

By: */s/ Alexandria V. Ruiz*
Dianne O. Fischer (*admitted pro hac vice*)
Ian Ross (*admitted pro hac vice*)
Alexandria V. Ruiz

*Attorneys for Defendant*
D2C, LLC, d.b.a. UNIVISION NOW